UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN CIVIL LIBERTIES UNION, and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                Plaintiffs,

        v.

NATIONAL SECURITY AGENCY,
CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE,
DEPARTMENT OF JUSTICE, and
DEPARTMENT OF STATE,

                Defendants.

13 Civ. 9198 (AT)

## DECLARATION OF PAUL P. COLBORN

I, Paul P. Colborn, declare as follows:

       1.      I am a Special Counsel in the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department") and a career member of the Senior Executive Service. I joined OLC in 1986, and since 1987 I have had the responsibility, among other things, of supervising OLC's responses to requests it receives under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I submit this declaration in support of the Department's Motion for Summary Judgment in this case. The statements that follow are based on my personal knowledge, as well as on information provided to me by OLC attorneys and staff working under my direction, and by others with knowledge of the documents at issue in this case. This declaration incorporates by reference the index of documents withheld in full or in part by OLC attached hereto as Exhibit A.

## **OLC'S RESPONSIBILITIES**

2. The principal function of OLC is to assist the Attorney General in her role as legal adviser to the President of the United States and to departments and agencies of the Executive Branch. OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch. OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions. OLC's legal advice and analysis may inform the decisionmaking of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.

3. Although OLC publishes some opinions and makes discretionary releases of others, OLC legal advice is generally kept confidential. One important reason OLC legal advice often needs to stay confidential is that it is part of a larger deliberative process—a process that itself requires confidentiality to be effective. If government agencies and OLC had to conduct deliberations with knowledge that their deliberations were open to public view, such discussions would naturally be chilled or inhibited, and the efficiency of government policy making would suffer as a result.

4. These deliberative confidentiality concerns apply with particular force to OLC advice because of OLC's role in the decisionmaking process: OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law. Frequently, such issues arise in connection with highly complex and sensitive activities of the Executive Branch on matters that can be quite controversial. So that Executive Branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is essential that OLC legal advice provided in the context of internal deliberations not be inhibited by concerns about public disclosure.

5. The foregoing considerations regarding the need for confidential Executive Branch deliberations are particularly compelling in the context of the provision of legal advice, given the nature of the attorney-client relationship. There is a special relationship of trust between a client and an attorney when the one seeks and the other provides independent legal advice. When the advice is provided in confidence, it is protected from compelled disclosure. As the Supreme Court has observed, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is critical to protect this relationship of trust in the governmental context, to ensure such full and frank communication between governmental attorneys and their clients, and thereby promote such broader public interests in the government's observance of law and the administration of justice. The free and candid flow of information between agency decisionmakers and their outside legal advisers depends on the decisionmakers' confidence that the advice they receive will remain confidential. Moreover, disclosure of legal advice may often reveal confidential communications from agency clients made for the purposes of securing advice.

6. When requested to provide counsel on the law, OLC attorneys stand in a special relationship of trust with their agency clients. Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, disclosure of the advice itself would be equally disruptive to that trust. Thus, the need to protect the relationship of trust between OLC and the

client seeking its legal advice provides an additional reason OLC legal advice often needs to stay confidential.

7. The interests protected by the deliberative process and attorney-client privileges continue to apply fully to confidential OLC legal advice in circumstances where the Executive Branch or one of its departments or agencies elects, in the interest of transparency, to explain publicly the Executive Branch's understanding of the legal basis for current or contemplated Executive Branch conduct. There is a fundamental distinction between an explanation of the rationale and basis for a decision, which would not be privileged, and advice received prior to making a decision, which is privileged. Thus, there is no disclosure of privileged legal advice, and therefore no waiver of attorney-client privilege, when, as part of explaining the rationale for its actions or policies, the Executive Branch explains its understanding of their legal basis without reference to any confidential legal advice that Executive Branch decisionmakers may have received before deciding to take the action or adopt the policy. Likewise, confidential advice does not lose the protection of the deliberative process privilege simply because the Executive Branch explains the basis or rationale for its actions or policies without referring to that advice; rather, confidential deliberative advice loses this protection only through adoption, *i.e.*, if the advice is expressly adopted as part of the explanation of the rationale for the decision or waiver, *i.e.*, through specific voluntary disclosure of the deliberative material. If merely explaining publicly the legal basis for Executive Branch conduct were understood to remove the protection of the deliberative process and attorney-client privileges from the confidential legal advice provided as part of the Executive Branch's internal deliberations, it would substantially harm the ability of Executive Branch decisionmakers to request, receive, and rely upon full and frank legal advice from government lawyers as part of the decisionmaking process, and it would

also harm the public by discouraging the Executive Branch from explaining its understanding of the legal basis for its actions publicly in the future.

## PLAINTIFFS' FOIA REQUEST

8. On May 29, 2013, OLC received a request dated May 13, 2013 from Alexander Abdo on behalf of the American Civil Liberties Union Foundation (together with the American Civil Liberties Union, hereinafter the "ACLU"), requesting records in three categories. *See* Ex. B, at 1 (FOIA Request (May 13, 2013)) (hereinafter, as modified, "the ACLU Request"). Those categories were as follows:

> a. "Any records in which the Office of Legal Counsel ("OLC") construes or interprets the authority of the Department of Justice ('DOJ') or any executive agencies under Executive Order 12,333 or any regulations issued thereunder;" *Id.*
> 
> b. "Any records describing the minimization procedures used by the government with regard to both intelligence collection and intelligence interception conducted pursuant to EO 12,333 or any regulations issued thereunder; and" *Id.*
> 
> c. "Any records describing the standards that must be satisfied for the 'collection,' 'acquisition,' or 'interception' of communications, as those terms are defined in EO 12,333 or any regulations issued thereunder."

9. By letter dated June 25, 2013, I sent a letter to Mr. Abdo on behalf of OLC, acknowledging receipt of the ACLU Request and proposing a narrowing agreement following an earlier telephone conversation between Mr. Abdo and an OLC attorney. *See* Ex. C, at 1 (OLC Acknowledgment (June 25, 2013)).

10. On July 10, 2013, Mr. Abdo confirmed the narrowing agreement with certain modifications agreed to by email. *See* Ex. D, at 1 (Narrowing email (July 10, 2013)). As

modified and agreed to by OLC and the ACLU, the ACLU Request was narrowed to the following:

    a.    "All OLC final legal advice concerning Executive Order 12333 or its implementing regulations with respect to electronic surveillance by the United States Government of communications of United States persons, regardless of whether the United States person is the target of the electronic surveillance or is in the United States at the time of the electronic surveillance. For purposes of this request, 'electronic surveillance' and 'United States person' have the meaning given in Executive Order 12333." *Id.*

    b.    "All OLC final legal advice concerning the meaning of the terms 'collection', 'acquisition', and 'interception' as used in Executive Order 12333 or its implementing regulations with respect to electronic surveillance by the United States Government of communications of United States persons. For purposes of this request, 'electronic surveillance' has the meaning given in Executive Order 12333." *Id.*

11.    On December 30, 2013, before OLC had completed its search, ACLU filed this lawsuit.

12.    On September 22, 2014, following a search and pursuant to the parties' stipulated scheduling order in this case, OLC informed Mr. Abdo that it had located ten responsive records. *See* Ex. E, at 1 (OLC Response (Sept. 22, 2014)). Of the ten records, OLC enclosed three with portions redacted and withheld seven in full. *Id.* Mr. Abdo was informed that the redactions and withholdings were made pursuant to FOIA Exemptions One, Three, and/or Five, 5 U.S.C. § 552(b)(1), (3), (5). *Id.* I understand that ACLU has designated a subset of various agencies' responsive records as still at issue in this case, and has excluded some documents located by

other agencies, but continues to seek release of the ten documents that OLC located and withheld in full or in part.

13.     In addition to the ten documents withheld by OLC and identified in the attached index, two documents were withheld on behalf of OLC by the Department's National Security Division ("NSD"), which I understand that ACLU continues to seek as well.  These documents are identified as NSD 9 and NSD 36 in the index attached to the Declaration of John Bradford Wiegmann, filed contemporaneously herewith.

## OLC'S SEARCH

14.     I have been informed that the ACLU does not challenge the adequacy of OLC's search for responsive documents, and for that reason I do not describe the search here.

## APPLICABLE PRIVILEGES

15.     The withheld records consist primarily of memoranda authored by OLC containing OLC's confidential, predecisional legal advice to assist Executive Branch clients in making policy decisions.  Accordingly, such records are covered by the deliberative process and/or attorney-client privileges, and therefore are exempt under FOIA Exemption Five, unless those privileges have been lost by waiver or adoption.

16.     The deliberative process privilege protects documents that are (a) predecisional, in that they were generated prior to decisions or potential decisions; and (b) deliberative, in that they contain, reflect, or reveal advice, discussions, proposals, and the "give and take" exchanges that characterize the government's deliberative processes.

17.     As discussed below, all but one of the fully or partially withheld records are protected by the deliberative process privilege in whole or in part.  They are predecisional and deliberative, in that they consist of legal advice to Executive Branch decisionmakers.  Requiring

disclosure of these documents would undermine the deliberative processes of the government and chill the candid and frank communications necessary for effective governmental decisionmaking.  It is essential to OLC's mission and the deliberative processes of the Executive Branch that OLC's considered legal advice not be inhibited by concerns about the compelled public disclosure of predecisional matters, including factual information necessary to develop accurate and relevant legal advice.  Protecting the withheld documents from compelled disclosure is central to ensuring that Executive Branch attorneys will be able to examine relevant facts and analysis, and provide candid, complete advice, and to ensuring that Executive Branch officials will seek legal advice from OLC and the Department of Justice on sensitive matters.

18. The attorney-client privilege protects documents that contain or reflect confidential legal advice provided by an attorney to a client, and confidential client requests for legal advice and other confidential communications and facts conveyed by the client to the attorney for the purpose of receiving legal advice.

19. As discussed below, all but one of the fully or partially withheld records are protected by the attorney-client privilege in whole or in part.  These documents consist of legal advice that was communicated in confidence from OLC to Executive Branch clients, and disclose confidential client requests for legal advice.  In addition, many of the documents also contain factual information that was communicated in confidence by Executive Branch clients to OLC for the purpose of obtaining confidential legal advice, and the existence of confidential legal advice documents reflects the privileged fact that a client requested confidential legal advice on a particular subject.  Having been asked to provide legal advice, OLC attorneys stood in a relationship of trust with their Executive Branch clients.  Just as disclosure of client confidences provided in the course of seeking legal advice would seriously disrupt the

relationship of trust so critical when attorneys formulate legal advice for their clients, so too would disclosure of the legal advice itself undermine that trust.

## DOCUMENTS AT ISSUE

20. I am personally familiar with the withheld OLC documents that are at issue in this case. An index listing the ten OLC documents at issue is attached to this declaration, as are copies of the three redacted OLC documents that were released to the plaintiffs.

21. *OLC Advice Memoranda.* Ten of the twelve documents—Documents 2-8, and 10 in the attached index as well as NSD 9 and NSD 36—are classified OLC legal advice memoranda. These memoranda were written in response to confidential communications from one or more executive branch clients soliciting legal advice from OLC attorneys. As with all such OLC legal advice memoranda, these documents contain confidential client communications for the purpose of seeking legal advice and predecisional legal advice from OLC attorneys transmitted to executive branch clients as part of government deliberative processes. Documents 8 and 10 have been partially released in redacted form.

22. OLC's withholding of three of these documents from the ACLU in response to a different FOIA request was upheld last year after *in camera* review by the United States District Court for the District of Columbia in the consolidated case *Elec. Privacy Info. Ctr. v. Dep't of Justice*, Nos. 06- 096, 06-214 (RCL), 2014 WL 1279280 (D.D.C. Mar. 31, 2014) ("*EPIC*"); *See also* Second Redacted Bradbury Declaration, ECF No. 35-1, No. 06-214 (Filed Oct. 19, 2007) (describing these and other documents), attached hereto as Exhibit F ("Bradbury *EPIC* Declaration"). Document 4 was identified in that case as OLC 132, Document 8 was identified as OLC 131; and Document 10 was identified as OLC 54. *See* Bradbury *EPIC* Declaration ¶¶ 83(b), (g), (h). Each was among the ten opinions reviewed *in camera* and determined to be

properly withheld from disclosure to the ACLU pursuant to Exemptions One, Three, and Five. 2014 WL 1279280, at *1 ("The Court is now satisfied with the Department's decisions to withhold these ten records under Exemptions One and Three, since they are in fact properly classified, as well as Exemption Five as each record contains confidential, pre-decisional legal advice protected by the deliberative-process and attorney-client communications privileges.").

23.     While the *EPIC* litigation was pending, there was an interagency classification and privilege review of four of the documents at issue in that case, including the documents identified here as Documents 4, 8, and 10, which took approximately six months and culminated in the partial release to ACLU and the other *EPIC* plaintiffs of Documents 8 and 10, in redacted form, on March 18, 2011.  Following the declassification of certain information contained in Document 10, there was another interagency review of that document, which again took approximately six months.  In September 2014, pursuant to the interagency review, NSA informed the Department of Justice that OLC 10 contained classified and/or protected NSA equities and therefore that NSA was withholding that material from public disclosure pursuant to Exemptions One and Three of the FOIA.  This second review culminated in a discretionary release of a revised version of Document 10 with fewer redactions in early September 2014—six months after the *EPIC* court's *in camera* review and determination that the documents were properly withheld in full or as redacted, including the portions of Document 10 that had been redacted and withheld pursuant to Exemptions One, Three, and Five.  Shortly after the completion of this review process, the reprocessed version of Document 10 was provided to ACLU in OLC's September 22, 2014 response.  *See supra* ¶ 12.

24.     In September 2015, the Government made a partial release of a classified Office of Inspector General report regarding topics related to the subject matter of Document 10, as part

of a FOIA response in litigation in this District.  *See N.Y. Times v. Dep't of Justice*, S.D.N.Y. No. 14-cv-3776 (AT).  This September 2015 release included previously undisclosed material.  Although it is possible that additional material disclosed in connection with the September 2015 release appears in portions of Document 10 redacted pursuant to Exemptions One, Three, and Five, that material was not appropriate for discretionary release at the time of OLC's administrative response to the requester on September 22, 2014.  In light of Document 10's length and the fact that it has recently been the subject of a comprehensive interagency review for potential discretionary release, Document 10 has not been reviewed an additional time for any potential additional discretionary release following the September 2015 release.  Similarly, pursuant to Executive Order 13526, ¶ § 3.5(d), Document 10 was not resubmitted for classification review at the time of OLC's administrative response to the requester on September 22, 2014 because such a review had just been concluded with material determined at that time by the NSA to be properly classified, and has not been resubmitted for declassification review because such a review was conducted within the past two years.

25.     *Cover Memorandum*.  One of the documents—Document 1 in the attached index—is a cover memorandum transmitting one of the legal advice memoranda (Document 2).  This cover memorandum contains an unclassified partial summary of Document 2, including a description of the solicitation of advice and a summary of the memorandum's conclusions.

26.     *Court Submission*.  The remaining document—Document 9 in the attached index—is a classified 2002 submission to the Foreign Intelligence Surveillance Court ("FISC").  The submission is addressed to Judge Colleen Kollar-Kotelly, then the presiding judge of the FISC, and signed by a senior OLC attorney.  It was provided to Judge Kollar-Kotelly to read, although not left in her possession.  This is the sole document withheld by OLC only pursuant to

Exemptions One and Three, as it is not subject to the privileges discussed above. An unclassified attachment to this submission was released in full. I have been informed that a full classification review of Document 9 has been completed, and that the document may now be released to ACLU in less-redacted form. See Document 9, Letter from John Yoo to Judge Colleen Kollar-Kotelly (May 17, 2002), attached hereto as Exhibit G.

### *Withholdings Pursuant to Exemption Five*

27.     The ten OLC legal advice memoranda and one cover memorandum—together, Documents 1-7, the redacted portions of Documents 8 and 10, NSD 9, and NSD 36—are protected by the deliberative process privilege because they are confidential, pre-decisional, and deliberative. As legal advice, these documents are (a) pre-decisional, *i.e.*, were prepared in advance of Executive Branch decisionmaking; and (b) deliberative, *i.e.*, consist of advice to Executive Branch officials in connection with that decisionmaking. Consequently, these documents fall squarely within the protection of the deliberative process privilege. Compelled disclosure of these documents would undermine the deliberative processes of the Government and chill the candid and frank communications necessary for effective governmental decisionmaking.

28.     In addition, these eleven documents withheld in full or in part contain communications protected by the attorney-client privilege. The responsive documents (a) contain confidential legal advice provided to OLC's Executive Branch clients; and (b) reflect confidential communications between OLC and Executive Branch clients made for the purpose of seeking and providing that legal advice. These documents thus fall squarely within the attorney-client privilege. The foregoing considerations regarding the need for confidential

deliberations are particularly compelling in the context of the seeking of legal advice by Executive Branch clients, and the provision of that legal advice by OLC.

### *Withholdings Pursuant to Exemptions One and Three*

29. In connection with seeking advice from OLC, OLC's Executive Branch clients sometimes provide OLC with classified information or other information specifically protected from disclosure under FOIA by statute. OLC does not have original classification authority, but when it receives or makes use of classified information provided to it by its clients, OLC is required to mark and treat that information as derivatively classified to the same extent as its clients have identified such information as classified. Accordingly, all classified information in OLC's possession or incorporated into its products has been classified by another agency or component with original classifying authority.

30. I am familiar with the documents marked classified that are at issue in this case. As identified in the attached index, Documents 2-6 and 8-10 are marked as classified, as are NSD 9 and NSD 36. These documents are marked as classified because they contain information OLC received from other components or agencies that was marked as classified. OLC has also been informed by the relevant entities that information contained in these documents is protected from disclosure under FOIA by statute.

31. Accordingly, OLC is also withholding these documents in part pursuant to Exemptions One and Three. Exemption One, 5 U.S.C. § 552(b)(1), exempts documents classified in the interest of national defense or foreign policy pursuant to an Executive Order from disclosure under FOIA. Exemption Three, 5 U.S.C. § 552(b)(3), exempts documents "specifically exempted from disclosure by statute" from disclosure under FOIA. The application of these exemptions to these documents is addressed in other declarations being filed in

connection with this motion. *See* Declarations of David Sherman (addressing OLC Documents 2, 3, 4, 6, 8, and 9, and NSD 36), David M. Hardy (addressing OLC Documents 5 and 6, and NSD 9), and Antoinette B. Shiner (addressing OLC Document 5). The FBI has also asserted Exemptions Six and Seven over portions of OLC Documents 5 and 6, as described more fully in the Declaration of David M. Hardy.

### *Segregability, Adoption, and Waiver*

32. I have personally reviewed each of the responsive documents that OLC withheld in whole or in part to determine whether any withheld portion or portions could be released without divulging information protected by one or more of the applicable FOIA exemptions. None of the withheld documents or redacted portions of produced documents contain reasonably segregable, nonexempt information.

33. To my knowledge, none of the withheld documents or redacted portions of produced documents have ever been publicly adopted or incorporated by reference by any policymaker as a basis for a policy decision.

34. To my knowledge, none of the withheld documents or redacted portions of produced documents have been previously publicly disclosed. In addition, I am not aware of any public statements by government officials that could constitute waiver of the privileges applicable to the withheld documents or redacted portions of produced documents

### *Discretionary Release*

35. None of the withheld documents or redacted portions of produced documents is appropriate for discretionary release.

\* \* \* \* \* \* \*

36.     In conclusion, I respectfully submit that, except for Document 9, all of the withheld responsive documents or redacted portions of documents described herein are covered by the deliberative process privilege and/or the attorney-client privilege. Accordingly, the withheld documents and portions of documents fall squarely within Exemption Five. The compelled disclosure of these documents would harm the deliberative processes of the government and would disrupt the attorney-client relationship between OLC and its clients throughout the Executive Branch.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: February 26, 2016, Washington, D.C.

_____
PAUL P. COLBORN