**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

                          *Plaintiffs*,

          v.

NATIONAL SECURITY AGENCY,
CENTRAL INTELLIGENCE AGENCY,
DEPARTMENT OF DEFENSE,
DEPARTMENT OF JUSTICE, and
DEPARTMENT OF STATE,

                          *Defendants*.

**Oral Argument Requested**

No. 13-cv-09198 (AT)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jonathan Manes
David Schulz
Divya Musinipally (law student intern)
Daniela Nogueira (law student intern)
Jacob Zionce (law student intern)
Andrew Udelsman (law student intern)
Beatrice Walton (law student intern)
Media Freedom and Information Access Clinic,
    Abrams Institute, Yale Law School
P.O. Box 208215
New Haven, CT 06520
Phone: (212) 850-6103
jonathan.manes@yale.edu

Ashley Gorski
Patrick Toomey
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
agorski@aclu.org


*Counsel for Plaintiffs*

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

I.     Executive Order 12333 ........................................................................... 3

II.    Procedural History ................................................................................. 4

III.    Documents at Issue and Requested Relief ............................................ 6

     A.    Formal Legal Memoranda ........................................................ 6

     B.    Inspector General and Compliance Reports ............................ 7

     C.    Rules and Regulations .............................................................. 8

     D.    Training and Briefing Materials ............................................... 9

     E.    Inadequate Searches ................................................................. 9

ARGUMENT ................................................................................................................... 10

I.     FOIA Imposes Strict Obligations on Agencies and Courts To
Protect the Public's Right To Know ..................................................... 10

II.    The Government Should Be Compelled To Disclose Information
That It Has Officially Acknowledged .................................................. 11

III.    The Government Has Improperly Withheld Documents Under Exemption 5 ........... 15

     A.    Exemption 5 Does Not Permit Agencies To Keep
Their "Working Law" Secret ................................................... 16

         1.  The Partially Withheld Documents Contain Working Law ................... 18

         2.  Documents Withheld in Full Contain Working Law ............................. 21

     B.    The Government Has Failed To Justify the Privileges It Asserts ................ 26

         1.  The Government Has Failed To Justify the
Deliberative Process Privilege .................................................. 26

         2.  The Government Has Failed To Justify the
Attorney-Client Privilege ......................................................... 30

IV.    The Government Has Improperly Withheld Records Under
Exemptions 1 and 3 ............................................................................. 32

     A.    Legal Standards ...................................................................... 32

     B.    The Government Must Segregate and Release Legal Analysis That
Is Not "Inextricably Intertwined" With Exempt Information ...................... 35

     C.    The Government Must Release Segregable, Non-Exempt Information
from the Inspector General and Compliance Reports ................................. 39

     D.    The Government Must Release Segregable, Non-Exempt Information
from Its Rules and Regulations ........................................................ 42

V.    The Government Has Improperly Withheld Documents Under Exemption 7 ........... 43

A.      Legal Standards ................................................................................... 43

B.      The Government Has Failed To Show That Withheld Information Was
        Compiled for Law-Enforcement Purposes .................................................... 44

C.      The Government Has Failed To Segregate and Release
        Non-Exempt Material ............................................................................. 48

VI.     The Court Should Review a Selection of the Documents *In Camera* ......................... 48

VII.    Res Judicata Does Not Bar Plaintiffs' Claims Because New Evidence
        Changes the Legal Analysis Applied in the Prior Case. ............................................ 49

VIII.   The Government's Searches Were Inadequate Under FOIA ...................................... 51

A.      Defendants Have the Burden To Prove That Each Agency Conducted a
        Search Reasonably Calculated To Uncover All Responsive Documents ..... 51

B.      The Government's Declarations Fail To Sufficiently Describe the
        Searches and Confirm That the Searches Were Inadequate ......................... 53

CONCLUSION ................................................................................................................ 60

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA,*
  710 F.3d 422 (D.C. Cir. 2013) ................................................................................. 34

*ACLU v. DOD,*
  389 F. Supp. 2d 547 (S.D.N.Y. 2005) ...................................................................... 33

*ACLU v. DOJ,*
  321 F. Supp. 2d 24 (D.D.C. 2004) ............................................................................ 49

*ACLU v. FBI,*
  No. 11-cv-7562, 2015 WL 1566775 (S.D.N.Y. Mar. 31, 2015) ........................ 34, 35

*Adamowicz v. I.R.S.,*
  552 F. Supp. 2d 355 (S.D.N.Y. 2008) ...................................................................... 32

*Afshar v. Dep't of State,*
  702 F.2d 1125 (D.C. Cir. 1983) ................................................................................ 12

*Allen v. CIA,*
  636 F.2d 1287 (D.C. Cir. 1980) ................................................................................ 49

*Am. Immig. Council v. Dep't of Homeland Sec.,*
  905 F. Supp. 2d 206 (D.D.C. 2012) .......................................................................... 17

*Amnesty Int'l USA v. CIA,*
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) ...................................................................... 34

*Anderson v. Dep't of Health & Hum. Servs.,*
  907 F.2d 936 (10th Cir. 1990) .................................................................................. 33

*Army Times Pub. Co. v. Dep't of Air Force,*
  998 F.2d 1067 (D.C. Cir. 1993) ................................................................................ 30

*Associated Press v. DOD,*
  554 F.3d 274 (2d Cir. 2009) ..................................................................................... 10

*Auto. Club of N.Y. v. Port of N.Y. & N.J.,*
  297 F.R.D. 55 (S.D.N.Y. May 8, 2013) .................................................................... 27

*Bernson v. Interstate Comm.,*
  635 F. Supp. 369 (D. Mass. 1986) ............................................................................ 50

*Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*,
   601 F.3d 143 (2d Cir. 2010) ................................................................. 10

*Brennan Ctr. for Justice v. DOJ*,
   697 F.3d 184 (2d Cir. 2012) ........................................................... *passim*

*Bryant v. Maffucci*,
   923 F.2d 979 (2d Cir. 1991) ................................................................. 11

*Carney v. DOJ*,
   19 F.3d 807 (2d Cir. 1994) ............................................................. 11, 51

*Church of Scientology Int'l v. IRS*,
   995 F.2d 916 (9th Cir. 1993) ............................................................... 44

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................. 16, 17, 27

*Ctr. for Effective Gov't v. DOS*,
   7 F. Supp. 3d 16 (D.D.C. 2013) ............................................... 15, 17, 22

*Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*,
   505 F. Supp. 2d 150 (D.D.C. 2007) .................................................... 36

*DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) ............................................................................ 11

*Elec. Privacy Info. Ctr. v. DOJ*,
   Nos. 06-096, 06-214, 2014 WL 1279280 (D.D.C. Mar. 31, 2014) ......................................... 49

*EPA v. Mink*,
   410 U.S. 73 (1973) .............................................................................. 10

*Families for Freedom v. U.S. Customs & Border Prot.*,
   837 F. Supp. 2d 331 (S.D.N.Y 2011) ................................................. 53

*Fisher v. United States*,
   425 U.S. 391 (1976) ............................................................................ 31

*Grand Cent. P'ship, Inc. v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999) ..................................................... 26, 27, 29

*Halpern v. FBI*,
   181 F.3d 279 (2d Cir. 1999) ................................................... 11, 33, 34

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*,
   929 F.2d 81, 84 (2d Cir. 1991) ..................................................................... 15, 27

*In re Cty. of Erie*,
   473 F.3d 413 (2d Cir. 2007) ............................................................................... 31

*Jordan v. DOJ*,
   591 F.2d 753 (D.C. Cir. 1978) ........................................................................... 16

*Lawyers' Comm. for Human Rights v. I.N.S.*,
   721 F. Supp. 552 (S.D.N.Y. 1989) .................................................................... 49

*Local 3, Int'l Bhd. of Elec. Workers v. NLRB*,
   845 F.2d 1177 (2d Cir. 1988) ...................................................................... 10, 30

*Mead Data Central Inc. v. Dep't of the Air Force*,
   566 F. 2d 242 (D.C. Cir. 1977) ................................................................. *passim*

*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) ........................................................................................... 10

*Montana v. United States*,
   440 U.S. 147 (1979) ........................................................................................... 50

*N.Y. Times Co. v. DOJ*,
   756 F.3d 100 (2d Cir. 2014) ....................................................................... *passim*

*N.Y. Times Co. v. DOJ*,
   No. 14–CV–3777, 2015 WL 5729976 (S.D.N.Y. Sept. 30, 2015) ......................... 25

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ........................................................................................... 10

*Nat'l Council of La Raza v. Dep't of Justice*,
   411 F.3d 350 (2d Cir. 2005) ................................................................. 17, 20, 26

*Nat'l Day Laborer Org. Network v. U.S. Immig. & Customs Enf't Agency*,
   877 F. Supp. 2d 87 (S.D.N.Y. 2012) .................................................... 51, 52, 53

*Nat'l Day Laborer Org. Network v. U.S. Immig. & Customs Enf't Agency*,
   811 F. Supp. 2d 713 (S.D.N.Y. 2011) ............................................................... 27

*Navasky v. CIA*,
   499 F. Supp. 269 (S.D.N.Y. 1980) .................................................................... 33

*Negley v. FBI*,
  589 F. App'x 726 (5th Cir. 2014) ........................................................... 50

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) .............................................................................. 10

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ........................................................................ *passim*

*Oglesby v. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990) ................................................................ 52

*PHE, Inc. v. DOJ*,
  983 F.2d 248 (D.C. Cir.1993) .......................................................... 44, 49

*Phillippi v. CIA*,
  546 F.2d 1009 (D.C. Cir. 1976) .................................................. 11, 33, 41

*Pratt v. Webster*,
  673 F. 2d 408 (D.C. Cir. 1982) ............................................................. 44

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget*,
  598 F.3d 865 (D.C. Cir. 2009) .................................................. 27, 29, 30

*Ray v. Turner*,
  587 F.2d 1187 (D.C. Cir. 1978) ............................................................ 48

*Senate of the Com. of P.R. v. DOJ*,
  823 F.2d 574, 585 (D.C. Cir. 1987) ................................................. 27, 28

*Steinberg v. DOJ*,
  23 F.3d 548 (D.C. Cir. 1994) ................................................................ 52

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ...................................................... 35, 36

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ....................................... 16, 20, 23, 32

*Tax Analysts v. IRS*,
  294 F.3d 71 (D.C. Cir. 2002) ............................................................... 21

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .............................................................................. 49

*Tigue v. DOJ*,
    312 F.3d 70 (2d Cir. 2002) ........................................................... 27

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981).................................................................... 31

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973)..................................................... 49

*Weissman v. CIA*,
    565 F.2d 692 (D.C. Cir. 1977)............................................... 33, 47

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) .......................................................... 41

*Wolfe v. Froehlke*,
    358 F. Supp. 1318 (D.D.C. 1973) ................................................ 50

**Statutes**

5 U.S.C. § 552 ..................................................................... *passim*

10 U.S.C. § 424 ............................................................................ 35

18 U.S.C. § 798 ............................................................................ 35

50 U.S.C. § 3024 ................................................................ 33, 36, 40

50 U.S.C. § 3036 .......................................................................... 47

50 U.S.C. § 3507 .................................................................... 33, 36

50 U.S.C. § 3605 .......................................................................... 36

**Other Sources**

Exec. Order 12333, 46 Fed. Reg. 59,941 (Dec. 4, 1981)...................... *passim*

Exec. Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009).................... 32, 38, 42

Dep't of Justice, *Attorney General's Guidelines for FBI National Security
    Investigations and Foreign Intelligence Collection* (Oct. 31, 2003) ....................... 46

Dep't of Justice, Office of the Inspector General, *A Review of the FBI's Activities
    Under Section 702 of the Foreign Intelligence Surveillance Act Amendments
    Act of 2008* (Sept. 2012) ....................................................... 40

Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure under
the Freedom of Information Act*, 9 J. Legal Stud. 775 (1980) .................................................. 11

IC on the Record, *Statement by the ODNI and DOJ on the Declassification of
Documents Related to the Protect America Act Litigation* (Sept. 11, 2014) ............................ 23

Memorandum from David Barron, Office of Legal Counsel, Memorandum for
Attorneys of the Office; *Re: Best Practices for OLC Legal Advice and
Written Opinions* (July 16, 2010) ........................................................................................... 25

Robert Litt, General Counsel of the Office of the Director of National Intelligence,
*The New Intelligence Sharing Procedures Are Not About Law Enforcement*,
Just Security (Mar. 30, 2016) .................................................................................................. 45

## INTRODUCTION

This case concerns the government's refusal to disclose basic information about the legal boundaries of its surveillance under Executive Order (EO) 12333. EO 12333 is the primary authority under which the NSA gathers foreign intelligence. It provides broad latitude for the government to conduct surveillance on Americans and others alike—without judicial review and other protections that would apply to surveillance conducted under statutory authorities, such as the Foreign Intelligence Surveillance Act. How the government conducts EO 12333 surveillance, and whether it appropriately accommodates the constitutional rights of American citizens and residents whose communications are intercepted in the course of this surveillance, are matters of great public significance.

The full extent of the government's activities under EO 12333 is unknown, but it is clear that, under this authority, the NSA intercepts and collects an enormous amount of content—such as phone calls, emails, and text messages—and so-called "metadata," such as phone records and location information. According to recent news reports, the NSA is, among other things, recording and storing every single cell phone call in, into, and out of at least two countries, including the Bahamas; collecting nearly five billion records per day on the locations of cell phones, including those of Americans; collecting hundreds of millions of contact lists and address books from personal email and instant-messaging accounts; and surreptitiously intercepting data from Google and Yahoo user accounts as that information travels between those companies' data centers located abroad. Despite the breadth of the electronic surveillance conducted under EO 12333, this surveillance has not been subject to meaningful oversight. The former Chairman of the Senate Intelligence Committee, Senator Dianne Feinstein, has candidly acknowledged that Congress has been unable to "sufficiently" oversee EO 12333 surveillance.

In May 2013, Plaintiffs filed FOIA requests with Central Intelligence Agency, Defense Intelligence Agency, Federal Bureau of Investigation, National Security Agency, National Security Division, Office of Legal Counsel, and the Department of State. As modified through negotiations with Defendants, these requests sought EO 12333 implementing regulations, formal training materials, official authorizations of surveillance programs, and formal legal opinions addressing surveillance under EO 12333 that implicates U.S. persons. Plaintiffs filed these requests to learn how the government construes the broad authority conferred by EO 12333 and its regulations.

But Defendants have refused to disclose much of this information, in violation of FOIA. The records that Defendants have withheld under Exemption 5 comprise or describe the government's "working law," which FOIA obliges the government to disclose. Even if these documents did not contain working law, Defendants have failed to justify the privileges they assert. The agencies have also failed to justify their withholdings under Exemptions 1, 3, and 7. In particular, Defendants have failed to segregate and release legal analysis that is not inextricably intertwined with properly classified or otherwise exempt material in 112 legal memoranda. Defendants have also improperly withheld documents that contain information that the government has officially acknowledged. Finally, the government's searches were inadequate under FOIA.

Plaintiffs respectfully request that the Court hold that Defendants have failed to meet their burden to support their sweeping withholdings under FOIA, and order the government to properly segregate and release all non-exempt material from the documents. To the extent that the Court requires additional information, Plaintiffs request that the Court review a subset of the documents *in camera* to assess whether the government's redactions are proper, and that it order

the government to provide critical information about the documents it is withholding—including how those documents have been used and relied upon by the agencies. Finally, the Court should order all of the agencies, with the exception of the National Security Agency and Office of Legal Counsel, to cure the defects in their searches for responsive records.

## BACKGROUND

### I.      Executive Order 12333

EO 12333, originally issued in 1981 by President Ronald Reagan and subsequently revised, is the primary authority under which the NSA gathers foreign intelligence. *See* 46 Fed. Reg. 59,941 (Dec. 4, 1981), *as amended by* EO 13284, 68 Fed. Reg. 4077 (Jan. 23, 2003), EO 13355, 69 Fed. Reg. 53,593 (Aug. 27, 2004), *and by* EO 13470, 73 Fed. Reg. 45,328 (July 30, 2008).[1] The order is used to justify, among other things, undisclosed surveillance activities within the United States, as well as human and electronic surveillance conducted overseas. *See* EO 12333 § 2.4. Collection, retention, and dissemination of EO 12333 information is governed by directives and regulations promulgated by federal agencies and approved by the Attorney General. Although these regulations do not permit the intentional "targeting" of U.S. persons except in limited circumstances, they permit what is sometimes referred to as "bulk surveillance"—the indiscriminate collection of electronic communications or data. Bulk surveillance results in the "incidental" collection of vast quantities of Americans' private information.

EO 12333's stated objective is to authorize the intelligence community to gather the information necessary to protect U.S. interests from "foreign security threats." *See* EO 12333 § 1.1. Despite this stated goal, the executive order is used to justify surveillance for a broad range

---

[1] *See* EO 12333, as amended, *available at* http://1.usa.gov/1XHwBqG.

of purposes, resulting in the collection, retention, and use of information from large numbers of U.S. persons who have no nexus whatsoever to foreign security threats.

## II.     Procedural History

Plaintiffs are non-profit organizations dedicated to protecting civil liberties and educating the public about their government's functioning. Motivated by concerns about electronic surveillance that implicates U.S. persons with no statutory constraint and little oversight, Plaintiffs filed substantially similar FOIA requests on May 13, 2013, with the Central Intelligence Agency ("CIA"), Defense Intelligence Agency ("DIA"), Federal Bureau of Investigation ("FBI"), National Security Agency ("NSA"), National Security Division ("NSD"), Office of Legal Counsel ("OLC"), and the Department of State ("State"). *See* Second Am. Compl. (ECF No. 44). The requests sought disclosure of the legal standards and limitations governing EO 12333 surveillance; rules and regulations issued under that authority; and records describing minimization procedures. *See, e.g.*, Ex. 1 to Decl. of David J. Sherman ("NSA Decl.") (ECF No. 64-2).

After exhausting administrative remedies, Plaintiffs filed their complaint on December 30, 2013 and an amended complaint on February 18, 2014. *See* ECF Nos. 1, 17. On April 16, 2014, the parties appeared before the Court, and Plaintiffs subsequently agreed to modify the scope of their requests to expedite the release of information. *See* ECF No. 27. Following extended negotiations by the parties, the Court approved a stipulation on May 9, 2014, requiring NSA, CIA, DIA, FBI, and State to search for five categories of records:

> a. Any formal regulations or policies relating to that Agency's authority under EO 12,333 to undertake Electronic Surveillance[;]
>
> b. Any document that officially authorizes or modifies under EO 12,333 that Agency's use of specific programs, techniques, or types of Electronic Surveillance that implicate United States Persons, or documents that adopt or

modify official rules or procedures for the Agency's acquisition, retention, dissemination, or use of information or communications to, from, or about United States persons under such authority generally or in the context of particular programs, techniques, or types of Electronic Surveillance[;]

c. Any formal legal opinions addressing that Agency's authority under EO 12,333 to undertake specific programs, techniques, or types of Electronic Surveillance that implicates United States Persons[;]

d. Any formal training materials or reference materials . . . that expound on or explain how that Agency implements its authority under EO 12,333 to undertake Electronic Surveillance that implicates United States Persons[; and]

e. Any formal reports relating to Electronic Surveillance under EO 12,333 implicating United States Persons, one of whose sections or subsections is devoted to (1) the Agency's compliance . . . with EO 12,333, its implementing regulations, the Foreign Intelligence Surveillance Act, or the Fourth Amendment; or (2) the Agency's interception, acquisition, scanning, or collection of the communications of United States Persons[.]

Stipulation & Order ¶ 3 (ECF No. 30).

Plaintiffs and OLC reached a separate agreement that limited the request to certain categories of final legal advice. *Id.* ¶ 2. NSD separately agreed to search for and process all documents responsive to Plaintiffs' original FOIA request. *Id.* ¶ 4. While the other Defendants were processing Plaintiffs' requests, Plaintiffs submitted a revised FOIA request to NSD, which NSD then processed. Thereafter, Plaintiffs filed their Second Amended Complaint, which incorporates the revised NSD request. *See* ECF No. 47.

Following Defendants' productions, Plaintiffs identified a subset of the withheld documents that they intended to challenge. On December 8, 2015, the parties submitted a pre-motion letter to the Court that described their agreement to limit their litigation to (1) the lawfulness of the redactions and withholdings in a subset of responsive documents, and (2) the adequacy of the agencies' searches (exempting OLC). *See* ECF No. 52.

**III.     Documents at Issue and Requested Relief**

The documents at issue in this motion fall into four categories: (1) formal legal memoranda, (2) Inspector General and compliance reports, (3) rules and regulations, and (4) training and briefing materials.

**A.     Formal Legal Memoranda**

Nearly all of the 112 legal memoranda have been improperly withheld in full, and nearly all have been withheld under Exemptions 1, 3, and 5. *See* Plaintiffs' Index of Contested Documents ("Plaintiffs' Index"), at 1-9 (Ex. A to Manes Decl.). For many of the memoranda withheld in full, it appears that the agencies are claiming Exemptions 1 and 3 only over portions of the memoranda, not the documents in their entirety. For example, NSA has not yet determined the extent to which portions of OLC 2, 3, 4, 6, 8 and NSD 36 may be withheld pursuant to Exemptions 1 and 3, because it concluded that the memoranda may be withheld in full under Exemption 5.

However, given the scope of Plaintiffs' request for "formal" or "final" legal memoranda—and given what can be gleaned from the memoranda disclosed in part—there is good reason to believe that many of the legal memoranda comprise or contain Defendants' "working law." Accordingly, they may not be withheld under Exemption 5. Even if the memoranda do not contain working law, Defendants have not provided facts justifying their assertions of privilege, and accordingly, Exemption 5 does not apply.

To the extent that Defendants are asserting Exemptions 1 and 3 over the legal memoranda in their entirety, they have failed to show that they have disclosed all "segregable" legal analysis, *i.e.*, legal analysis that it is not "inextricably intertwined" with properly exempt facts. *See infra* Section IV.B.

Plaintiffs respectfully request that the Court grant the following relief for the formal legal memoranda at issue:

- With respect to Exemption 5, hold that the government has not met its burden to show that the exemption applies because the memoranda contain working law, and/or the government has failed to justify the privileges it asserts.

- In the alternative:
  - Review a representative sample of the memoranda—including CIA 65, NSA 16, NSD 4 and 10, and OLC 2 and 5—*in camera* to assess whether they contain working law.

  - Order the government to supplement its declarations with facts justifying the Exemption 5 privileges, as well as facts describing how each memorandum was used and relied upon by the agencies—including whether each memorandum formed the legal basis for approving or authorizing an agency surveillance activity.

- With respect to Exemptions 1 and 3, order the government to conduct a proper segregability analysis and to release all non-exempt portions of the memoranda.

- With respect to Exemption 7, hold that the exemption does not apply to the withheld information in OLC 5 and 6 because it was not compiled for law-enforcement purposes under FOIA.

### B.    Inspector General and Compliance Reports

Nearly all of the 13 Inspector General and compliance reports have been withheld in full under Exemptions 1 and 3. *See* Plaintiffs' Index at 9-10. Defendants have plainly failed to segregate non-exempt material from these reports, as evidenced by the fact that NSA has published significant portions of its Intelligence Oversight Board compliance reports—and multiple Inspector General reports concerning other surveillance programs—even though those reports are likely very similar to those that NSD and the NSA are withholding in full here. Separately, in the compliance reports that Defendants have released in part, they continue to withhold the *number* of compliance violations that have occurred. This information is critical to

the public's understanding of these programs, and disclosing it would not reveal intelligence activities, sources, or methods. *See infra* Section IV.C.

Plaintiffs respectfully request that the Court grant the following relief with respect to the Inspector General and compliance reports at issue:

- Hold that the number of compliance incidents may not be withheld under Exemptions 1 and 3.

- Review a representative sample of the reports—including CIA 12, NSA 23, and NSD 44—*in camera* to assess Defendants' failure to release segregable, non-exempt material. Order Defendants to release all segregable portions of these documents.

- With respect to the remaining reports, order the government to conduct a proper segregability analysis and to release all non-exempt portions of the reports.

## C.      Rules and Regulations

Although most of Defendants' rules and regulations have been released in part, many still contain overbroad redactions under Exemptions 1 and 3. *See* Plaintiffs' Index at 10-11. Defendants have failed to establish that they have disclosed all segregable, non-exempt material from these 17 documents. *See infra* Section IV.D.

Plaintiffs respectfully request that the Court grant the following relief for the rules and regulations at issue:

- Hold that Exemption 5 does not apply to NSD 2 or CIA 22 because the government has failed to justify its assertion of the deliberative process privilege.

- Review a representative sample of the documents—including CIA 4 and NSD 202-207—*in camera* to assess Defendants' failure to release segregable, non-exempt material. Order Defendants to release all segregable portions of these documents.

- With respect to the remaining rules and regulations, order the government to conduct a proper segregability analysis and to release all non-exempt portions of the documents.

- Hold that Exemption 7 does not apply to the withheld information in CIA 4, FBI 13-15, FBI 30-35, FBI 57-65, and NSD 202-207, because it was not compiled for law-enforcement purposes under FOIA.

8

**D.      Training and Briefing Materials**

Defendants have improperly asserted Exemptions 1, 3, and 5 over the eight training and briefing materials at issue. *See* Plaintiffs' Index at 11. These materials include references to rules, regulations, and legal analysis. Here, too, there is reason to believe that the documents contain working law. In any event, Defendants have failed to justify their assertions of privilege, and accordingly, Exemption 5 does not apply. With respect to Exemptions 1 and 3, Defendants have failed to establish that they have disclosed all segregable, non-exempt material contained within the documents—such as legal analysis that is not inextricably intertwined with exempt facts.

Plaintiffs respectfully request that the Court grant the following relief for the training and briefing materials at issue:

- Hold that Exemption 5 does not apply to the training and briefing materials because they contain working law and/or the government has failed to justify its assertion of the deliberative process privilege.

- Review a representative sample of the documents—including CIA 46 and DIA V-4— *in camera* to assess Defendants' failure to release segregable, non-exempt material. Order Defendants to release all segregable portions of these documents.

- With respect to the remaining training and briefing materials, order the government to conduct a proper segregability analysis and to release all non-exempt portions of the documents.

**E.      Inadequate Searches**

Finally, the Court should order all of the agencies, with the exception of the NSA and OLC, to cure the defects in their searches for responsive records. *See infra* Section VIII.

## ARGUMENT

**I.     FOIA Imposes Strict Obligations on Agencies and Courts To Protect the Public's Right To Know.**

Congress enacted FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[FOIA is] a means for citizens to know 'what their Government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004). To that end, the courts enforce a "strong presumption in favor of disclosure." *Associated Press v. DOD*, 554 F.3d 274, 283 (2d Cir. 2009). The statute requires disclosure of responsive records unless a specific exemption applies, and the exemptions are given "a narrow compass." *Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011). Even where an exemption has been properly invoked over a particular document, "[a]ny reasonably segregable portion of a record shall be provided," and the government may withhold only those specific "portions which are exempt." 5 U.S.C. § 552(b); *see also EPA v. Mink*, 410 U.S. 73, 93 (1973).

FOIA directs courts to conduct a *de novo* review when reviewing an agency's decision to withhold information or records under FOIA. Consistent with FOIA's presumption of public access to agency records, "all doubts [are] resolved in favor of disclosure." *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988); *see also Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

FOIA is particularly hostile to secret law and to government efforts—as in this case—to withhold documents that constitute the legal rules according to which it operates. As the Supreme Court has observed, FOIA "represents a strong congressional aversion to 'secret

[agency] law,' and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). Indeed, FOIA's "primary objective is the elimination of 'secret law.'" *See* Frank H. Easterbrook, *Privacy and the Optimal Extent of Disclosure under the Freedom of Information Act*, 9 J. Legal Stud. 775, 777 (1980).

To prevail on a motion for summary judgment, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (internal quotation marks omitted); *see Carney v. DOJ,* 19 F.3d 807, 812 (2d Cir. 1994). To satisfy this burden, an agency invoking a FOIA exemption must "provide a *public* affidavit explaining in as much detail as is possible the basis for its claim." *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (emphasis added). Withholdings, including redactions, must be justified by affidavits or declarations "supplying facts . . . giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812; *see also Mead Data Central Inc. v. Dep't of the Air Force*, 566 F. 2d 242, 250-51 (D.C. Cir. 1977) (stating that a plaintiff cannot be "deprived of the opportunity to effectively present its case to the court because of the agency's inadequate description of the information withheld and exemptions claimed"); *Halpern v. FBI*, 181 F.3d 279, 293-95 (2d Cir. 1999). Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## II.   The Government Should Be Compelled To Disclose Information That It Has Officially Acknowledged.

Under the well-established "official acknowledgment" doctrine, the government cannot withhold information that it has already disclosed to the public. *N.Y. Times Co. v. DOJ*, 756 F.3d

100, 114, 119-20 (2d Cir. 2014). Thus, even if all of the information the agencies seek to withhold here were once protected by Exemptions 1, 3, and/or 5—and it was not, *see infra* Sections III & IV—the agencies may not withhold it unless it differs materially from information that the government has already revealed. *Id.* at 113-14 (discussing application of official-acknowledgment doctrine to Exemptions 1 and 5); *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1132 (D.C. Cir. 1983) (once the government has chosen to disclose information, it may not withhold closely related information unless it is "in some material respect different from" information it has already disclosed). Here, it is plain that Defendants have improperly withheld information that they have already officially acknowledged.

For example, OLC is almost certainly withholding information in OLC 8 that it has officially acknowledged elsewhere. *See* OLC 8 (Ex. B to Manes Decl.). This document is a 24-page, November 2, 2001 memo from John Yoo to the Attorney General, which addresses the lawfulness of President Bush's warrantless wiretapping program, known as "STELLAR WIND." OLC has withheld all but eight lines of text from this memo. *See id.* But it is clear that the withheld portions of the memo closely track legal analysis the government has already disclosed. The subject-matter, text, pagination, and length of OLC 8 all correspond to that of OLC 9—a 22-page memorandum and two-page appendix from John Yoo to Judge Colleen Kollar-Kotelly of the Foreign Intelligence Surveillance Court, dated May 17, 2002, which also addresses the lawfulness of STELLAR WIND, and which was recently disclosed by the government with few redactions.[2] *See* OLC 9 (Ex. C to Manes Decl.). Notably, the eight lines of text in OLC 8 are

---

[2] In OLC 9, Yoo analyzed whether STELLAR WIND's warrantless electronic surveillance for national security purposes would violate EO 12333, which limits the ability of the NSA and other intelligence agencies to use electronic surveillance within the United States or directed against U.S. persons. *See* OLC 9 at 3-5. Yoo concluded that even if STELLAR WIND

identical to text in OLC 9. *Compare, e.g.*, OLC 8 at 7 ("FISA only provides a safe harbor for electronic surveillance, and cannot restrict the President's ability to engage in warrantless searches that protect the national security."), *with* OLC 9 at 5 (same). Because OLC has officially acknowledged its legal analysis in OLC 9—including Yoo's determination that the executive branch can engage in warrantless electronic surveillance within the United States, notwithstanding EO 12333 and statutory prohibitions—Defendants must disclose any closely related material, such as the analysis in OLC 8.

OLC appears to be improperly withholding other officially acknowledged information as well. For example, OLC 3, 4, and 8 likely include information disclosed in OLC 10, a 108-page memorandum from Jack Goldsmith to the Attorney General, dated May 6, 2004, supporting the reauthorization of STELLAR WIND. *See* OLC 10 (Ex. D to Manes Decl.). OLC 10 appears to contain legal analysis that is closely related—if not identical—to legal analysis in OLC 3, 4, and 8. *Compare* OLC 10 at 17 ("This Office has issued several opinions analyzing constitutional and other legal issues related to the STELLAR WIND program." (citing, *inter alia*, an October 2001 and November 2001 memorandum)), *with* OLC Vaughn (Ex. A to Decl. of Paul P. Colborn ("OLC Decl.")) (ECF. No. 67-1) (withholding October and November 2001 memoranda, designated OLC 4 and OLC 8); *see also* OLC 10 at 22-24 (describing "Prior Opinions of this Office" on constitutional avoidance and the authority of the President to engage in warrantless surveillance). OLC 3, 4, and 8 also likely include information disclosed in a series of Office of Inspector General reports on STELLAR WIND that were released to the public in September 2015. *See, e.g.*, Dep't of Justice, Office of Inspector General, *A Review of the Department of Justice's Involvement with the President's Surveillance Program* (July 2009) ("OIG Report") at

---

surveillance conflicted with EO 12333, the President need not issue a new executive order when he wishes to depart from the terms of a previous executive order. *See id.* at 5.

25, 28, 31 n.39 (Ex. E to Manes Decl.) (discussing September and October 2001 memoranda by Yoo—presumably OLC 3 and 4—concerning the President's authority to engage in warrantless domestic surveillance); *id.* at 33-38 (describing a November 2001 memorandum by Yoo—presumably OLC 8—at length).[3]

Given the breadth of the officially acknowledged legal analysis in OLC 9 and 10, it is almost certain that at least some of the other legal memoranda withheld by CIA, NSA, NSD, and OLC incorporated aspects of these two memos, such as their view of the scope of the executive branch's authority to conduct warrantless surveillance. Insofar as any of the analysis disclosed in OLC 9, OLC 10, or the OIG Report is closely related to the analysis in any of the other withheld material in this case, the official-acknowledgment doctrine compels disclosure. *See N.Y. Times Co.*, 756 F.3d at 114, 119-20.

Finally, OLC's declaration concedes that it is "possible" that material officially acknowledged in the 740-page multi-agency report on STELLAR WIND also appears in portions of OLC 10 that were redacted. OLC Decl. ¶ 24. In light of the government's September 2015 disclosure of this multi-agency report, Plaintiffs respectfully request that the Court order the re-processing of OLC 10 and any other withheld documents that include information discussed in the report, such as OLC 3, 4, and 8. *See N.Y. Times Co.*, 756 F.3d at 110 n.8, 124 (ordering re-processing of documents in response to official government disclosures post-dating the plaintiffs' FOIA request).

---

[3] The Department of Justice's OIG Report comprises one section of the larger report. *See* Offices of Inspectors General of the Dep't of Defense, Dep't of Justice, *et al.*, *Report on the President's Surveillance Program* (July 10, 2009), http://1.usa.gov/1WEnWqJ.

**III.     The Government Has Improperly Withheld Documents Under Exemption 5.**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption "incorporate[s] into the FOIA all the normal civil discovery privileges." *Hopkins v. U.S. Dep't of Hous. & Urban Dev.,* 929 F.2d 81, 84 (2d Cir. 1991).

Defendants CIA, DIA, NSD, OLC and NSA have asserted Exemption 5 privileges with respect to 109 documents that were withheld in full and four additional documents that were released with redactions. Of the 113 documents in question, 106 are legal memoranda; two are statements of rules and regulations; and five are training and briefing materials. *See* Plaintiffs' Index. Defendants rely primarily on the deliberative process and attorney-client privileges to withhold the documents.[4]

The government's withholdings under Exemption 5 fail for two independent reasons: first, the documents contain working law, and second, the government has failed to justify the privileges it asserts. Accordingly, the Court should order their disclosure. At a minimum, the Court should review *in camera* a representative sample of documents at issue to assess whether they contain working law.[5] It should also order the government to supplement its declarations

---

[4] The government has asserted the presidential communications privilege over only two documents: NSA 12 and NSD 18. Although Plaintiffs do not contest that the government has met its burden to invoke this particular privilege, the privilege is voided by the working-law doctrine. *See Ctr. for Effective Gov't v. DOS*, 7 F. Supp. 3d 16, 27-29 (D.D.C. 2013). Because the two documents at issue do indeed constitute working law, *see infra* Section III.A, Exemption 5 does not apply.

[5] This representative sample should include the following legal memoranda: CIA 65, NSA 16, NSD 4, NSD 10, OLC 2, OLC 5; and the following training and briefing materials: CIA 46 and DIA V-4.

with facts justifying the privileges, as well as facts describing how each document has been used and relied upon by the agencies.[6]

A.    **Exemption 5 Does Not Permit Agencies To Keep Their "Working Law" Secret.**

Under the "working law" doctrine, agencies cannot rely on Exemption 5 to withhold the opinions, rules, and interpretations that constitute their formal or informal law or policy, regardless of whether those documents would otherwise be privileged. *Brennan Ctr. for Justice v. DOJ*, 697 F.3d 184, 195-96, 199-202 (2d Cir. 2012). A document is considered "working law" if it contains the agency's "effective law and policy," *Sears*, 421 U.S. at153; sets out the "positive rules that create definite standards" for agency action, *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978); or is "routinely used" and "relied on" by the agency, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980). Working law also includes agency opinions about "what the law is" and "what is not the law and why it is not the law." *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997).

This limit on the scope of Exemption 5 is grounded in the text of FOIA itself. As the Second Circuit has explained, "the 'working law' analysis is animated by the affirmative provisions of FOIA," which require agencies to disclose their operative rules to the public. *Brennan*, 697 F.3d at 200; 5 U.S.C. § 552(a)(1)-(2). In this scheme, the working-law doctrine serves a vital function: it ensures that an agency does not thwart FOIA's requirements by "develop[ing] a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated

---

[6] To facilitate this Court's analysis of whether the documents contain working law, the government should explain, for example, whether each memorandum analyzed an agency surveillance activity that was approved or undertaken, or whether the reasoning and conclusions in the memorandum were rejected by the agencies that received them.

as . . . 'binding.'" *Am. Immig. Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 218 (D.D.C. 2012) (quoting *Coastal States*, 617 F.2d at 867); *see also Sears*, 421 U.S. at 153 (explaining that any judicial application of Exemption 5 must account for the "strong congressional aversion to 'secret (agency) law'"); *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 360 (2d Cir. 2005) (stating that an agency's assertion that "it may adopt a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA").[7]

Defendants have asserted the deliberative process privilege, attorney-client privilege, and/or the presidential communications privilege over numerous documents that appear to contain the "effective law and policy" actually applied by the agencies. *Brennan*, 697 F.3d at 199 (quoting *Sears*, 421 U.S. at 153). Even assuming that these privileges applied to the withheld material—and for the reasons discussed *infra*, they do not—the working-law doctrine overcomes each of these privileges. *See, e.g.*, *Brennan*, 697 F.3d at 194-95; *Ctr. for Effective Gov't v. DOS*, 7 F. Supp. 3d 16, 27-29 (D.D.C. 2013); *see also La Raza*, 411 F.3d at 360 (once an attorney's opinion "becomes agency law, the agency is then responsible for defending that policy," and cannot withhold it under Exemption 5). Importantly, it is not Plaintiffs' burden to show that the materials are working law or were adopted as a final agency position; rather, as under FOIA

---

[7] Although some case law discusses "adoption" as distinct from the working-law doctrine, both lead to the same result: documents containing an agency's conclusive legal interpretation or policy are not privileged under FOIA. *See, e.g.*, *Brennan*, 697 F.3d at 194-95, 201. Express "adoption" is one way of establishing that a particular position or policy constitutes an agency's working law—but it is not the only evidence a court considers. Thus, Defendants' conclusory assertions that withheld documents "have not been expressly adopted or incorporated by reference by any Government decision-maker" are not dispositive of the working-law inquiry. NSD Decl. ¶ 18; *see also* NSA Decl. ¶ 53 (asserting that the documents at issue have not been used to "publically justify NSA actions" and were not "expressly adopted").

generally, it is the agencies' burden to show that Exemption 5 properly applies. *See Brennan*, 697 F.3d at 201-02.

### 1.       The Partially Withheld Documents Contain Working Law.

Defendants have partially withheld four documents under Exemption 5: OLC 8, OLC 10, NSA 28, and DIA V-4. These documents make clear that Defendants are improperly suppressing their working law.

For example, although portions of OLC 10 have been withheld under Exemption 5, this document—and others like it—plainly contain the "working law" of the executive branch agencies that implemented President Bush's warrantless domestic surveillance program, known as STELLAR WIND. As discussed above, OLC 10 is a May 2004 memorandum from Jack Goldsmith to the Attorney General, analyzing the lawfulness of this surveillance program and supporting its reauthorization. As the memorandum explains, STELLAR WIND was initially authorized by the President on October 4, 2001, for a period of thirty days. *See* OLC 10 at 8. After the initial authorization, the program was reauthorized for defined periods, typically every 30 or 45 days. *Id.* According to the memo, OLC's legal analysis played a central role in the reauthorization process—creating the effective law and policy of the executive branch agencies implementing STELLAR WIND:

> As the period of each reauthorization nears an end . . . [b]ased upon the information provided [to OLC] in the recommendation [by the Director of Central Intelligence and the Secretary of Defense], and also taking into account information available to the President from all sources, this Office assesses whether there is a sufficient factual basis demonstrating a threat of terrorist attacks in the United States for it to continue to be reasonable under the standards of the Fourth Amendment for the President to authorize the warrantless searches involved in STELLAR WIND. (The details of the constitutional analysis this Office has applied are reviewed in Part V of this memorandum.) . . . After reviewing each of the proposed STELLAR WIND reauthorizations, this Office [OLC] has advised you [the Attorney General] that the proposed reauthorization would satisfy relevant constitutional standards of reasonableness under the Fourth

Amendment, as described in this Office's earlier memoranda. Based on that advice, you have approved as to form and legality each reauthorization to date, except for the Authorization of March 11, 2004 (discussed further below), and forwarded it to the President for his action.

*Id.* at 9.

It is indisputable that the Department of Justice and President Bush relied on OLC 10 in reauthorizing STELLAR WIND—and, thus, it is working law. *See, e.g.*, OLC 10 at 108; OIG Report at 14-15 & n.17, 17 (describing how OLC submitted its memoranda to the Attorney General or other senior DOJ official, who approved the surveillance "as to form and legality," and how the President in turn issued "Presidential Authorizations" to implement the surveillance). Thus, because OLC 10 represented the government's controlling legal interpretation of its authority to conduct the warrantless wiretapping program, the memo cannot be withheld pursuant to Exemption 5. *See Sears*, 421 U.S. at 153. For the same reason, the government must also disclose any other withheld memoranda that served as the legal basis for the authorization (or reauthorization) of STELLAR WIND surveillance. At a minimum, that appears to be true of OLC 3, 4, and 8, which were likely the foundation for the October 4, 2001 authorization of STELLAR WIND and its reauthorization on November 2 and November 30, 2001. *See* OLC 10 at 17; OIG Report at 25, 28, 33-38, 193 ("In reliance on Yoo's advice, the Attorney General certified the program 'as to form and legality' some 20 times before Yoo's analysis was determined to be flawed by his successors[.]"). For these memos, too, the working-law doctrine overcomes Defendants' assertions of privilege.

The working-law doctrine also overcomes NSA's assertions of privilege over portions of NSA 28, a legal memorandum from the NSA Associate General Counsel for Operations to the NSA Deputy Chief of Staff. This memo is a "legal review in order to set out the limits—and the rationale associated with the limits—on allowing personnel from other agencies access to NSA

19

databases." NSA 28 at 1 (Ex. F to Manes Decl.). The NSA has redacted several passages as privileged, despite the fact that they appear to reflect the NSA's view of "what the law is." *Tax Analysts*, 117 F.3d at 617. For instance, after explaining that "The Department of Justice has adopted the position that this analysis [about the expectation of privacy a person has in the numbers he dials on his telephone] extends to other signaling, dialing, routing and addressing information other than the numbers one dials on his telephone, *and NSA OGC concurs*," the agency has redacted a block of text—text that presumably explains *why* NSA OGC concurs. NSA 28 at 3 n.4 (emphasis added). But as the Second Circuit has emphasized, an agency cannot adopt a final opinion while "shielding from public view the analysis that yielded that position." *La Raza*, 411 F.3d at 360. Because the redacted portions of the NSA 28 contain the NSA's opinions about what the law is—or the reasoning supporting those opinions—they cannot be withheld under Exemption 5.

The working-law doctrine also overcomes DIA's assertion of privilege to withhold portions of DIA V-4, a PowerPoint presentation that was "created for the purpose of advising government employees on the proper application of, and legal aspects associated with, specific human intelligence ('HUMINT') operations and intelligence oversight." Decl. of Alesia Y. Williams ("DIA Decl.") ¶ 23 (ECF No.62). As the text of the presentation makes plain, the document was intended to provide "an overview of legal restrictions" and "rules." DIA V-4 at 2. Despite the fact that the presentation was designed to convey DIA's view of "what the law is," *Tax Analysts*, 117 F.3d at 617, DIA has improperly withheld portions of the document under Exemption 5. *See* DIA V-4 at 7 (redacting text following the rules governing collection of U.S. person information); *id.* at 13 (redacting text under "Rules for Foreign Nationals Vs. US Persons"). The DIA's declaration does nothing to establish that the document's contents are not

working law. It merely states that "these discussions and recommendations are a foundational component to subsequent decisions on related activity." DIA Decl. ¶ 10. But the fact that agency employees may later apply these directives in specific cases does not establish that the rules are something other than working law. *See Brennan*, 697 F.3d at 201 (to qualify as working law, it is "not necessary" for a document to "reflect the final programmatic decisions" of agency personnel; it is enough that they represent the agency's "final legal position" concerning the relevant law or regulations at issue). Moreover, DIA's conclusory assertion does not overcome the evidence in the presentation itself, which straightforwardly shows that it contains legal rules—not mere "recommendations"—concerning the targeting of U.S. persons under EO 12333.

### 2.    Documents Withheld in Full Contain Working Law.

Although Defendants have consistently failed to provide sufficiently detailed descriptions of withheld material, *see infra* Section III.B, their Vaughn indices and declarations indicate that many of the documents withheld in full—including over 100 legal memoranda—contain the agencies' working law. This is so for three reasons. First, several of the memoranda are explicitly part of "approval packages" for agencies' final decisions to undertake surveillance activities under EO 12333, and thus constitute the agencies' view of what the law is. Second, dozens of the documents are intra-agency memoranda written by Defendants' general counsel's offices. Internal legal advice from a general counsel's office is especially likely to be binding within an agency and to represent the agency's view of the law is. Third, the final OLC memoranda at issue are likely to constitute Defendants' effective law, not least because they form the legal basis for the approval of surveillance activities undertaken by the executive branch.

Defendants have improperly asserted Exemption 5 over several legal memoranda that are part of "approval packages" for NSA surveillance. For example, NSD and OIP have withheld as

privileged a June 20, 2003 memorandum "from the Attorney General to the President" "*Approving* an NSA Program." *See* NSD Vaughn at 4 (Ex. A. to Decl. of John Bradford Wiegmann ("NSD Decl.")) (ECF No. 65-1) (describing NSD 18) (emphasis added); Decl. of Christina M. Butler ("OIP Decl.") ¶¶ 9, 13-16 (ECF No. 66). The reasoning and conclusions that formed the basis for the Attorney General's approval of this NSA program constitute working law—thus defeating any privilege that may have once applied. *See Ctr. for Effective Gov't*, 7 F. Supp. 3d at 27-29 (explaining that the presidential communications privilege does not overcome the working-law doctrine; to hold otherwise would "permit[] [the President] to convey orders through the Executive Branch without public oversight . . . to engage in what is in effect governance by 'secret law'"). Other NSD memoranda appear to be similarly integral to the authorization of NSA activities under EO 12333. *See, e.g.*, NSD 12 ("NSD Memo on an NSA Program and Accompanying Documentation"), NSD 13 (same), NSD 14 (same).

NSD 4 is another example of agency-approved legal analysis that formed the basis for agency action. This document is a November 20, 2007 "NSD Legal Memo on Amending DoD Procedures and Accompanying Documentation." *See* NSD Vaughn at 1; NSA Decl. ¶ 56. Based on this description, NSD 4 is undoubtedly identical to a November 20, 2007 NSD document that has already been published in the press. *See* Kenneth L. Wainstein, Assistant Attorney General, National Security Division, "Proposed Amendment to Department of Defense Procedures to Permit the National Security Agency to Conduct Analysis of Communications Metadata Associated with Persons in the United States" (Nov. 20, 2007) ("Wainstein Memo"), http://bit.ly/1p2yK4d (Ex. G to Manes Decl.).[8] The Wainstein Memo is quintessential working

---

[8] Although the public version of the Wainstein Memo is four pages shorter than NSD 4, the public version is missing one of its three appendices. *See* Wainstein Memo at 3 (describing a letter from CIA "attached at Tab C" that was not attached to the publicly released version).

law: it supplied the legal basis for the adoption of new Department of Defense procedures that dramatically expanded the government's ability to review Americans' metadata collected under EO 12333. And there is no question that the Wainstein Memo's proposed procedures were in fact approved by the Secretary of Defense and the Attorney General. *See id.* at Appendix A ("Department of Defense Supplemental Procedures Governing Communications Metadata Analysis").[9] Thus, because NSD 4 contains working law, it cannot be withheld under Exemption 5.

NSA has similarly withheld approval packages containing legal memoranda. For example, NSA 11 is a "Legal Memorandum and Associated Approval Documentation," and NSA 12 is an "Approval Package for an NSA Program" that includes a "formal legal memorandum written by DOJ." If the activities and programs discussed in these documents were ultimately approved, then the underlying legal analysis in NSA 11 and 12 constitutes the agency's binding working law. These examples are merely illustrative; insofar as *any* of the withheld memoranda set out the legal foundation for surveillance activities, or established the legal limits of those activities, the memoranda constitute working law and cannot be withheld under Exemption 5.

Defendants have also withheld dozens of internal memoranda from their general counsel's offices. Yet legal advice from an agency general counsel's office is especially likely to reflect the agency's authoritative view of what the law is, and to set the outer limits of agency action. This kind of authoritative guidance is precisely the type of analysis that is not subject to Exemption 5. *See, e.g.*, *Sears*, 421 U.S. at 153; *Tax Analysts*, 117 F.3d at 617. For instance, the

---

[9] Indeed, the government has officially acknowledged these supplemental procedures. *See* IC on the Record, *Statement by the ODNI and DOJ on the Declassification of Documents Related to the Protect America Act Litigation* (Sept. 11, 2014), http://bit.ly/1DbJosI (describing release of procedures to the public).

CIA has withheld in full over 70 memoranda from "attorneys in the CIA's Office of General Counsel" to CIA components that "provid[e] legal advice in response to a request for legal guidance on a particular issue." Decl. of Antoinette B. Shiner ("CIA Decl.") ¶ 23 (ECF No. 60); *see e.g.*, CIA Vaughn at 5 (Ex. A to CIA Decl.) (ECF No. 60-1). Because the Office of General Counsel's legal advice is almost certainly binding on the CIA components that request and receive the advice, these memoranda very likely reflect the agency's working law—thus overcoming the CIA's assertions of both the attorney-client and deliberative process privileges. *See Sears*, 421 U.S. at 156-57; *see also, e.g.*, NSA Decl. ¶¶ 45, 53 (describing NSA withholdings of several legal memoranda and correspondence from its Office of General Counsel to its "internal clients"). Moreover, Defendants have withheld several memoranda written by "senior" attorneys, making it all the more likely that the memos reflect the agency's final and binding view of the law. *See, e.g.*, NSA Vaughn at 3 (Ex. 13 to NSA Decl.) (ECF No. 64-14) (describing NSA 16 as "[a] legal memorandum written by a senior NSA intelligence law attorney providing legal guidance to the Director of NSA's Signal Intelligence Directorate").

Finally, the government has also withheld in full several memoranda authored by the Office of Legal Counsel, and there is good reason to believe that these memos contain the government's working law.[10] As discussed above, it is plain that the Attorney General and the President accepted and relied on OLC's analyses of the lawfulness of STELLAR WIND. *See supra* Section II (discussing OLC 3, 4, 8, 9, and 10). Similarly, Theodore Olson's May 1984 memorandum to the Attorney General—which has been improperly withheld here as OLC 1 and 2—appears to have served as the government's working law for *decades*. *See* OLC Vaughn at 1 (withholding "[l]egal advice memorandum discussing E.O. 12333 surveillance and addressing

---

[10] *See* OLC 1, 2, 3, 4, 5, 6,7; NSD 9 ("OLC Legal Advice Memorandum to FBI General Counsel"); NSD 36 ("OLC Legal Advice Memorandum on an NSA Program").

legal issues relating to certain surveillance activities" and its cover memorandum). As recently as 2007, the Attorney General and NSD accepted and relied on this memorandum in approving new Department of Defense procedures concerning EO 12333. Specifically, the Wainstein Memo—which, as noted above, analyzed procedures that were accepted by both the Secretary of Defense and Attorney General—expressly adopted the analysis of an earlier May 1984 "Olson Memorandum." *See* Wainstein Memo at 4 n.4 (quoting from "Memorandum for the Attorney General from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Constitutionality of Certain National Security Agency Electronic Surveillance Activities Not Covered Under the Foreign Intelligence Surveillance Act of 1978*"). The fact that OLC's advice is typically authoritative and binding on its recipients makes it all the more probable that the withheld OLC memoranda contain working law.[11]

In sum, there is reason to believe that the withheld records contain far more working law than the government has acknowledged. Despite Defendants' threadbare descriptions of the documents, it is clear that a significant body of EO 12333 working law exists. Plaintiffs' FOIA request was tailored to seek precisely that working law—policies, procedures, and final legal opinions governing the scope of the government's surveillance authority. *See* Stipulation & Order (ECF No. 30); OLC Stipulation (Ex. D to OLC Decl.) (ECF No. 67-4).

Accordingly, Plaintiffs respectfully request that the Court hold that Defendants have not met their burden to show that Exemption 5 applies to the documents at issue because they

---

[11] *See, e.g.*, Memorandum from David Barron, Office of Legal Counsel, Memorandum for Attorneys of the Office; *Re: Best Practices for OLC Legal Advice and Written Opinions* at 1 (July 16, 2010), http://1.usa.gov/1r7LHf3 ("OLC's central function is to provide, pursuant to the Attorney General's delegation, controlling legal advice to Executive Branch officials."); *N.Y. Times Co. v. DOJ*, No. 14–CV–3777, 2015 WL 5729976, at *13 (S.D.N.Y. Sept. 30, 2015) ("[OLC] opinions are generally viewed as providing binding interpretive guidance for executive agencies and reflecting the legal position of the executive branch." (internal quotation marks, citations, and alterations omitted)).

contain Defendants' working law. In the alternative, the Court should review a representative sample of the documents *in camera* to assess whether they contain working law, and it should direct the government to supplement its declarations with facts describing how each document was used and relied upon by the agencies—including whether each document formed the legal basis for approving or authorizing an agency surveillance activity, or, conversely, whether the reasoning and conclusions in the document were rejected by the agencies that received them. These facts go to the heart of the working-law analysis, and Defendants have assiduously avoided providing the Court with this information. Even if the records withheld in full were once privileged, if they were ultimately accepted as the basis for approving or authorizing an agency surveillance activity, they became working law and cannot be withheld under Exemption 5. Based on the examples discussed above, it is obvious that many of the legal memoranda served exactly this function.

**B.      The Government Has Failed To Justify the Privileges It Asserts.**

Even if none of the withheld material contained the agencies' working law, Defendants have failed to meet their burden of justifying the privileges they assert under Exemption 5.

**1.      The Government Has Failed To Justify the Deliberative Process Privilege.**

The deliberative process privilege shields only information that is both "predecisional" and "deliberative." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). A document is "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision," and "deliberative" if it is "actually . . . related to the process by which policies are formulated." *La Raza*, 411 F.3d at 356 (quotation marks omitted). The privilege is intended to protect "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are

formulated.'" *Grand Cent. P'ship,* 166 F.3d at 482 (citing *Hopkins*, 929 F.2d at 84-85). For a

document to be deemed "deliberative," it cannot be "merely peripheral to actual policy

formation; the record must bear on the formulation or exercise of policy-oriented judgment."

*Tigue v. DOJ*, 312 F.3d 70, 80 (2d Cir. 2002).

Crucially, the deliberative process privilege does not protect descriptions of past or

present policy, nor does it "cover 'purely factual' material." *Grand Cent. P'ship*, 166 F.3d at

482; *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2009).

Agencies have an obligation to segregate purely factual material that is not otherwise exempt and

to provide that material to FOIA requesters.

Because the deliberative process privilege is "so dependent upon the individual document

and the role it plays in the administrative process," *Coastal States*, 617 F.2d at 867—turning on,

among other things, how each document was ultimately used, with whom it was shared, whether

it was directed at a particular case, and whether portions of it are factual and therefore

disclosable—courts have required the government to describe withheld documents in detail to

justify claims of privilege. *See Senate of the Com. of P.R. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir.

1987) (finding cursory description of "each document's issue date, its author and intended

recipient, and the briefest of references to subject matter" inadequate to sustain withholding

under Exemption 5); *Nat'l Day Laborer Org. Network v. U.S. Immig. & Customs Enf't Agency*,

811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011) (requiring agencies to describe documents' "function

and significance in the agency's decision-making process" to sustain the privilege); *Auto. Club of

N.Y. v. Port of N.Y. & N.J.*, 297 F.R.D. 55, 60 (S.D.N.Y. 2013) (applying *La Raza* and observing

that a log of documents withheld on the basis of the deliberative process privilege should include

the subject-matter of the document, the nature of the opinions and analyses offered, the date of

the document, a description of the relevant decision, the date of the decision, the roles of the agency employees who authored or received the document, and the number of employees among whom the document was circulated).

The government has failed to establish that the deliberative process privilege applies to the 98 documents withheld in full where it has asserted the privilege over all or part of the document. Its Vaughn indices and declarations lack the detail required to demonstrate that the withheld documents are both predecisional and deliberative, and that they contain no factual, non-deliberative material. Without a more detailed account of what each document discusses, and the role that it played in internal deliberations, it is impossible for this Court to determine— or Plaintiffs to contest—whether the material was indeed part of an internal deliberation and, if so, whether it reflects a decision previously made, or embodies a position that was ultimately accepted by decision-makers.

For example, CIA, DIA, NSA, and NSD have failed to include basic information about who authored the withheld documents, who ultimately received copies, and what role these individuals played in each agency's "deliberations." *See, e.g.*, NSD Decl. ¶ 14 (stating that the documents were "prepared by NSD lawyers for other attorneys to assist those other attorneys in representing the Government, and were sought by a decision-maker for the Government," without specifying the identities and roles of the decision-maker and other attorneys); NSA Vaughn at 2 (stating that NSA 11 and 12 were "written by DOJ," without specifying who wrote or received copies of the documents); CIA Vaughn at 9 (stating that CIA 22 is "correspondence between CIA and the National Security Council," without explaining the identities and roles of the senders and recipients in the decision-making process). This failure is fatal to Defendants' assertion of the privilege. *See, e.g.*, *Senate of the Com. of P.R*, 823 F.2d at 585. Neither Plaintiffs

nor the Court can assess whether a document is predecisional if they do not know who the document was shared with and when—*i.e.*, whether the document was shared with only employees who played a role in the give-and-take of policy formation, or whether it was shared more broadly with personnel tasked with implementing *accepted* agency policy.

Indeed, none of the agencies have satisfied their burden to provide the information necessary to justify the privilege. None of the agencies describe the subject-matter of the withheld documents in detail; the nature of the personal opinions offered; the precise role of the documents in decision-making; the decisions to which the documents relate; or the number of employees among whom the documents were circulated. For example, the CIA has asserted the privilege over "talking points and outlines used by presenters who provided instruction on the legal requirements of E.O. 12333," without providing any information at all about a related agency decision. CIA Decl. ¶ 24; *see* CIA Vaughn at 20-21 (describing CIA 42, 43, 45, 46). The little information that the CIA has supplied confirms that the talking points are not in fact privileged: the agency's declaration concedes that these documents were "not necessarily linked to specific proposals or decisions." CIA Decl. ¶ 24.

The existing disclosures show, too, that there is good reason for the Court to require more information substantiating the government's expansive assertions of privilege. Documents that the government has released in part indicate that it is invoking the deliberative process privilege where it cannot possibly be justified. For example, the government continues to assert the deliberative process privilege over DIA V-4, a PowerPoint presentation describing rules and procedures for intelligence-gathering under EO 12333. This document is neither predecisional nor deliberative, as it simply sets forth DIA's view of what the law is. *See* DIA V-4 (Ex. H to Manes Decl.); *see also Grand Cent. P'ship,* 166 F.3d at 482; *Pub. Citizen*, 598 F.3d at 876. The

presentation has no apparent relationship to the formation or exercise of policy-oriented judgment, let alone any particular deliberations. DIA's declaration states that "[t]hese discussions and recommendations are a foundational component to subsequent decisions on related activity." DIA Decl. ¶ 23. But the mere fact that rules or policies may later be applied to specific facts or circumstances does not mean that those rules or policies remain forever deliberative. *See Pub. Citizen*, 598 F.3d at 875 (rejecting argument that document was predecisional simply because it would "guide further decision-making").

Finally, it is obvious that the fully withheld documents do not comply with the requirement that "purely factual" material be disclosed, even if other portions of a document remain deliberative. *Local 3*, 845 F.2d at 1180. It is implausible that none of the 98 documents that were withheld pursuant to the privilege contained a single fact that could be divorced from deliberative material. Any such facts that are not otherwise exempt must be disclosed. *See, e.g.*, *Army Times Pub. Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068. (D.C. Cir. 1993); *see also infra* Section IV.A (discussing Defendants' burden to disclose all reasonably segregable material).

## 2.    The Government Has Failed To Justify the Attorney-Client Privilege.

As Plaintiffs have explained above, the government may not withhold legal opinions that represent an agency's effective law and policy, but, even setting that aside, Defendants have failed to justify their assertions of attorney-client privilege in the first instance.

The attorney-client privilege is narrowly cabined to protect attorney-client communications made for the purpose of securing or providing legal advice. *See Brennan*, 697 F.3d at 207. The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S.

391, 403 (1976). To properly invoke the privilege, the government must show that the document was "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). As with all withholdings under FOIA, the government bears the burden of establishing the applicability of the privilege. *Id.* at 418.

Defendants' vague and incomplete descriptions of the withheld documents cannot support the attorney-client privilege. Because the CIA, NSA, and NSD have largely failed to provide information about the identities of the authors and those who received copies of the withheld documents, the Court cannot assess whether the documents were in fact confidential communications between client and counsel, or whether they were, for example, distributed widely to government personnel as official guidance. *See id.* at 419. The attorney-client privilege does not apply to everyone within an organization, *Upjohn Co. v. United States*, 449 U.S. 383, 396-97 (1981), and, therefore, merely labeling the recipient a member of the government is insufficient to establish that the privilege is properly invoked. For example, NSD has withheld numerous documents "from NSD attorneys to other Government attorneys," without specifying the intended recipients of the documents—let alone the identities of all actual recipients of the records. *See* NSD Decl. ¶¶ 14-15; *see also, e.g.*, NSA Vaughn at 3 (stating that NSA 14 was written by a senior NSA attorney, but failing to identify those who received copies of the memo); CIA Vaughn at 6 (stating that CIA 15 was sent from a "CIA attorney to a CIA component," but failing to identify the specific positions of authors and recipients). NSD's descriptions of the withheld memoranda are similarly opaque. *See, e.g.*, NSD Vaughn at 3 (withholding NSD 13 and 14, "NSD Memo[s] on an NSA Program and accompanying documentation"). Without more robust descriptions of the authors, recipients, and documents in question, this Court cannot

31

determine whether the disclosure of NSD's legal advice would in fact reveal the client confidences of unspecified clients. *See Tax Analysts*, 117 F.3d at 618. Under well-established precedent, Defendants' declarations and Vaughn indices are simply insufficient to justify the attorney-client privilege. *See, e.g.*, *Mead*, 566 F.2d at 253-54; *Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 366 (S.D.N.Y. 2008).

## IV. The Government Has Improperly Withheld Records Under Exemptions 1 and 3.

### A. Legal Standards

The government may invoke Exemption 1 only over records that have been "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." *See* 5 U.S.C. § 552(b)(1). For a record to be "properly classified," it must be 1) classified by an "original classification authority," 2) owned, produced, or under the control of the federal government, and 3) fall into one of eight "protected categories" listed in Section 1.4 of Executive Order 13526.[12] In addition, an "original classification authority" must determine that disclosure "could be expected to result in damage to the national security," and must be "able to identify and describe the damage." EO 13526 § 1.1(a)(1)-(a)(4). Importantly, records cannot be classified to "conceal violations of law, inefficiency, or administrative error" or to "prevent embarrassment." *Id.* § 1.7(a)(1)-(a)(2)

The government may invoke Exemption 3 only over records that are "specifically exempted from disclosure by [a] statute" other than FOIA. *See* 5 U.S.C. § 552(b)(3). Here, Defendants rely primarily on the National Security Act, which exempts "intelligence sources and

---

[12] Here, the government claims that all of the withheld information falls within one of three "protected categories" of information: "intelligence activities, . . . sources and methods"; "foreign relations or foreign activities of the United States"; and "vulnerabilities or capabilities . . . relating to national security." EO 13526 § 1.4(c), (d), (g).

methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1); *see* Gov. Br. at 42. The CIA also invokes the CIA Act to withhold "information that would reveal the CIA's organization" and "functions." 50 U.S.C. § 3507; *see* CIA Decl. ¶ 21. In addition, the NSA invokes the NSA Act, 50 U.S.C. § 3605, which exempts "the disclosure of the organization or any function of the National Security Agency," as well as 18 U.S.C. § 798, which exempts "communications intelligence activities of the United States." NSA Decl. ¶¶ 33, 35. Finally, DIA invokes 10 U.S.C. § 424, which exempts certain Department of Defense "function[s]" and employee information from disclosure. Each of these statutes must be construed narrowly. For instance, the reference to "functions" in the CIA Act does not give the agency license "to refuse to provide any information about anything it does"; rather, it exempts the CIA from providing information regarding its "internal structure." *Phillippi*, 546 F.2d at 1015 n.14; *see Weissman v. CIA*, 565 F.2d 692, 694-96 (D.C. Cir. 1977) (holding that the CIA's authority to protect "intelligence sources and methods" did not extend to domestic law-enforcement functions); *Anderson v. Dep't of Health & Hum. Servs.*, 907 F.2d 936, 948-51 (10th Cir. 1990) (faulting the district court for adopting broad interpretations of Exemption 3 statutes); *Navasky v. CIA*, 499 F. Supp. 269, 274 (S.D.N.Y. 1980) (holding that the CIA's book-publishing propaganda was not an "intelligence source or method").

Consistent with FOIA's "general, firm philosophy of full agency disclosure," it is the government's burden to prove that Exemption 1 or 3 applies. *Halpern*, 181 F.3d at 288. Because these exemptions are "narrowly construed," the government's justifications must meet "an exacting standard." *ACLU v. DOD*, 389 F. Supp. 2d 547, 551 (S.D.N.Y. 2005) (alterations omitted). As the Second Circuit has explained, the government must justify its withholdings with

"reasonable specificity" and "without resort to 'conclusory and generalized allegations of exemptions.'" *Halpern*, 181 F.3d at 290.

As with all FOIA exemptions, the government's justification for invoking Exemptions 1 and 3 must be both "logical" and "plausible." *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 119 (2d Cir. 2014). In *New York Times*, for example, the government invoked Exemption 1 to withhold an OLC memorandum in full, arguing that releasing the memorandum would disclose "military plans, intelligence activities, sources and methods, and foreign relations," resulting in harm to national security. *Id.* at 120. The Second Circuit ruled that the withholding was improper because it was not "'logical' or 'plausible' to maintain that disclosure of the legal analysis" in the memorandum could cause any such harm. *Id.*; *see also ACLU v. CIA*, 710 F.3d 422, 429-430 (D.C. Cir. 2013) (holding that the CIA's assertion of harm to national security was neither logical nor plausible).

Critically, under FOIA, "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). As this Court has explained, "nonexempt portions of a document must be disclosed unless they are *inextricably intertwined* with exempt portions." *ACLU v. FBI*, No. 11-cv-7562, 2015 WL 1566775, at *2 (S.D.N.Y. Mar. 31, 2015) (alterations omitted) (emphasis added). Accordingly, Defendants bear the burden of establishing that they have segregated and released non-exempt portions of individual records. *See, e.g.*, *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 496 (S.D.N.Y. 2010). "Unless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead*, 566 F.2d at 261. To allow the Court to make the required "specific findings of segregability," *Sussman v. U.S.*

34

*Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007), agencies must provide a detailed

justification for non-segregability, and a description of "what proportion of the information is

non-exempt and how that material is dispersed throughout the document." *Mead*, 566 F.2d at

261.

### B.     The Government Must Segregate and Release Legal Analysis That Is Not "Inextricably Intertwined" With Exempt Information.

The government may not withhold legal analysis under Exemption 1 or 3 unless that legal

analysis is "inextricably intertwined" with properly classified information. *Sussman*, 494 F.3d at

1116; *ACLU v. FBI*, 2015 WL 1566775 at *2. Here, the government has withheld 108 legal

memoranda in full without any meaningful attempt to make that showing. In fact, it is

extraordinarily unlikely that the government *could* make that showing, particularly given that it

has segregated and disclosed legal analysis in related legal memoranda. *See* OLC 9 & 10. FOIA

requires the government to do the same here. At the very least, the Court should require the

government to perform a proper segregability review of the memos, to release all non-exempt

portions of those documents, and to supplement its declarations justifying the invocation of

Exemptions 1 and 3 over any portion of the memos that it continues to withhold.

As an initial matter, "pure legal analysis"—*i.e.*, constitutional and statutory

interpretation, discussions of precedent, and legal conclusions that can be segregated from

properly classified or otherwise exempt facts—cannot be withheld under Exemptions 1 or 3. *See*

*N.Y. Times Co.*, 756 F.3d at 119-20 (observing that legal analysis is "not an intelligence source

or method" and holding that analysis can be withheld under Exemption 1 only to the extent it is

inextricably intertwined with properly classified facts). Moreover, none of the Exemption 3

withholding statutes cited by Defendants protect pure legal analysis from disclosure. *See* 10

U.S.C. § 424 (protecting certain DOD "function[s]" and employee information); 18 U.S.C. § 798

(protecting "classified information concerning the communications intelligence activities of the United States"); 50 U.S.C. § 3024(i)(1) (protecting "intelligence source[s] or method[s]"); *id.* § 3507 (protecting "information that would reveal the CIA's organization, functions," and employee information); *id.* § 3605 (protecting "function[s] of the National Security Agency" as defined by statute and "information with respect to [NSA's] activities").

Thus, the crucial question is whether the legal analysis in the withheld memos is inextricably intertwined with properly classified or otherwise exempt information. *Sussman*, 494 F.3d at 1116; *see also Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 505 F. Supp. 2d 150, 158 (D.D.C. 2007) ("Even if Exemption 1 is found to justify withholding the documents, [the government] may not automatically withhold the full document as categorically exempt without disclosing any segregable portions."). The mere fact that legal analysis *relates* to secret intelligence activity does not establish that disclosing the legal analysis would reveal the protected activity itself. *See N.Y. Times Co.*, 756 F.3d at 119 (segregating "pure legal analysis" in an OLC memorandum from "intelligence gathering activities").

Critically, Defendants, particularly the OLC and CIA, have failed to meet their burden to justify their Exemption 1 and 3 withholdings and their segregation analyses in their public declarations. Instead of providing the "reasons behind their conclusions," the agencies rely on impermissibly conclusory assertions that they have complied with their statutory obligation to segregate and release non-exempt material. *Mead*, 566 F.2d at 261. OLC's declaration, for example, states simply that "none of the withheld documents or redacted portions of produced documents contain reasonably segregable, nonexempt information." OLC Decl. ¶ 32. The CIA similarly asserts that it conducted a segregability review of all responsive documents, and withheld documents in full only when "no segregable, non-exempt portions of documents could

be released without potentially compromising classified, statutorily-protected or privileged information." CIA Decl. ¶ 29. That assertion is insufficient to justify the complete withholding of 82 documents, including legal memoranda that are up to 97 pages long. *See, e.g.*, CIA Vaughn at 6 (describing CIA 16). The CIA's explanation fails to explain *which* portions of these lengthy documents are withheld under which exemption, and why. Without more detailed information about *what* the agency's legal opinions in fact address—and whether the CIA is invoking Exemptions 1 and 3 over all of the opinions in their entirety—this Court cannot even begin to assess whether the agency's withholdings are proper. The agencies' categorical assertions of non-segregability are precisely the kind of boilerplate language that courts have deemed unacceptable under FOIA. *See Mead*, 566 F.2d at 261.

Indeed, the government's release of OLC 9—a 24-page letter from John Yoo to Judge Colleen Kollar-Kotelly, analyzing the legality of STELLAR WIND—shows precisely why the government cannot categorically withhold legal memoranda pursuant to Exemptions 1 and 3. *See* OLC 9. The government has segregated and released nearly all of the letter's legal analysis, even while it continues to assert Exemptions 1 and 3 over discrete portions of the document. For example, section IV(A) of OLC 9 analyzes Fourth Amendment standards without reference to any classified information, and accordingly, the government released section IV(A) in its entirety. *See id.* at 17-18. In fact, even sections of the letter that contain *some* classified material were released nearly in full, with word-level redactions of exempt information. *See, e.g.*, *id.* at 3-10. The release of OLC 9 with minimal redactions is a prime illustration of how the government can readily segregate legal analysis from the facts protected by Exemptions 1 and 3.[13] Under

---

[13] The NSA concedes that it did not perform a line-by-line segregability analysis of OLC 2, OLC 3, OLC 4, OLC 6, OLC 8, and NSD 36, because OLC asserted that Exemption 5 justified withholding these memoranda in full. NSA Decl. ¶ 84 n.15. However, because Exemption 5 was

FOIA, the government must do the same with respect to the other memoranda, rather than withholding them in full.

The government ignores FOIA's segregation requirement when it claims, as a blanket matter, that disclosure of the withheld legal memoranda would "cause identifiable or describable damage to the national security." EO 13526 § 1.4; *see, e.g.*, CIA Decl. ¶ 18; DIA Decl. ¶ 15-17; Decl. of David M. Hardy ("FBI Decl.") ¶ 37 (ECF No. 63). Although the agencies' declarations summarily assert various harms from disclosure of the withheld documents, these assertions disregard entirely the effect of proper segregation and redaction of legitimately exempt material. For example, the CIA justifies its withholding of classified legal analysis by observing that these opinions "would provide sensitive details as to how intelligence is acquired, retained and disseminated," and as a result, "adversaries could alter their behavior to avoid detection or use countermeasures to undermine U.S. intelligence capabilities and render collection efforts ineffective." CIA Decl. ¶ 18. However, once legal analysis is segregated from those "sensitive details," the release of that analysis would not result in identifiable harm.

Thus, because the 108 withheld legal memoranda undoubtedly contain "pure legal analysis" devoid of operational details, it is neither "logical" nor "plausible" to assert that withholding the memoranda in full is necessary to "protect[] our intelligence sources and methods from foreign discovery." *N.Y. Times Co.*, 756 F.3d at 119. To allow Defendants to categorically withhold 108 legal memoranda in their entirety, simply because the documents may also contain some protected facts, would create an end-run around FOIA's express segregation requirement. 5 U.S.C. § 552(b). Accordingly, this Court should direct the government to conduct a proper segregability analysis and to release all non-exempt portions of the documents.

---

improperly invoked, *see supra* Section III, the NSA must conduct a segregability review of these documents.

### C.     The Government Must Release Segregable, Non-Exempt Information from the Inspector General and Compliance Reports.

The government has improperly withheld information under Exemptions 1 and 3 from 13 inspector general and compliance reports. *See* Plaintiffs' Index at 9-10. Nine of these reports have been withheld in full, and three CIA documents are almost entirely redacted, except for certain headings. *See, e.g.*, CIA 12 (Ex. I to Manes Decl.). In all of the reports, the agencies have failed to segregate non-exempt information responsive to Plaintiffs' request from information that is properly exempt. Given the length and importance of the documents withheld in full, the discrepancies in Defendants' disclosures, and the fact that Defendants admit to withholding statistics about compliance incidents—numbers that are not exempt from disclosure under FOIA—Plaintiffs respectfully request that the Court (i) review a representative sample of these documents *in camera*, including CIA 12, NSA 23, and NSD 44, to assess Defendants' failure to release segregable, non-exempt material; (ii) order Defendants to release all segregable portions of these documents; and (iii) order Defendants to conduct a proper segregability analysis of the remaining reports, taking this Court's rulings after *in camera* review into account.

With respect to the 12 reports actually or effectively withheld in full, Defendants have simply failed to conduct an exacting line-by-line segregability review. Although some information in these reports is undoubtedly exempt from disclosure, it is implausible that the reports contain no segregable material whatsoever, particularly in light of their length. *See, e.g.*, NSA Vaughn at 5 (describing NSA 23 as an 84-page Office of Inspector General Report on NSA activities). Indeed, the NSA's release of significant portions of its Intelligence Oversight Board ("IOB") reports—which describe numerous compliance incidents—is itself evidence that

segregation of this kind of document is feasible. *See* NSA 79 (Ex. J to Manes Decl.).[14] However, despite the NSA's disclosures, NSD has withheld in full its "Compliance Incidents Report[s] on an NSA Program"—reports that likely address many of the same types of incidents discussed in the NSA's IOB reports. *See* NSD Vaughn at 1, 7-8 (describing NSD 7, 37, 42, 44, 47). This obvious inconsistency is further evidence of the need for *in camera* review of a representative sample of the reports, in order to assess the adequacy of the government's segregability analysis.

Yet even with respect to the reports released in part, it is clear that Defendants have improperly withheld material under Exemptions 1 and 3. For example, in one of the CIA's reports, the agency has completely withheld sections entitled "Targeting Standards" and "The Department of Justice's Role in EO Compliance." CIA 10 at 23-24, 32-43 (Ex. K to Manes Decl.). However, the CIA's declaration fails to explain how targeting standards and general compliance procedures are inextricably intertwined with "intelligence sources and methods." 50 U.S.C. § 3024(i)(1). In the same report, the CIA has also withheld pages of information about "real or perceived legal and policy concerns" associated with targeting U.S. persons abroad for surveillance. CIA 10 at 14. But, of course, the law constraining the CIA's surveillance of U.S. persons abroad is not exempt from disclosure under FOIA. Insofar as these legal and policy concerns are segregable from properly exempt material, they must be disclosed.[15]

---

[14] The government has also released, with redactions, several Inspector General reports on NSA activities under other surveillance programs. *See, e.g.*, Dep't of Justice, Office of the Inspector General, *A Review of the FBI's Activities Under Section 702 of the Foreign Intelligence Surveillance Act Amendments Act of 2008* (Sept. 2012), http://1.usa.gov/23Y6WxI.

[15] The CIA has also improperly asserted Exemption 1 over material explicitly marked "U/FOUO" [unclassified/for official use only]. *See, e.g.*, CIA 10 at 8 ("(U//FOUO) Particular Cases of [redacted] Collection Outside the United States"). Because the face of the document makes clear that this information is unclassified, the agency cannot withhold it under Exemption 1.

In addition, the NSA has improperly withheld information about the number of its compliance incidents in the example IOB report at issue on this motion. *See* NSA 79 at ¶ I.A.1 ("During the fourth quarter of CY2012, in [redacted number of] instances, signals intelligence (SIGINT) analysts inadvertently targeted communications to, from, or about USPs."); *id.* ¶ I.A.1.b ("On [redacted number of] occasions during the fourth quarter, analysts performed overly broad or poorly constructed database queries that potentially selected or returned information about USPs."). The NSA purports to justify these withholdings under Exemption 1 and Exemption 3. However, neither exemption permits these withholdings.

Under Exemption 3, the number of incidents of unlawful collection or querying cannot be redacted, because they reveal nothing in themselves about the "function" of the NSA. *Cf. Phillippi*, 546 F.2d at 1015 n.14. Indeed, the unredacted information in the compliance report already reveals what "function" the NSA is engaged in: "Unintentional Targeting or Database Queries Against United States Persons (USPs) or Foreign Persons in the United States." NSA 79 at ¶ I.A.1. The numbers at issue concern only *how often* the NSA committed violations of this kind.

To justify withholding this information under Exemption 1, the NSA argues that disclosing "the number of such incidents" would reveal "the nature and scope of these intelligence sources," allowing adversaries to develop "countermeasures" to avoid detection. NSA Decl. ¶ 39. However, it is neither logical nor plausible that these numbers could reveal anything further about the NSA's functions or cause harm to national security. *See Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009). It seems that the only harm the NSA seeks to prevent is the embarrassment and scrutiny that would result from the public learning about the full extent of the

NSA's compliance violations. Yet EO 13526 specifically prohibits classification to "conceal violations of law" or to "prevent embarrassment." EO 13526 § 1.7(a)(1), (2).

In sum, much of the information withheld from these Inspector General and compliance reports—such as the number of compliance incidents—is neither exempt from disclosure nor inextricably intertwined with exempt material. At the same time, this information is critical to public oversight and debate concerning these surveillance activities. This Court should hold that the number of compliance incidents may not be withheld under Exemptions 1 or 3; review a representative sample of these reports, including CIA 12, NSA 23, and NSD 44, *in camera* to assess Defendants' failure to release segregable, non-exempt material; and order Defendants to conduct a proper segregability analysis with respect to all of the reports.

### D. The Government Must Release Segregable, Non-Exempt Information from Its Rules and Regulations.

The government has also failed to meet its burden of showing that it has segregated and released agency rules and procedures that are not inextricably intertwined with properly classified facts or otherwise exempt information. For example, citing Exemptions 1 and 3, NSD has withheld portions of a 1988 version of the *Classified Annex to DoD Procedures Under EO 12333*. *See* NSD 94-125 (Ex. L to Manes Decl.). However, the government has officially released some of this withheld material in a subsequent version of the document. *Compare id.* at 4, 16, 26, & 28, *with Classified Annex to DoD Procedures Under EO 12333*, attached to NSA/CSS Policy 1-23, at 2, 7, 11, 12 (May 29, 2009) (Ex. M to Manes Decl.) (disclosing more information about, *inter alia*, the definition of "foreign communication," the authority to target U.S. terminals, and the authority to intercept communications of non-permanent resident aliens in the United States). As another example, the CIA produced a training slide titled "AR 2-2 Collection Rules"; however, the entire contents of the slide are redacted. *See* CIA 11 (Ex. N to

Manes Decl.). It simply cannot be that the slide consists solely of intelligence sources or methods or otherwise exempt information—particularly because the CIA has already officially acknowledged much of AR 2-2. *See* CIA 1 (Ex. O to Manes Decl.). As discussed above, Plaintiffs respectfully request that the Court review a representative sample of these documents *in camera*, including CIA 4 and NSD 202-207, and order Defendants to conduct a proper segregability review.

## V.    The Government Has Improperly Withheld Documents Under Exemption 7.

### A.    Legal Standards

Invoking Exemption 7, the CIA and FBI have improperly withheld certain legal memoranda and portions of rules and regulations addressing EO 12333 surveillance, on the theory that they constitute law-enforcement information.[16] But EO 12333 is first and foremost an intelligence-gathering authority, and activities conducted under its purview are frequently distinct from law-enforcement activities, as the government itself has emphasized publicly. Nonetheless, the government's declarations in this case repeatedly conflate those distinct functions. Because the government has failed to explain how the withheld information was specifically compiled for law-enforcement purposes—as opposed to intelligence purposes—it cannot satisfy the threshold Exemption 7 requirement. Accordingly, Plaintiffs respectfully request that the Court hold that the government's withholdings are improper.[17]

To justify any withholding under Exemption 7, the government must first establish that the "records or information [were] compiled for law enforcement purposes." 5 U.S.C.

---

[16] Defendants claim Exemption 7 withholdings over the following rules and regulations: FBI 13-15, FBI 30-35, FBI 57-65, NSD 202-07, and CIA 4; and over the following legal memoranda: OLC 5 and OLC 6. *See* Plaintiffs' Index at 8, 10-11.

[17] Notably, Plaintiffs do not seek personally identifying information; information about human confidential sources; investigation dates; the names or numbers of FBI employees, squads, or units; FBI phone numbers; or internal FBI web and email addresses.

§ 552(b)(7). This requires a court to assess not only whether the agency asserting the exemption serves a law enforcement function, but "*what* law-enforcement purpose the [withheld documents] were created for, which is the key question in the first requirement of Exemption 7." *Elkins v. FAA*, 99 F. Supp. 3d 90, 99 (D.D.C. 2015); *see generally Church of Scientology Int'l v. IRS*, 995 F.2d 916, 919 (9th Cir. 1993). To establish that information was compiled for a law-enforcement purpose, the government must identify "a particular individual or a particular incident as the object of [the agency's] investigation" and "the connection between that individual or incident and a possible security risk or violation of federal law." *Pratt v. Webster*, 673 F. 2d 408, 420 (D.C. Cir. 1982). To establish that it is entitled to withhold information under Exemption 7(E) in particular, the government must further demonstrate that releasing the material "would risk circumvention of the law." *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993).

### B. The Government Has Failed To Show That Withheld Information Was Compiled for Law-Enforcement Purposes.

Agency records compiled for intelligence and counterintelligence purposes—and divorced from law-enforcement investigations—may not be withheld under Exemption 7. As discussed above, EO 12333 authorizes a wide range of foreign-intelligence and counterintelligence collection, much of which has no direct nexus to law-enforcement activity. *See* EO 12333 §§ 1-2 (authorizing collection of, *inter alia*, foreign intelligence, foreign financial information, and foreign economic information). Because Plaintiffs sought documents concerning various aspects of EO 12333 surveillance, it is likely that much of the withheld material concerns foreign-intelligence collection—and not law-enforcement activity.

Notably, the government itself has recently argued that intelligence activities under EO 12333 are entirely divorced from law-enforcement functions. *See, e.g.*, Robert Litt, General

Counsel of the Office of the Director of National Intelligence, *The New Intelligence Sharing Procedures Are Not About Law Enforcement*, Just Security (Mar. 30, 2016), http://bit.ly/1WDyMgH (discussing proposal to share "raw" data collected under EO 12333 with the FBI and arguing that "these procedures are not about law enforcement, but about improving our intelligence capabilities . . . they will authorize sharing *only* with elements of the Intelligence Community, and *only* for authorized foreign intelligence and counterintelligence purposes; they will *not* authorize sharing for law enforcement purposes"). Because the government insists that the FBI's intelligence activities under EO 12333 are separate from its law-enforcement functions, it follows that records compiled in service of these intelligence activities were not "compiled for law enforcement purposes" under FOIA. *See* 5 U.S.C. § 552(b)(7).

In this case, however, the FBI has staked out a contrary—and categorical—position. Rather than explain how the withheld material specifically relates to authorized law-enforcement investigations, the FBI repeatedly conflates its foreign-intelligence and law-enforcement functions. Specifically, the agency states that the responsive records "were compiled for purposes of investigating and gathering intelligence information, and apprehending and prosecuting subjects who have committed acts of terrorism against the United States; such records relate to the enforcement of federal laws and such activity is within the law enforcement duty of the FBI." FBI Decl. ¶ 42. But these are two distinct activities. The fact that intelligence gathering sometimes precedes a specific criminal prosecution does not bring all intelligence gathering under Exemption 7. Yet the declarations offer nothing that tells the Court whether and how the FBI is observing this important distinction. Indeed, the FBI also claims that:

> All records responsive to Plaintiffs' request pertain to either FBI policy and
> procedures for requesting E.O. 12,333 § 2.5 authority to conduct electronic
> surveillance on United States persons traveling outside of the United States or
> specific national security investigations of United States Persons traveling outside

> of the United States and the specific techniques used by the FBI in gathering
> intelligence information. Thus, these records were compiled for law enforcement
> purposes [and] squarely fall within the law enforcement duties of the FBI.

*Id.* But, again, the agency's conclusion does not follow from the premise. There is nothing about

the fact that the FBI is surveilling U.S. persons abroad that establishes the FBI is acting in a law-

enforcement capacity—especially where the FBI concedes that its goal is "gathering intelligence

information." *See also, e.g.*, *id.* ¶ 53 (asserting that the FBI withheld information about electronic

surveillance procedures utilized by the agency in "national security investigations," without

specifying whether these investigations involved law-enforcement functions). Although some of

the FBI's national security investigations may have a law-enforcement nexus, the agency has not

met its burden of establishing that the particular records at issue here contain information

compiled for law-enforcement purposes—or, for that matter, that disclosure of these basic

policies and guidelines risks circumvention of the law.[18]

    For example, the FBI has relied on Exemption 7 to withhold portions of NSD 202-207,

"Supplemental Guidelines for Collection, Retention, and Dissemination of Foreign Intelligence."

*See* Ex. P to Manes Decl. As its title indicates, these guidelines dictate how "the FBI may engage

in the collection, retention, and dissemination of foreign intelligence consistent with all existing

interagency agreements and ensuring that its activities are integrated with other collection

agencies." *Id.* at 1. It is plain that this document pertains to foreign-intelligence collection, and

the FBI's conclusory declaration does not satisfy its burden to show that the withheld portions of

---

[18] *See, e.g.*, Dep't of Justice, *Attorney General's Guidelines for FBI National Security Investigations and Foreign Intelligence Collection* (Oct. 31, 2003), http://bit.ly/26e6QUF ("The scope of authorized activities under this Part [National Security Investigations] is not limited to 'investigation' in a narrow sense, such as solving particular cases or obtaining evidence for use in particular prosecutions. Rather, these activities also provide critical information needed for broader analytic and intelligence purposes authorized by Executive Order 12333 and these Guidelines to protect the national security[.]").

NSD 202-207 were compiled for a law-enforcement purpose. In these circumstances, the FBI cannot use Exemption 7 to withhold information about its intelligence activities that it is unable to shield behind Exemptions 1 and 3. Yet that is precisely what it has done across the documents at issue. *See id.* at 1-2, 5-6.

The CIA and FBI have also improperly relied on Exemption 7 to withhold material from a "Memorandum of Understanding Concerning Overseas and Domestic Activities of the CIA and FBI." *See* CIA 4 (Ex. Q to Manes Decl.). The unredacted portions of this document discuss FBI and CIA intelligence-gathering, as well as information-sharing between the two agencies. Critically, the government cannot rely on Exemption 7 to withhold information about the CIA, as it is well-established that the CIA intelligence and counterintelligence activities are not law-enforcement activities. The National Security Act of 1947, which authorizes the CIA intelligence collection, specifically states that the agency "shall have no police, subpoena, law-enforcement powers, or internal-security functions." 50 U.S.C. § 3036(d)(1); *see also Weissman v. CIA*, 565 F.2d 692, 696 (D.C. Cir. 1977) (holding that the CIA could not invoke Exemption 7 because it was not engaged in law-enforcement activity). To the extent that the government has relied on Exemption 7 to redact CIA-related information, its withholdings are improper. More generally, the government has once again failed to establish that all of its withheld material pertains to law enforcement, as opposed to intelligence gathering. CIA 4 clearly concerns intelligence gathering, as evidenced by its "Definitions" section. CIA 4 at 1-2 (defining "foreign intelligence," "counterintelligence," and "intelligence"). Likewise, the two main sections of the document are titled "Domestic Intelligence Activities" and "Overseas Intelligence Activities"—indicating that the withheld material concerns intelligence-gathering. *Id.* at 2, 5. The FBI's declaration states simply that the redacted information pertains to "national security investigations" and "law

enforcement methods," but it does not meaningfully explain how these withholdings satisfy Exemption 7's requirements. *See* FBI Decl. ¶ 54.

Because the government has failed to satisfy the basic standards required to withhold this information, its invocations of Exemption 7 are improper.

### C.  The Government Has Failed To Segregate and Release Non-Exempt Material.

As discussed above, FOIA requires the government to segregate and release non-exempt material—a burden the government has failed to meet with respect to Exemption 7 as well. That failure is most evident with respect to the two legal memoranda withheld in full: OLC 5 and OLC 6. For the same reasons that the government has failed to establish that it segregated "pure legal analysis" from properly exempt material under Exemptions 1 and 3, the government has failed to establish that it has segregated and disclosed non-exempt information in these documents. *See supra* Section IV.

## VI.  The Court Should Review a Selection of the Documents *In Camera*.

In the event that this Court is not inclined immediately to order disclosure of the withheld material, Plaintiffs respectfully ask the Court to conduct an *in camera* review of a representative sample of the documents at issue.[19] Courts have broad discretion to "examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B). "The ultimate criterion is simply this: whether the district judge believes that in camera inspection is needed." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). "[I]n an effort to compensate" for the

---

[19] This representative sample should include: CIA 65, NSA 16, NSD 4, NSD 10, OLC 2, and OLC 5 (legal memoranda); CIA 12, NSA 23, and NSD 44 (Inspector General and compliance reports); CIA 4 and NSD 202-207 (rules and regulations); and CIA 46 and DIA V-4 (training materials).

informational disadvantage between the Government and the requester, courts "often [do] examine the document *in camera*." *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973). "In cases that involve a strong public interest in disclosure," there is "a greater call for in camera inspection." *Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980). Finally, *in camera* review is particularly appropriate "when agency affidavits are not sufficiently detailed to permit meaningful assessment of the exemption claims." *PHE, Inc.*, 983 F.2d at 252. This Court has previously exercised this discretion and conducted *in camera* review of withheld documents. *See, e.g.*, *Lawyers' Comm. for Human Rights v. I.N.S.*, 721 F. Supp. 552, 566 (S.D.N.Y. 1989) (ordering FBI to submit documents for *in camera* review due to deficient explanations). For the reasons discussed above, including the inadequacy of Defendants' declarations, *in camera* review is also warranted here.

## VII.   Res Judicata Does Not Bar Plaintiffs' Claims Because New Evidence Changes the Legal Analysis Applied in the Prior Case.

The government argues that Plaintiffs are barred from challenging the withholding of three of the OLC opinions sought here—OLC 4, 8, and 10—under the doctrines of res judicata and collateral estoppel. Gov. Br. 36, 47, 54 (citing *Elec. Privacy Info. Ctr. v. DOJ* ("*EPIC*"), Nos. 06-096, 06-214, 2014 WL 1279280 (D.D.C. Mar. 31, 2014)). This is not so. As an initial matter, these doctrines apply only narrowly in the FOIA context. *See Taylor v. Sturgell*, 553 U.S. 880, 903 (2008) ("Congress' provision for FOIA suits with no statutory constraint on successive actions counsels against judicial imposition of constraints through extraordinary application of the common law of preclusion."). Moreover, res judicata does not bar successive FOIA suits or claims that challenge the government's withholding based on evidence unavailable to the requesters in the first suit. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 34 (D.D.C. 2004) ("It is clear that *res judicata* does not preclude claims based on facts not yet in existence at the time of the

original action or when changed circumstances alter the legal issues involved." (citations

omitted)); *Negley v. FBI*, 589 F. App'x 726, 729 (5th Cir. 2014) (unpublished opinion) (rejecting

claim of res judicata where "the two actions are based on two different FOIA requests of

different scope made years apart"); *Wolfe v. Froehlke*, 358 F. Supp. 1318, 1319 (D.D.C. 1973);

*Bernson v. Interstate Comm.*, 635 F. Supp. 369, 371 (D. Mass. 1986). In short, neither doctrine

precludes a plaintiff from asserting claims that it has not yet had a "full and fair opportunity to

litigate." *Montana v. United States*, 440 U.S. 147, 153 (1979).

Here, Plaintiffs have not had a "full and fair" opportunity to litigate their present claim

that the government is improperly withholding information in OLC 4, 8, and 10. That is because

the government disclosed extensive information concerning all of these documents only *after* the

court's ruling in *EPIC*. As explained above, these disclosures constitute new official

acknowledgements and also conclusively establish that the OLC memoranda contain working

law. *See supra* Section II & III.A. Among other things, the government has recently released a

740-page Inspector General report concerning the very surveillance program addressed by OLC

4, 8, and 10, but it has not reprocessed any of these documents. *See* OLC Decl. ¶ 24; Ex. E to

Manes Decl. The same report confirms that these OLC memoranda formed the definitive legal

basis for repeated authorizations of the Stellar Wind program, and thus constitute working law.

Furthermore, OLC 4 and 8 almost certainly contain information that has now been officially

acknowledged in OLC 9 and 10 but was not released until months or years after the *EPIC* court's

decision. *See supra* Section II; OLC Decl. ¶ 23. Accordingly, on these facts, res judicata and

collateral estoppel are no bar to Plaintiffs' claims for OLC 4, 8, and 10.

**VIII.  The Government's Searches Were Inadequate Under FOIA.**

FOIA requires the government to conduct a reasonable search for requested records. *Carney*, 19 F.3d at 812. In this case, the parties engaged in extensive negotiations during the course of litigation in order to significantly narrow and clarify precisely what categories of records each agency would search for and process. The terms of these searches were reduced to a stipulation that was entered by this Court. *See* Stipulation & Order (ECF No. 30). The agencies had ample time to conduct their searches, *see* Endorsed Letter (May 21, 2014) (ECF No. 31), and even obtained extensions of their Court-ordered search deadlines, *see* Endorsed Letter (May 21, 2014) (ECF No. 32); Endorsed Letter (Aug. 8, 2014) (ECF No. 33). In these circumstances, there was no ambiguity in what the agencies had to search for, and they had sufficient time to do so. Yet all of the agencies except OLC and the NSA have failed to conduct proper searches, or have at least failed to describe their searches in sufficient detail to show that they were adequate. This Court should order the agencies to cure these defects and to conduct adequate searches.

> **A.  Defendants Have the Burden To Prove That Each Agency Conducted a Search Reasonably Calculated To Uncover All Responsive Documents.**

"[T]he defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney,* 19 F.3d at 812. To meet this burden, the agency must "show beyond material doubt" that it has "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see Nat'l Day Laborer Org. Network v. U.S. Immig. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012). It typically makes this showing by "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812. Declarations that are not reasonably detailed will not suffice, as they "rais[e] a serious doubt whether [the agency] conducted a reasonably thorough search of its

records." *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (remanding adequacy-of-search question to district court).

In order to demonstrate that its search was adequate, an agency's declaration must, at a minimum, provide a detailed explanation of three issues: *First*, it must describe which files were searched. Agency affidavits are inadequate where they "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized." *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980).

*Second*, agency affidavits must show that the search encompassed all repositories where files were reasonably likely to be found. To this end, the declaration must "describe at least generally the structure of the agency's file system" in order to show that searching any other system would be "unlikely to disclose additional relevant information." *Nat'l Day Laborer*, 877 F. Supp. 2d at 96 (internal quotation omitted). The agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested. . . . At the very least, [the agency is] required to explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Similarly, the agency declarations "must establish that they searched all custodians who were reasonably likely to possess responsive documents." *Nat'l Day Laborer*, 877 F. Supp. 2d at 96.

*Third*, agency affidavits "must set forth the search terms and the type of search performed." *Id.* at 96 (internal quotation omitted); *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (same). This is because "[i]t is impossible to evaluate the adequacy of an electronic search for records without knowing what search terms have been

used." *Nat'l Day Laborer*, 877 F. Supp. 2d at 106. Moreover, "'[i]n order to determine adequacy, it is not enough to know the search terms. The method in which they are combined and deployed is central to the inquiry.'" *Id.* at 107 (quoting *Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 331, 335 (S.D.N.Y 2011)).

In connection with these requirements, courts do not simply accept agencies' assertions that their searches were adequate. For example, an agency does not carry its burden solely by averring that it has searched custodians "most likely" to have responsive records; agencies must undertake the more demanding task of searching all locations "that are *reasonably likely* to contain records." *Id.* at 98 (emphasis added) (holding that failure to search former employee's files "was not *de minimis* and made the . . . search inadequate"). Where an agency's declaration lacks the requisite specificity, the court must deny summary judgment, and order the agency to conduct a proper search. *See, e.g.*, *id.* at 112-113 (ordering three agencies to conduct numerous additional searches); *Sack v. DOJ*, 65 F. Supp. 3d 29, 35-36 (D.D.C. 2014) (finding search inadequate where agency "omit[ted] key details," failed to explain whether it had searched relevant terms, and neglected to "reveal whether employees searched all hardcopy records or only a selection, or what terms they used to search electronic records").

### B.      The Government's Declarations Fail To Sufficiently Describe the Searches and Confirm That the Searches Were Inadequate.

All of the Defendants except for OLC and the NSA have failed to sufficiently describe their searches and have failed to demonstrate that their searches were adequate. This Court should require them to conduct additional searches in order to cure these defects.

### 1.      DIA

DIA's declaration reveals that it conducted a patently incomplete search for records responsive to the request. There are three obvious defects in its search. First, DIA appears to

have simply failed to search for entire categories of records specified in the Court-ordered stipulation setting forth the records to be searched. In particular, DIA states that it searched only for "records construing or interpreting DIA's authority," "records describing the minimization procedures" and "records describing the standard that must be satisfied" under EO 12333. DIA Decl. ¶ 10. These searches appear to omit entire categories of records that were specified in the search stipulation: *i.e.*, compliance reports, training materials, and documents authorizing or modifying EO 12333 programs that affect US persons. Stipulation & Order ¶ 3(b), (d)-(e). On its face, DIA's search thus failed to comply with the terms of the Court-ordered stipulation.

Second, DIA concedes that it limited its search to documents within its Office of General Counsel. DIA Decl. ¶ 10. This is patently inadequate. At a minimum, DIA should have searched the offices of senior leadership for relevant documents. DIA offers no reason to believe that *all* of the responsive documents would be found in the OGC. Instead, its decision to limit the search to OGC is based solely on consultation with OGC itself. *Id.* It thus appears that DIA failed even to *consult* with other components of the agency to determine whether they might have responsive records. This limited search is insufficient under FOIA. It is entirely reasonable—likely, in fact—that responsive documents such as compliance reports or training materials would be found in other components of the agency. *Compare Nat'l Day Laborer*, 877 F. Supp. 2d at 98.

Third, DIA produced only 10 responsive documents—an implausibly low number. DIA Decl. ¶ 10. The adequacy of this response is dubious, given that EO 12333 is the central source of authority for much of the surveillance work carried out by the DIA, and that the request sought a variety of documents about EO 12333 spanning a period of 13 years.

For these reasons, it is plain that DIA failed to discharge its obligation to conduct an adequate search.[20] The Court should order DIA to conduct a proper search that includes all five categories of records specified in the search stipulation and that extends to offices of the agency beyond simply OGC.

### 2.        State Department

The State Department's search for responsive records was also inadequate. Remarkably, despite its position as the central agency responsible for foreign affairs, the State Department did not identify even a single page responsive to the request. Decl. of John F. Hackett ("State Decl.") ¶ 3 (ECF No. 68). It is difficult to understand how this result was the product of a proper search. Surely the State Department has at some point in the past 13 years opined in writing on, for example, the scope of its surveillance authority under EO 12333. *Cf.* Stipulation & Order ¶ 3 (specifying categories of records to be searched). The State Department's non-response is particularly implausible because it is one of the agencies specifically addressed in EO 12333 itself, which delegates to the Department duties with respect to collecting information, and disseminating and transmitting reports on behalf of the intelligence community. *See* EO 12333 § 1.8. The Court should be deeply skeptical of the State Department's non-response, and should require the agency to justify its failure to produce a single document.

Moreover, the State Department limited its search to only certain offices within two divisions within the Department: the Bureau of Intelligence and the Office of the Legal Advisor. *See* State Decl. ¶ 12. It seems highly unlikely, in light of this failure to return *any* responsive records at all, that all appropriate areas of the State Department were searched. *See id.* ¶¶ 19, 26.

---

[20] Notably, DIA also fails to specify the search terms it used to conduct its searches. *See* DIA Decl. ¶ 10.

The State Department also seems to have violated the plain terms of this Court's order governing the timeframe of the searches that each agency was required to conduct. In particular, the search in the records of the Front Office of the Bureau of Intelligence and Research "applied the timeframe of April 1, 2007 to June 2, 2014, the date the search was conducted, to the search." State Decl. ¶ 16. This appears to be flatly inconsistent with the Court's order, which required the agencies to search for documents dating back to September 11, 2001, for four of the five categories of responsive documents. *See* Stipulation & Order ¶¶ 3, 7.

Because of the State Department's inexplicable (and unexplained) failure to identify a single responsive document—and because it violated the terms of the search stipulation in at least one respect—this Court should order it to conduct a renewed search for records and to provide a fuller explanation of its search.

### 3.    NSD

NSD also failed to conduct a proper search for records responsive to the FOIA request. Most concerning, NSD explicitly limited its search to a total of seven attorneys' files. *See* NSD Decl. ¶ 9. This is patently inadequate given that FOIA requires agencies to search locations "*reasonably likely* to contain records." *Nat'l Day Laborer*, 877 F. Supp. 2d at 98 (emphasis added). While the NSD suggests that these were the only files likely to produce responsive documents, that seems improbable. Plaintiffs' request covered documents spanning a 13-year period, yet the NSD concluded that no responsive records were likely to be found anywhere but in the files of these seven attorneys, all of whom still happen to currently work in the office. *See* NSD Decl. ¶ 9. This is particularly implausible given that NSD currently employs approximately

a hundred lawyers in its "Office of Intelligence," which itself is only one of several subcomponents of NSD.[21]

In addition, NSD neglects to provide any indication of the terms or combinations of terms that it employed in its searches for responsive documents by these seven lawyers—failing to meet the clear standards affirmed in FOIA case law. *See Nat'l Day Laborer*, 877 F. Supp. 2d at 96 (requiring agencies to specify search terms used); *Iturralde*, 315 F.3d. at 314 (same). Compounding these concerns, the NSD identified relatively few responsive documents—68 total—despite its central responsibility regarding oversight and legal compliance across the intelligence community. *See* NSD Decl. ¶ 10. This Court should order NSD to conduct a broader search that is reasonably calculated to identify all responsive records.

### 4.    FBI

The materials produced by the FBI also suggest that the FBI has failed to conduct a proper search for responsive records. The agency does not provide any of the terms or combinations of terms it used to search its records, and it improperly limited its search to only five offices. *See* FBI Decl. ¶¶ 21-22. Defending the narrow scope of its search, the FBI states that it "conducted a targeted search of specific FBI Headquarters Divisions/Units likely to possess responsive records relating to E.O. 12,333." FBI Decl. ¶ 20; *see also id.* ¶ 21 (stating that the agency conducted a "targeted search"). This kind of search, limited to particular offices deemed "likely" to have records, is precisely what this Court rejected in *Nat'l Day Laborer*, when it stated that agencies "must show beyond material doubt that [they have] conducted [searches] reasonably calculated to uncover all relevant documents." 877 F. Supp. 2d at 96.

---

[21] *See* Office of Intelligence: *About the Division*, Department of Justice, http://1.usa.gov/1NAmCxC.

In addition, the FBI has failed to adequately describe how each division or unit conducted its search. Agency declarations must specify "what records were searched, by whom, and through what processes." *Sack*, 65 F. Supp. 3d. at 35; *see also Weisberg*, F.2d 365 at 371 (finding agency affidavits inadequate where they failed to disclose "which files were searched"). But rather than describe the databases that were searched, the FBI summarily asserts that it "designed and carried out a search tailored to the described scope of responsive records sought." FBI Decl. ¶ 23; *see also id.* ¶ 21 (FOIA personnel requested that each division or unit search unspecified "database systems"). These conclusory assertions are insufficient to allow the Court to assess the adequacy of the FBI's search.[22]

The FBI's failure to conduct a proper search is also obvious on the face of its response to Plaintiffs' request. The FBI has identified extraordinarily few responsive documents, totaling only 65 pages. *See* FBI Decl. ¶ 4. This is in stark contrast to other agencies, which have processed many times that amount. It is simply implausible that the FBI has so few responsive records given the FBI's close involvement in EO 12333 activities—evidence of which appears in documents that were released. *See, e.g.*, FBI Decl. ¶ 34 (describing seven documents relating to FBI involvement in EO 12333 surveillance, including a document described as "Activities of the CIA and FBI"). The Court should order the FBI to conduct a more thorough search for records, or at least to detail its search with more specificity.

---

[22] FBI may also have improperly limited its search to only one subcomponent of its Office of the General Counsel. According to the FBI's declaration, it submitted search requests only to the "Discovery Processing Units" of the OGC, whose task is to "identify information that is relevant and subject to disclosure during the civil discovery process." FBI Decl. ¶ 21 & n.12. It is unclear whether this search of the "Discovery Processing Units" would encompass *all* of the responsive files in the OGC, or solely those that happen to reside within that particular unit. *See id.* ¶ 21. If the latter, the FBI's search was patently unreasonable. Many of the records sought—such as legal opinions and legal authorizations—are clearly of the type that would be authored by (and, presumably, reside in) the leadership of the OGC or its policymaking components.

5.    **CIA**

The CIA has not demonstrated that it conducted a proper search for records responsive to Plaintiffs' request. In particular, its declaration suffers from two glaring defects. First, it fails to detail the search terms the agency used in seeking responsive documents, stating only that the agency used "broad search terms, such as '12,333,'"[23] and otherwise indicating only that the agency used unspecified "relevant search terms," or "search terms and methods reasonably calculated to locate those documents." CIA Decl. ¶¶ 10-11. The CIA provides no information at all about how the various search terms were combined. This lack of reasonable detail makes it impossible to conclude that the CIA's search was adequate to meet the requirements of FOIA. *See Nat'l Day Laborer*, 877 F. Supp. 2d at 96.

Second, the CIA has failed to describe its file systems in sufficient detail to allow the Court (or Plaintiffs) to determine whether it conducted proper searches within each of the offices it searched. In particular, with respect to records falling within categories (a), (b), (d), and (e) of the search stipulation, the CIA simply asserts that it searched "relevant databases" or "repositories deemed likely to contain [responsive documents]." CIA Decl. ¶ 10. Its declaration fails to identify the databases that the CIA did search in each office, nor does it describe other file systems that it declined to search. *Id.* This level of detail is insufficient because it makes it impossible for the Court to determine whether the search was in fact reasonable. *Weisberg*, 705 F.2d at 1348 (agency search descriptions were insufficient when they "do not provide information specific enough to enable . . . challenge[s]"). As it stands, the agency has failed to show that it maintained no other file systems that were reasonably likely to return responsive

---

[23] The CIA's declaration is unclear as to whether its search captured obvious permutations of this search term, such as "12333" without a comma. *Compare* NSA Decl. ¶ 20 n.1; State Decl. ¶¶ 16, 18, 23, & 25.

records. *See Nat'l Day Laborer*, 877 F. Supp. 2d at 102 ("FOIA . . . requires that agencies conduct a search 'reasonably calculated to uncover *all* relevant documents,' not [simply the] 'most' relevant documents."). This Court should order it to conduct a renewed search, or at least to provide a more complete explanation of the search that it has already conducted.

## CONCLUSION

For these reasons, Plaintiffs' motion for summary judgment should be granted.

Respectfully submitted,

Jonathan Manes
David Schulz
Divya Musinipally (law student intern)
Daniela Nogueira (law student intern)
Jacob Zionce (law student intern)
Andrew Udelsman (law student intern)
Beatrice Walton (law student intern)
Media Freedom and Information Access Clinic,
    Abrams Institute, Yale Law School[24]
P.O. Box 208215
New Haven, CT 06520
(212) 850-6103
jonathan.manes@yale.edu

*/s/ Ashley Gorski*
Ashley Gorski
Patrick Toomey
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
agorski@aclu.org

Dated: April 20, 2016

---

[24] This memorandum was prepared in part by the Media Freedom and Information Access Clinic, a program of the Abrams Institute for Freedom of Expression and the Information Society Project at Yale Law School. The brief does not purport to express the school's institutional views, if any.

60