UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION, and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

Plaintiffs,

-against-

NATIONAL SECURITY AGENCY, CENTRAL
INTELLIGENCE AGENCY, DEPARTMENT
OF DEFENSE, DEPARTMENT OF JUSTICE,
and DEPARTMENT OF STATE,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/27/17_

13 Civ. 09198 (KMW) (JCF)

**MEMORANDUM OPINION
AND ORDER**

KIMBA M. WOOD, District Judge:

Plaintiffs, the American Civil Liberties Union and the American Civil Liberties Union

Foundation, bring this action challenging the nondisclosure of information requested by

Plaintiffs pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), from

Defendants, the United States National Security Agency ("NSA"), the United States Central

Intelligence Agency ("CIA"), the United States Department of Defense ("DoD"), the United

States Department of Justice ("DOJ"), and the United States Department of State ("State").  The

parties each move for partial summary judgment on the adequacy of certain agencies' searches

and the applicability of certain FOIA exemptions to 150 responsive documents that were

partially or fully withheld by Defendants.  Over the course of briefing these motions, the parties

narrowed the range of disputes and focused on certain issues.  The Court's discussion below

follows the structure of the parties' briefing and is intended to further narrow the range of open

issues.  For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in

part, and Plaintiffs' motion is DENIED without prejudice.

I.    **BACKGROUND**

A.    Executive Order 12,333

On December 4, 1981, President Ronald Reagan signed Executive Order 12,333 ("EO

12,333"), to "provide for the effective conduct of United States intelligence activities and the

protection of constitutional rights." 46 Fed. Reg. 59,941, 59,941 (Dec. 4, 1981), *amended by*

E.O. 13,284, 68 Fed. Reg. 4077 (Jan. 23, 2003), E.O. 13,355, 69 Fed. Reg. 53,593 (Aug. 27,

2004), *and* E.O. 13,470, 73 Fed. Reg. 45,328 (July 30, 2008), https://www.cia.gov/about-

cia/eo12333.html. The executive order stated that"[t]imely, accurate, and insightful information

about the activities, capabilities, plans, and intentions" of foreign entities is "essential to

informed decisionmaking in the areas of national security, national defense, and foreign

relations," such that "[c]ollection of such information is a priority objective and will be pursued

in a vigorous, innovative, and responsible manner that is consistent with the Constitution and

applicable law and respectful of the principles upon which the United States was founded." E.O.

12,333 § 2.1. E.O. 12,333 is one of the primary authorities that allow agencies of the

intelligence community, such as the NSA and other Defendants, to gather foreign intelligence.

*See, e.g.*, NSA, *Frequently Asked Questions*, http://nsa.gov/about/faqs/oversight-faqs.shtml. The

Order allows for the collection, retention, and dissemination of information concerning United

States citizens, at home and abroad, in certain limited situations, such as information obtained

incidentally to a lawful foreign intelligence investigation. E.O. 12,333 § 2.3(C); *see also id.*

§§ 2.3 to .4. Questions have been raised about whether agencies such as the NSA have been

collecting data about U.S. citizens that are only tangentially related to foreign investigations. *See*

Pl. Mem. 1-3, ECF No. 70.[1]

_____

[1] *See also, e.g.*, John Napier Tye, *Meet Executive Order 12333: The Reagan Rule that Lets the NSA Spy on Americans*, Wash. Post (July 18, 2014), https://www.washingtonpost.com/opinions/meet-executive-order-12333-

B.   The FOIA Requests

On May 13, 2013, Plaintiffs served substantially similar FOIA requests on seven federal

entities: CIA; State; NSA; the Defense Intelligence Agency ("DIA"), an agency within DoD; and

three divisions of DOJ: the Federal Bureau of Investigation ("FBI"), the National Security

Division ("NSD"), and the Office of Legal Counsel ("OLC").   Second Am. Compl. ¶ 18, ECF

No. 44.   The request sought from each agency records (1) construing or describing the scope of

that agency's authority under E.O. 12,333; (2) describing the minimization procedures used by

the agency; and (3) describing the standards that must be satisfied for collecting, acquiring, or

intercepting communications.  *Id.* ¶ 19.

After corresponding with the agencies and exhausting administrative remedies, Plaintiffs

filed this case on December 30, 2013, ECF No. 1, and an amended complaint on February 18,

2014, ECF No. 17.   In a stipulation filed on May 9, 2014, the parties agreed to limit the scope of

the FOIA requests.   ECF No. 30 ("Stipulation").   The Stipulation required NSA, CIA, DIA, FBI,

and State to search for and produce five categories of documents:

   a.   Any formal regulations or policies relating to that Agency's authority under EO
        12,333 to undertake "Electronic Surveillance" (as that term is defined in EO
        12,333) that implicates "United States Persons" (as that term is defined in EO
        12,333), including regulations or policies relating to that Agency's acquisition,
        retention, dissemination, or use of information or communications to, from, or
        about United States Persons under such authority.

   b.   Any document that officially authorizes or modifies under EO 12,333 that
        Agency's use of specific programs, techniques, or types of Electronic
        Surveillance that implicate United States Persons, or documents that adopt or
        modify official rules or procedures for the Agency's acquisition, retention,
        dissemination, or use of information or communications to, from, or about
        United States persons under such authority generally or in the context of
        particular programs, techniques, or types of Electronic Surveillance.

the-reagan-rule-that-lets-the-nsa-spy-on-americans/2014/07/18/93d2ac22-0b93-11e4-b8e5-
d0de80767fc2_story.html.  *But see* Alexander W. Joel, *The Truth About Executive Order 12333*, Politico (Aug. 18,
2014), http://www.politico.com/magazine/story/2014/08/the-truth-about-executive-order-12333-110121.

    c.    Any formal legal opinions addressing that Agency's authority under EO 12,333 to undertake specific programs, techniques, or types of Electronic Surveillance that implicates United States Persons, including formal legal opinions relating to that Agency's acquisition, retention, dissemination, or use of information or communications to, from, or about United States Persons under such authority generally or in the context of particular programs, techniques, or types of Electronic Surveillance.

    d.    Any formal training materials or reference materials (such as handbooks, presentations, or manuals) that expound on or explain how that Agency implements its authority under EO 12,333 to undertake Electronic Surveillance that implicates United States Persons, including its acquisition, retention, dissemination, or use of information or communications to, from, or about United States Persons under such authority.

    e.    Any formal reports relating to Electronic Surveillance under EO 12,333 implicating United States Persons, one of whose sections or subsections is devoted to (1) the Agency's compliance, in undertaking such surveillance, with EO 12,333, its implementing regulations, the Foreign Intelligence Surveillance Act, or the Fourth Amendment; or (2) the Agency's interception, acquisition, scanning, or collection of the communications of United States Persons, whether "incidental" or otherwise, in undertaking such surveillance; and that are or were:

        i.    Authored by the Agency's inspector general or the functional equivalent thereof;

        ii.    Submitted by the Agency to Congress, the Office of the Director of National Intelligence, the Attorney General, or the Deputy Attorney General; or

        iii.    Maintained by the office of the Agency's director or head.

Stipulation ¶ 3. For the first three categories, the parties agreed that each agency would search for and provide documents "currently in use or effect, or that were created or modified on or after September 11, 2001." *Id.* ¶ 7(a). For the fourth category, each agency would search for and provide documents "currently in use or effect." *Id.* ¶ 7(b). For the fifth category, each agency would initially search for and provide documents created or modified on or after September 11, 2001, after which the parties would confer about whether searching for older documents could be undertaken without being unduly burdensome. *Id.* ¶ 7(c). The parties also agreed to limit CIA's search to certain offices for certain of the requests. *Id.* ¶ 6.

Plaintiffs and NSD separately refined the FOIA request, and, by letter dated July 29, 2014, Plaintiffs submitted a new FOIA request that substantially mirrored the requests in the Stipulation. *See* Decl. of John Bradford Wiegmann ("NSD Decl.") ¶ 6, ECF No. 65; *see also* Stipulation ¶ 4; ECF No. 50.

Plaintiffs and OLC separately agreed to narrow the scope of the FOIA request. Stipulation ¶ 2. OLC agreed to search for and produce "[a]ll OLC final advice" that concerned: (1) "the scope and application of the authority of the United States Government to conduct electronic surveillance of the communications of United States persons pursuant to Executive Order 12333," and (2) "the meaning of the terms 'collection', 'acquisition', and 'interception' as applied to electronic surveillance conducted pursuant to Executive Order 12333." Second Am. Compl. Ex. C, at 1, 3.

Following each agency's search and production, which concluded May 1, 2015, the parties discussed their disagreements regarding the lawfulness of the agencies' withholdings and redactions and the adequacy of the agencies' searches. Joint Letter 1, ECF No. 52. By joint letter dated December 8, 2015, the parties proposed cross-motions for partial summary judgment related to the agencies' searches and a set of 177 documents that were partially or fully withheld. *Id.* at 2; *see also* Def. Mem. Ex. A, ECF No. 59; Decl. of Jonathan Manes ("Manes Decl.") Ex. A ("Pl. Index"), ECF No. 71. Specifically, Plaintiffs contend that four categories of documents were improperly withheld: formal legal memoranda, Inspector General and compliance reports, Rules and Regulations, and training and briefing materials. Pl. Mem. 5-9; *see also* Pl. Index. The letter states that should the Court find that the searches or withholdings were improper, Defendants would agree to conduct further searches or re-process the document withholdings, as appropriate. Joint Letter 2.

In their reply memorandum dated July 8, 2016, Defendants notified the Court that State had identified an additional set of documents that it needed to review for responsiveness to Plaintiffs' FOIA request.  *See* Def. Reply Mem. 56-57, ECF No. 75; Suppl. Decl. of Erin F. Stein ("Suppl. State Decl.") ¶ 2, ECF No. 81.  On August 18, 2016, the Court gave Defendants additional time to review those documents for responsiveness.  ECF No. 83.  By letter dated September 26, 2016, Defendants notified the Court that State had completed its review and located no additional documents responsive to the FOIA request.  ECF No. 86.  This case was transferred to the undersigned on November 22, 2016.

## II.    LEGAL STANDARD

### A.    Summary Judgment

A moving party is entitled to summary judgment when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are those that, under the governing law, may affect the outcome of a case.  *Id.*  The moving party must establish the absence of a genuine dispute of material fact by citing to particulars in the record.  Fed. R. Civ. P. 56(a), (c); *Celotex*, 477 U.S. at 322-25; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the movant satisfies this burden, the opposing party must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  When deciding the motion, the Court must view the record in the light most favorable to the non-moving party, *O'Hara v.*

6

*Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir. 2002), although speculation and conclusory assertions are insufficient to defeat summary judgment, *see Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

B.    FOIA

"Congress intended FOIA to 'permit access to official information long shielded unnecessarily from public view,'" *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)), and accordingly FOIA "calls for 'broad disclosure of Government records,'" *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 111 (2d Cir. 2014) (quoting *CIA v. Sims*, 471 U.S. 159, 166 (1985)).  The Government's disclosure obligation is subject to a number of statutory exemptions.  *Id.*  "However, 'consistent with the Act's goal of broad disclosure, these exemptions have consistently been given a narrow compass.'"  *Id.* (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001)).

FOIA cases are regularly resolved on summary judgment.  "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citations omitted). "[A]ll doubts as to the applicability of the exemption must be resolved in favor of disclosure." *N.Y. Times*, 756 F.3d at 112 (quoting *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009)).

When an agency withholds records and the requestor challenges such withholdings, the district court must "determine the matter *de novo*, and may examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B). In *Vaughn v. Rosen*, the Court of Appeals for

the D.C. Circuit held that to adequately justify an alleged exemption, the Government should

provide "a relatively detailed analysis in manageable segments." 484 F.2d 820, 826 (D.C. Cir.

1973). Thus, agencies submit *Vaughn* indexes listing withheld documents and claimed

exemptions and *Vaughn* affidavits that describe the withheld documents and the rationale for

withholding them. *See ACLU v. U.S. Dep't of Justice*, No. 13 Civ. 7347, 2016 WL 5394738, at

*4 (S.D.N.Y. Sept. 27, 2016). A *Vaughn* submission serves three functions:

> [1] it forces the government to analyze carefully any material withheld, [2] it
> enables the trial court to fulfill its duty of ruling on the applicability of the
> exemption, [3] and it enables the adversary system to operate by giving the
> requester as much information as possible, on the basis of which he can present his
> case to the trial court.

*Halpern v. FBI*, 181 F.3d 279, 291 (2d Cir. 1999) (alterations in original) (quoting *Keys v. U.S.

Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)). "The titles and descriptions of documents

listed in a *Vaughn* index usually facilitate the task of asserting and adjudicating the requester's

challenges to the Government's claims of exemption" by "giv[ing] the court and the challenging

party a measure of access without exposing the withheld information." *N.Y. Times Co. v. U.S.

Dep't of Justice*, 758 F.3d 436, 439 (2d Cir.), *supplemented by* 762 F.3d 233 (2d Cir. 2014).

Where "such declarations are 'not controverted by either contrary evidence in the record

nor by evidence of agency bad faith,' summary judgment for the government is warranted." *Id.*

(quoting *Wilner*, 592, F.3d at 73). "When the claimed exemptions involve classified documents

in the national security context, the Court must give '*substantial weight* to an agency's affidavit

concerning the details of the classified status of the disputed record.'" *N.Y. Times*, 756 F.3d at

112 (quoting *ACLU v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012)); *see also Wilner*, 592

F.3d at 76 ("[Courts] have consistently deferred to executive affidavits predicting harm to

national security." (quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927

(D.C. Cir. 2003))). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Accordingly, "the government's burden is a light one." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011). However, *Vaughn* submissions are insufficient where "the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

The legal standards applicable to the adequacy of FOIA searches and the four FOIA exemptions connected to these motions are discussed in the relevant sections below.

## III.   DISCUSSION

### A.   Adequate Searches

Plaintiffs challenge the adequacy of the searches conducted by CIA, FBI, and NSD. Pl. Reply 38, 44-45, ECF No. 82.

#### i.   Legal Standard

"To prevail on summary judgment, . . . the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "The adequacy of a search is not measured by its results, but rather by its method." *N.Y. Times*, 756 F.3d at 124. "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.' However, an agency 'cannot limit its search to only one record system if there are others that are

9

likely to turn up the information requested.'" *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (citation omitted) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

"[T]o establish the adequacy of a search, agency affidavits must be relatively detailed and nonconclusory, and submitted in good faith." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488-89 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68; *see Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003). However, "the law demands only a 'relatively detailed and nonconclusory' affidavit or declaration." *Adamowicz v. IRS*, 402 F. App'x 648, 650 (2d Cir. 2010) (quoting *Grand Cent.*, 166 F.3d at 488-89). "[A]n agency's search need not be perfect, but rather need only be reasonable," and the question is "whether the search was reasonably calculated to discover the requested documents." *Grand Cent.*, 166 F.3d. at 489.

      ii.     Application

         a.     FBI

Plaintiffs lodge two objections to FBI's search for responsive records. First, Plaintiffs argue that FBI has "failed to provide adequate detail about which files were searched, by whom, using which search terms." Pl. Reply 39; *see also* Pl. Mem. 58. Second, Plaintiffs contend that FBI improperly limited its search to only a few divisions and units. Pl. Mem. 57; Pl. Reply 40.

An agency affidavit needs to be "reasonably detailed" in "setting forth the search terms and the type of search performed." *Oglesby*, 920 F.2d at 68.  For instance, in *Morley v. CIA*, the D.C. Circuit found insufficient a declaration that described that a FOIA request was "divvied up between multiple component units within the CIA" but "provide[d] no information about the search strategies of the components charged with responding to" the request nor "any indication of what each directorate's search specifically yielded."  508 F.3d at 1122.  Here, FBI tasked four separate units with searching for responsive documents, but provided no details about how the searches were undertaken.  FBI merely states that it "designed and carried out a search tailored to the described scope of responsive records sought," Decl. of David M. Hardy ("FBI Decl.") ¶ 23, ECF No. 63, but that "given the passage of time and the numerous individuals involved in its search, FBI is not in a position to detail all search steps taken by all of its tasked employees, but FBI tasked and gave appropriate search instructions to all relevant personnel and components, and . . . FBI reasonably believes that the search was performed as tasked," Suppl. Decl. of David M. Hardy ("Suppl. FBI Decl.") ¶ 4, ECF No. 78.  Although FBI is not required to detail *all* search steps taken, it must "supply more than 'glib government assertions of complete disclosure or retrieval.'" *Nat'l Immigration Project of the Nat'l Lawyers Guild v. U.S. Dep't of Homeland Sec.*, No. 11 Civ. 3235, 2012 WL 6809301, at *1 (S.D.N.Y. Dec. 27, 2012) (quoting *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)).  As Plaintiffs rightly state, "searching for records without tracking how those searches are conducted makes it impossible for a reviewing court (or plaintiffs) to determine what the agency has actually done to search its files." Pl. Reply 40.  FBI must, at the least, detail its search with greater specificity, and, if FBI is unable to do so, it may be necessary to conduct, and properly document, additional searches.

Second, Plaintiffs contend that FBI improperly limited its search to only five offices. FBI circulated the FOIA request to FBI's Corporate Policy Office, Counterintelligence Division, Counterterrorism Division, Training Division, and the Office of the General Counsel Discovery Processing Units. FBI Decl. ¶¶ 21-22. Plaintiffs note two additional divisions where, they suspect, additional documents may reside: the FBI Intelligence Branch, Pl. Reply 40,[2] and the units outside of the Discovery Processing Units in the Office of the General Counsel, Pl. Mem. 58 n.22 ("It is unclear whether this search of the 'Discovery Processing Units' would encompass *all* of the responsive files in the [Office of the General Counsel], or solely those that happen to reside within that particular unit."). FBI has discretion to focus its inquiry if additional searches are unlikely to be fruitful, *Campbell*, 164 F.3d at 28, and has stated that the requests were sent to "locations where responsive documents were reasonably likely to be located," Suppl. FBI Decl. ¶ 4. FBI has further stated that "[t]here is no indication from the information located as a result of the targeted searches of the specified FBI HQ Divisions/Units that responsible material would reside in . . . any other location." FBI Decl. ¶ 23. FBI has not, however, stated that "no *other* record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68 (emphasis added). FBI should confirm that no other record system is likely to contain responsive documents, clarify the scope of the search conducted in the Office of the General Counsel, and address whether the Intelligence Branch is likely to produce responsive documents.

---

[2] *See also, e.g.*, FBI, *About Us: Intelligence Branch*, https://www.fbi.gov/about/leadership-and-structure/intelligence-branch ("[The Intelligence Branch] is the strategic leader of the FBI's Intelligence Program, driving collaboration to achieve the full integration of intelligence and operations and proactively engaging with the Bureau's partners across the intelligence and law enforcement communities. . . . The Intelligence Branch is responsible for all intelligence strategy, resources, policies, and functions.").

b.    NSD

Plaintiffs raise two objections to NSD's search.  First, Plaintiffs note NSD's failure to provide any search terms used in identifying responsive documents.  Pl. Mem. 57; Pl. Reply 42. Second, Plaintiffs take issue with NSD's method of identifying custodians by focusing exclusively on seven attorneys' files in two NSD offices.  Pl. Mem. 56-57; Pl. Reply 41.

For the reasons discussed above, NSD's failure to identify any search terms or methods makes summary judgment in its favor inappropriate.  *See, e.g.*, *Morley*, 508 F.3d at 1122. Accordingly, NSD is directed to explain its search with sufficient specificity, as outlined in this opinion.

Second, Plaintiffs challenge the scope of the NSD's search.  NSD has explained that "[there] is no central NSD record repository or searchable database that contains all responsive records" and thus identified seven current NSD attorneys who "have worked on issues concerning electronic surveillance under" E.O. 12,333, and stated that "no other NSD personnel were likely to have responsive records that these seven attorneys did not also have."  NSD Decl. ¶ 8; *see also* Suppl. Decl. of John Bradford Wiegmann ("Suppl. NSD Decl.") ¶ 11, ECF No. 80. Six of these attorneys work in the NSD's Office of Intelligence, and one attorney works in the NSD's Office of Law and Policy.  NSD Decl. ¶ 8.  The NSD also searched through historical policy files, NSD Decl. ¶ 9; Suppl. NSD Decl. ¶ 11, and concluded that "it is unlikely that any *additional significant records* would be located in the files of another employee within the Office of Law and Policy," Suppl. NSD Decl. ¶ 11 (emphasis added).  This is insufficient: an agency may not limit a search because additional responsive documents may not be "significant." *Oglesby*, 920 F.2d at 68 (stating that agency affidavit must "aver[] that *all files likely to contain responsive materials* (if such records exist) were searched" (emphasis added)).  In addition, the

13

time limitation agreed to in the Stipulation does not cover NSD, and the revised NSD FOIA request contains no time limitation whatsoever. *See* Second Am. Compl. Ex. G; Stipulation ¶¶ 3, 7. The Court is not convinced that NSD's method, of searching only present employees and then one historical database, is "reasonably calculated to uncover all relevant documents." *Morley*, 508 F.3d at 1114. Accordingly, the Court cannot conclude that NSD's search was adequate.

c.    CIA

Plaintiffs identify two deficiencies with CIA's search: first, that CIA's explanation of its search methods—stating, for instance, that the agency "used broad search terms, such as '12333,'" Decl. of Antoinette B. Shiner ("CIA Decl.") ¶ 10, ECF No. 60—is insufficient; and second, that CIA has provided insufficient detail about the repositories it searched. Pl. Mem. 59-60; Pl. Reply 42-43.

On the first issue, CIA contends that "CIA's search was so comprehensive that it 'uncovered a large volume of duplicative documents and non-responsive records.'" Def. Reply 48 (quoting CIA Decl. ¶ 11). However, like FBI and NSD, CIA has failed to provide sufficient information for Plaintiffs or the Court to reasonably assess the search efforts undertaken. *See Morley*, 508 F.3d at 1122; *Oglesby*, 920 F.2d at 68. Neither the Court nor Plaintiffs are able to evaluate or confirm whether the duplicative and non-responsive results were attributable to the search's comprehensiveness or, for example, human error. Given the lack of information about the search methods used, the Court can only speculate about whether CIA's efforts were reasonably expected to produce the information requested. *See, e.g., Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 152-53 (D.D.C. 2013). The Court will therefore deny summary judgment to CIA on the adequacy of its search.

In describing the repositories it searched, CIA states that "CIA personnel consulted with Agency officials knowledgeable about this subject matter to identify the relevant databases and repositories containing such materials." CIA Decl. ¶ 9. CIA further describes the repositories in terms such as "the database maintained by the [Office of General Counsel] Division that is responsible for providing legal advice on complex or novel questions," "the relevant databases of the [Office of General Counsel] Division and the front offices of the Agency directorates," or "the relevant databases located in the Office of the Inspector General, the Office of Congressional Affairs, and the Director's area." *Id.* ¶ 10. Agency affidavits should sufficiently "'identify the searched files and describe at least generally the structure of the agency's file system' which renders any further search unlikely to disclose additional relevant information." *Katzman v. CIA*, 903 F. Supp. 434, 438 (E.D.N.Y. 1995) (quoting *Church of Scientology v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986), *aff'd*, 484 U.S. 9 (1987)). CIA must, at the least, provide a more complete explanation of the relevant databases that were searched.

*     *     *

Accordingly, Defendants' motion for summary judgment as to the adequacy of FBI's, NSD's, and CIA's searches is DENIED.

> B.    Exemption 5
>
> > i.    Legal Standard

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Stated simply," covered documents include those "which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (*e.g.*, attorney-client, work-product, executive privilege)." *Tigue v. U.S. Dep't of*

*Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (internal quotation marks and citation omitted).  This exemption is "based on the policy of protecting the decision making processes of government agencies," and protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (internal quotation marks and citation omitted).  Three privileges are asserted under Exemption 5: deliberative process privilege, attorney-client privilege, and presidential communication privilege.

"An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: (1) 'predecisional,' *i.e.*, 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.*, 'actually . . . related to the process by which policies are formulated.'"  *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (S.D.N.Y. 2005) (quoting *Grand Cent.*, 166 F.3d at 482); *see also Grand Cent.*, 166 F.3d at 482 ("The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." (internal quotation marks and citation omitted)).

Although Defendants bear the burden of proving the applicability of an exemption, *see Carney*, 19 F.3d at 812, Plaintiffs overstate the burden of specificity required of Defendants in asserting the deliberative process privilege.  Plaintiffs argue that each agency is required to list, for each document, "(1) the role of the author and recipient of each document; (2) the function and significance of the document in a decision-making process; (3) the subject-matter of the document and the nature of the deliberative opinion; and (4) the number of employees among whom the document was circulated."  Pl. Reply 15 (citing *Senate of P.R. v. U.S. Dep't of Justice*,

823 F.2d 574, 585 (D.C. Cir. 1987); *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 743 (S.D.N.Y. 2011); *Auto. Club of N.Y., Inc. v. Port Auth.*, 297 F.R.D. 55, 60 (S.D.N.Y. 2013)).  Plaintiffs are correct that courts in this district have required that an agency state the "function and significance in the agency's decision[-]making process." *Nat'l Day Larborer*, 811 F. Supp. 2d at 743 (alteration in original) (quoting *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 515 (S.D.N.Y. 2007)); *see also Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982).  However, the Second Circuit has held that, although an agency must "be able to demonstrate that, *ex ante,* the document for which executive privilege is claimed related to a specific decision facing the agency . . . the fact that the government does not point to a specific decision . . . does not alter the fact that the Memorandum was prepared to assist [agency] decisionmaking on a specific issue." *Tigue*, 312 F.3d at 80.  In addition, *Automobile Club*'s requirement that a privilege log should include, *inter alia*, the number of recipients of a document is based on Local Rule 26.2 governing discovery in civil cases; Plaintiffs have not cited, nor can the Court find, support to suggest that this rule governs *Vaughn* indexes in FOIA cases.

Defendants also assert attorney-client privilege.  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *Brennan Ctr.,* 697 F.3d at 207 (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)).  "[T]he attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Id.* (alteration in original) (quoting *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)).

Plaintiffs criticize Defendants' *Vaughn* indexes and declarations as insufficient to justify attorney-client privilege because they do not reveal the "identities of the authors and those who received copies of the withheld documents." Pl. Mem. 31; *see also id.* at 32 (citing *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 253-54 (D.C. Cir. 1977); *Adamowicz*, 552 F. Supp. 2d at 366); Pl. Reply 19-20. However, neither *Mead* nor *Adamowicz* requires so detailed a description. *Mead* rejected the assertion of attorney-client privilege because the Government gave "no indication as to the confidentiality of the information on which they are based." 566 F.2d at 253-54. *Adamowicz* found that the Government did not meet its burden of demonstrating attorney-client privilege where "through oversight or otherwise, [the Government failed to] actually state[] that the material withheld constitutes or reflects [attorney-client] communications." 552 F. Supp. 2d at 366. To meet their burden, Defendants need only indicate that the documents withheld as attorney-client communications are, indeed, confidential communications seeking or providing legal advice from government attorneys to their clients.

Finally, Defendants assert presidential communications privilege with respect to a narrow set of documents. "The privilege protects 'communications in performance of a President's responsibilities, . . . of his office, . . . and made in the process of shaping policies and making decisions.'" *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 522 (S.D.N.Y. 2010) (alterations in original) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977)). "The presidential communications privilege 'covers final and post-decisional materials as well as pre-deliberative ones.'" *Id.* (quoting *In re Sealed Case,* 121 F.3d 729, 745 (D.C. Cir. 1997)). The privilege also protects communications involving senior presidential advisers, including "'both . . . communications which these advisers solicited and received from others as well as those they authored themselves,' in order to ensure that such advisers investigate issues and provide appropriate advice to the President." *Id.* (quoting *In re Sealed Case,* 121 F.3d at 752). The

privilege also extends to records memorializing or reflecting covered presidential communications. *Id.* (citing *Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Sec.,* No. 06 Civ. 0173, 2008 WL 2872183, at *3 (D.D.C. July 22, 2008)).

"The two long-recognized exceptions to Exemption 5 are: (1) adoption, *i.e.*, 'when the contents of the document have been adopted, formally or informally, as the agency position on an issue or are used by the agency in its dealings with the public'; and (2) working law, *i.e.*, 'when the document is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy.'" *ACLU*, 2016 WL 5394738, at *6 (quoting *Brennan Ctr.*, 697 F.3d at 195). "An 'opinion about the applicability of existing policy to a certain state of facts, like examples in a manual,' constitute working law and accordingly do not fall within the scope of the deliberative privilege. Documents that advise agency personnel of likely legal challenges and potential defenses, however, do not constitute working law." *N.Y. Times v. U.S. Dep't of Justice*, 101 F. Supp. 3d 310, 318 (S.D.N.Y. 2015) (citation omitted) (first quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980); then citing *Delaney, Migdail & Young, Chartered v. IRS,* 826 F.2d 124, 127 (D.C. Cir. 1987)).

Plaintiffs take an overly broad view of what constitutes working law, particularly with respect to legal memoranda. Plaintiffs argue that "if the relevant policy-maker reviewed [a legal memorandum] and, on the basis of the analysis in that document, elected to take actions that [the memorandum's author] opined would be lawful, the underlying memo would become working law, as it would reflect the agency's view of 'what the law is.'" Pl. Reply 11 (internal quotation marks and citation omitted) (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997)). On the contrary, the Second Circuit has explained that "the exemption 'properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and

policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'" *Brennan Ctr.*, 697 F.3d at 196 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).  An agency must disclose a "final opinion[]" or a "statement[] of policy and interpretations which [has] been adopted by the agency." *Id.* at 201 (quoting *Sears*, 421 US. at 153).  Reports or recommendations that have "no operative effect" do not need to be disclosed even where the agency action agrees with the conclusion of the report or recommendation. *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).

ii.   Application

Plaintiffs contest the assertion of Exemption 5 privileges with respect to 109 documents that were withheld in full and 4 documents that were released with redactions.  Pl. Mem. 15. Plaintiffs have raised four issues regarding Exemption 5.  They contend that Defendants have failed to satisfy their burden of justifying either the deliberative process privilege or the attorney-client privilege. *Id.* 26-32.  Plaintiffs also argue that the documents contain working law, thus falling into an exception to Exemption 5. *Id.* 16-26.  Finally, Plaintiffs claim that Defendants have failed to justify their withholdings under the presidential communications privilege. *Id.* 15 n.4; Pl. Reply 20-22.  The parties discuss deliberative process privilege with respect to documents from CIA, NSA, NSD, and OLC. *See* Def. Mem. 49-55 (discussing CIA, DIA, NSD, OLC, and NSA); *see also* Def. Reply 24 (DIA waiving its reliance on Exemption 5).  Each of these is discussed in turn.

a.   OLC

The Court finds that OLC has sufficiently justified its exemptions under the deliberative process and attorney-client privileges.  Courts routinely find that OLC legal memoranda are

protected by the deliberative process privilege.  *See, e.g.*, *N.Y. Times Co. v. U.S. Dep't of Justice*,

806 F.3d 682, 685-87 (2d Cir. 2015); *Brennan Ctr.*, 697 F.3d at 202-03.  In addition, the

Honorable Royce C. Lamberth of the United States District Court for the District of Columbia

held that three of the documents at issue—OLC 4, 8, and 10—were properly withheld under

Exemptions 1, 3, and 5 after *in camera* review.  Def. Mem. 36 (citing *Elec. Privacy Info. Ctr. v.*

*U.S. Dep't of Justice*, Nos. 06 Civ. 96, 06 Civ. 214, 2014 WL 1279280 (D.D.C. Mar. 31, 2014)).

OLC's index describes the documents in question as legal memoranda, or cover notes to legal

memoranda, regarding contemplated intelligence activities under E.O. 12,333.  Decl. of Paul P.

Colborn ("OLC Decl.") Ex. A, ECF No. 67; *see also* OLC Decl. ¶¶ 21, 27.  Further, Plaintiffs do

not mention OLC's invocation of these privileges in their opening memorandum.  *See* Pl. Mem.

26-30 (discussing deliberative process privilege with respect to only CIA, DIA, NSA, and NSD).

Accordingly, OLC has sufficiently justified that these documents are protected by the

deliberative process and attorney-client privileges.

      Plaintiffs argue that these OLC legal memoranda contain working law and are therefore

not subject to Exemption 5.  Pl. Mem. 18-26.  In general, as the Second Circuit has recently held,

OLC memoranda are not working law unless expressly adopted: "At most, they provide, in their

specific contexts, legal advice as to what a department or agency 'is *permitted* to do,' but OLC

'did not have the authority to establish the "working law" of the [agency],' and its advice 'is not

the law of an agency unless the agency adopts it.'"  *N.Y. Times*, 806 F.3d at 687 (alteration in

original) (quoting *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 8, 10 (D.C. Cir.

2014)).  As the OLC declaration explains, "OLC provides advice and prepares opinions

addressing a wide range of legal questions involving the operations of the Executive Branch.

OLC does not purport to make policy decisions, and in fact lacks authority to make such

decisions. OLC's legal advice and analysis may inform the decisionmaking of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted." OLC Decl. ¶ 2.

Although Plaintiffs argue that these memoranda were relied upon as part of the regular reauthorization of the STELLAR WIND warrantless wiretapping program, there is no indication that these memoranda were "adopted, formally or informally, as the agency position on an issue" or "used by the agency in its dealings with the public." *Brennan Ctr.*, 697 F.3d at 195 (quoting *La Raza*, 411 F.3d at 356).

For example, document OLC 2 is a memorandum written by Theodore Olson in 1984. Plaintiffs discuss a 2007 memorandum—not produced as part of this litigation, but which has been published in the press—that quotes from OLC 2 to argue that OLC 2 contains working law. Hanes Decl. ¶ 10 & Ex. G; *see also* Pl. Mem. 24-25. However, the 2007 memorandum does not support Plaintiffs' argument. The 2007 memorandum cites the Olson memorandum as an example of support for the proposition that "analysis of information legally within the possession of the Government is likely neither a 'search' nor a 'seizure' within the meaning of the Fourth Amendment." Hanes Decl. Ex. G, at 4 n.4. The 2007 memorandum goes on to state that, "[i]n an abundance of caution, then, we analyze the constitutional issue on the assumption that the Fourth Amendment may apply even though the Government has already obtained the information lawfully." *Id.* The very fact that the 2007 memorandum conducts a Fourth Amendment inquiry is indicative that the 1984 memorandum was not "adopted, formally or informally, as the agency position on an issue." *Brennan Ctr.*, 697 F.3d at 195. Instead, this citation to the Olson memorandum is among the "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are

formulated" that lie at the heart of Exemption 5. *Sears, Roebuck*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).

Therefore, Defendant's motion for summary judgment is GRANTED with respect to Exemption 5 and the OLC memoranda.

b.    NSD

NSD asserts Exemption 5 with respect to thirteen contested documents. *See* Def. Index 2. The documents are grouped below based on their content.

NSD 2 is a "draft of the DHS Procedures Governing Activities of the Office of Intelligence and Analysis that Affect United States Persons. . . . The Attorney General subsequently declined to approve the draft procedures submitted by the Secretary of Homeland Security and inter-agency negotiations over the content of these procedures remain ongoing to this day." Decl. of Arthur R. Sepeta ("DHS Decl.") ¶ 12, ECF No. 61. This document is clearly deliberative and pre-decisional. The Government has satisfied its burden to justify its withholding. Further, as a draft document where no policy has been made, this document could not have been adopted or become working law. Accordingly, this document is properly withheld.

NSD 9 and 36 are "classified OLC legal advice memoranda," similar to the other OLC memoranda discussed above. OLC Decl. ¶ 20. NSD 9 contains "OLC Legal Advice Memorandum to FBI General Counsel," and NSD 36 contains "OLC Legal Advice Memorandum on an NSA Program." NSD Decl. Ex A ("NSD *Vaughn* Index"), at 2, 6-7. Like the OLC memoranda discussed above, these documents are protected, at the least, by attorney-client privilege. As there is no indication that these documents contain working law or have been expressly adopted, they have been properly withheld.

NSD 18 is a "memorandum from the Attorney General to the President that reveals advice and recommendations relating to an NSA program." Decl. of Christina M. Butler ("OIP Decl.") ¶ 9, ECF No. 66.  In addition to asserting deliberative process privilege, Defendants assert presidential communications privilege, which Plaintiffs do not contest except to the extent that they argue that the privilege is voided by the working law doctrine. *See* Pl. Mem. 15 n.4. However, because the presidential communications privilege protects "final and post-decisional materials as well as pre-deliberative ones," *In re Sealed Case*, 121 F.3d at 745, the working law exception does not apply to the presidential communication privilege.  Indeed, Plaintiffs do not mention NSD 18 in their reply brief.  *See generally* Pl. Reply.  Accordingly, NSD 18 has been properly withheld.

NSD 17, much of NSD 4, and some of NSD 31 "discuss legal issues pertaining to an NSA program, set forth legal advice prepared by NSD lawyers for other attorneys to assist those other attorneys in representing the Government, and were sought by a decision-maker for the Government to obtain legal advice on questions of law and indeed reflect such advice."  NSD Decl. ¶ 14; Decl. of David J. Sherman ("NSA Decl.") ¶¶ 45-46, ECF No. 64.  *See generally* Classified NSA Decl.  Even assuming, as Plaintiffs argue, that NSD adopted the recommendations outlined in these legal memoranda, these memoranda do not automatically become the working law of the agency. *See Brennan Ctr.*, 697 F.3d at 196; *see also* Suppl. NSD Decl. ¶ 10 ("NSD Document 4 is a recommendation memo; it does not have the force and effect of law within the Department, and it has not been adopted by the Department as a governing policy. . . .  I am unaware of any official acknowledgment or release of NSD Document 4.").  Exemption 5 applies to these documents and excerpts, and they were properly withheld.

NSD 12, 13, 14, 23, 33, and 49 are "memoranda from NSD attorneys to other Government attorneys, and they provide advice with respect to one or more NSA programs or other intelligence activities." NSD Decl. ¶ 15. *See generally* Classified NSA Decl. "The *vast majority* of these memoranda constitute legal advice prepared by NSD Lawyers to assist other attorneys who represented the Government. As a result, the *vast majority* of the memoranda are protected from disclosure under the attorney-client privilege." NSD Decl. ¶ 15 (emphases added). Similarly, the NSD Declaration states that the "*vast majority* of the memoranda contained in NSD 12, 13, 14, 23, 33, and 49" are pre-decisional and deliberative. NSD Decl. ¶18 (emphasis added). Accordingly, the Court cannot conclude that the attorney-client privilege or the deliberative process privilege applies to each of these documents in their entirety. The NSD is directed to supplement its submissions with detail about what portions of these documents do, and do not, contain legal advice or deliberative and pre-decisional analysis.

Therefore, Defendants' motion for summary judgment is GRANTED with respect to Exemption 5 for NSD 2, 4, 9, 17, 18, and 36, and DENIED with respect to Exemption 5 for NSD 12, 13, 14, 23, 33, and 49.

c.      CIA

CIA asserts Exemption 5 with respect to memoranda, correspondences, and other documents, marked CIA 13 to CIA 94, that were withheld in full. *See* Def. Index 1. First, the Court notes that CIA's *Vaughn* index does not appear to assert Exemption 5 with respect to CIA 30 or 77, and these documents are discussed below regarding Exemptions 1 and 3. *See generally* CIA Decl. Ex. A ("CIA *Vaughn* Index").

CIA asserts deliberative process privilege and/or attorney-client privilege as to 74 legal memoranda: CIA 13-21, 23-29, 31-35, 37-41, 44, 47-76, and 78-94. *Id.* These documents

25

conveyed legal advice "by attorneys in the CIA's Office of General Counsel to Agency employees and by Department of Justice attorneys to CIA officials," CIA Decl. ¶ 23, and contain "factual information supplied by the clients in connection with their requests for legal advice, discussions between attorneys that reflect those facts, and legal analysis and advice provided to the clients," *id.* ¶ 26.  The Court is satisfied that these documents are protected by attorney-client privilege and therefore need not also evaluate the deliberative process privilege.  Plaintiffs contend that these documents may contain working law, as "the Office of General Counsel can and typically does establish the final *legal* position of the agency."  Pl. Reply 12.  In response, the CIA states that "CIA 13-21, 23-35, 37-41, 44, 47-76, 78, 79, [and] 92-94" are "not controlling interpretations of policy that the Agency relies upon in discharging its mission" but instead contain legal advice that "served as one consideration, among others, weighed by Agency personnel in deciding whether to undertake a particular intelligence activity."  Suppl. Decl. of Antoinette B. Shiner ("Suppl. CIA Decl.") ¶ 3, ECF No. 76.  Given this description, the Court finds that these documents do not constitute working law, and their being withheld was proper.

However, the omission of CIA 80-91 suggests that perhaps those memoranda do not fit the description above.  CIA is invited to further supplement its description of these documents to better describe these documents so that the Court may determine whether these documents constitute working law.  *See, e.g., ACLU*, 2016 WL 5394738, at *13 ("If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera,* requesting further affidavits, or allowing the plaintiff discovery.").

CIA withheld four documents under the deliberative process privilege but not the attorney-client privilege: CIA 42, 43, 45, and 46. *See* CIA *Vaughn* Index. These documents are described in CIA's *Vaughn* index as "[c]lassified talking points and presentation notes prepared for briefing on E.O. 12333." *Id.* at 19-21. CIA describes these documents as:

> [T]alking points and outlines used by presenters who provided instruction on the legal requirements of E.O. 12333. They are not polished pieces, prepared remarks intended to be delivered as written, or handouts provided to trainees. Rather, these documents served as presentation tools for only the presenters that contained potential responses, legal examples and points to be made should certain questions arise. As such, these documents served as informal outlines or talking points that, although not necessarily linked to specific proposals or decisions, provided guidance on E.O. 12333 intended to inform subsequent Agency decision-making regarding the use of specific authorities.

CIA Decl. ¶ 24. The Court notes that if these documents are as informal as CIA suggests, they would not be responsive to the FOIA request, which sought "formal training materials or reference materials (such as handbooks, presentations, or manuals)." Stipulation ¶ 3. Given this description, the Court cannot conclude that Exemption 5 applies: for the exemption to apply, an agency must "be able to demonstrate that, *ex ante*, the document for which executive privilege is claimed *related to a specific decision facing the agency*," which these training materials do not do. *Tigue*, 312 F.3d at 80. Further, even if the deliberative process privilege applied, these documents may reflect working law. *See N.Y. Times*, 101 F. Supp. 3d at 318 ("An 'opinion about the applicability of existing policy to a certain state of facts, like examples in a manual,' constitute working law . . . ." (quoting *Coastal States Gas Corp.*, 617 F.2d at 868)). Accordingly, Defendants have not met their burden with respect to CIA 42, 43, 45, and 46.

Defendants assert the deliberative process privilege and the presidential communications privilege with respect to CIA 22. CIA 22 is a "classified correspondence between CIA and the National Security Council providing guidance on a particular issue." Suppl. CIA Decl. ¶ 9. This

document contains "several memos—a memorandum from the White House, a memorandum written from the Director of the CIA to the National Security Advisor recommending and requesting certain action, and internal Agency correspondence preceding those memos." *Id.* These communications include an "authorization request by the CIA Director to a White House official, and the White House's communication back to CIA of the President's grant of the authorization in question, whose nature is classified." Def. Reply 31. Although the presidential communications privilege "could attach to communications to and from . . . officials at the highest levels . . . at the National Security Council," *ACLU. v. Dep't of Justice*, No. 15 Civ. 1954, 2016 WL 889739, at *4 (S.D.N.Y. Mar. 4, 2016), this privilege "should be construed . . . narrowly," *id.* (quoting *In Re Sealed Case*, 121 F.3d at 752). Accordingly, the Court concludes that only the two memoranda to or from the National Security Advisor are protected by the presidential communications privilege. The preceding internal memoranda, however, are therefore clearly protected by the deliberative process privilege. As internal legal memoranda preceding a formal recommendation to the White House, it is unlikely that these memoranda contain working law. CIA 22 was properly withheld.

Finally, Defendants assert the presidential communications privilege regarding CIA 36, which is a "[c]lassified correspondence from National Security Council to CIA providing guidance on a particular issue." CIA *Vaughn* Index 16. There is no indication that the correspondence was sent from the National Security Advisor or any other high level National Security Council official nor any indication that it sent or received as part of presidential decisionmaking. *See ACLU*, 2016 WL 889739, at *4. Construing the privilege narrowly, Defendants have not met their burden of justifying the presidential communications privilege with respect to CIA 36.

Therefore, Defendants' motion for summary judgment regarding Exemption 5 is GRANTED with respect to CIA 13-29, 31-35, 37-41, 44, 47-76, 78, 79, and 92-94 and DENIED with respect to CIA 36, 42, 43, 45, 46, and 80-91.

> d.    NSA

NSA asserts both attorney-client privilege and deliberative process privilege with respect to NSA 11 and 12 and attorney-client privilege regarding NSA 7, 14-21, and 28.

NSA 11 and 12 contain "memoranda from NSD attorneys to other Government attorneys, and they provide advice with respect to one or more NSA programs or other intelligence activities." NSD Decl. ¶ 15. NSA 11 is a "legal memorandum written by DOJ concerning classified SIGINT [signals intelligence] activities and undertaken pursuant to EO12333 and supporting documentation providing non-segregable details of classified NSA COMINT [communications intelligence] activities, sources, and methods." NSA Decl. Ex. A ("NSA *Vaughn* Index"), at 2. NSA 12 consists of an "approval package for a classified NSA program, including a formal legal memorandum written by DOJ concerning classified COMINT activities undertaken pursuant to EO12333 and supporting documentation providing non-segregable details of classified NSA COMINT activities, sources, and methods." *Id.* The "*vast majority* of the memoranda contained in . . . NSA Documents 11 and 12 are . . . 'pre-decisional' because they related to and preceded a final decision regarding one or more NSA programs or other intelligence activities. Further, . . . the *vast majority* of the memoranda contained in . . . NSA Documents 11 and 12 are 'deliberative' because they reflect ongoing deliberations by government attorneys on DOD procedures and one or more NSA programs." NSD Decl. ¶ 18 (emphasis added). Without more, Defendants cannot satisfy their burden that Exemption 5 applies to these two documents; Defendants are invited to supplement their submissions if they

wish to do so.  However, Defendants also assert presidential communications privilege with respect to pages 2-4 and 30-38 of NSA 12, which Plaintiffs do not contest, except to the extent that the privilege is voided by the working law doctrine.  *See* Pl. Mem. 15 n.4.  As discussed above, the working law doctrine does not vitiate the presidential communications privilege, and these pages are properly withheld.

Defendants assert attorney-client privilege regarding NSA 7, 14, 15, 16, 17, 18, 19, 20, 21, and 28.  These documents "contain correspondence between NSA [Office of General Counsel] and its internal clients, such as the Signals Intelligence Directorate, the NSA organization tasked with carrying out NSA's SIGINT mission."  NSA Decl. ¶ 53.  These communications "were made in order to provide legal advice to Agency clients on a variety of operational issues that arose under EO 12333, [and] the communications were made in confidence."  *Id.*  The Court is satisfied that these documents are protected by attorney-client privilege.  The NSA further states that these documents "have not since been used to *publically* justify NSA actions or [have not been] *expressly* adopted as Agency policy."  NSA Decl. ¶ 53 (emphasis added).  This states the rule too narrowly.  *See Brennan Ctr.*, 697 F.3d at 195 (describing formal and *informal* adoption, including documents "more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy," even if not done so publicly).  The Court therefore cannot determine whether these documents contain working law or have not been adopted.  Defendants are invited to supplement their submissions to address this point.

Accordingly, Defendants' motion for summary judgment on Exemption 5 is DENIED with respect to NSA 7, 11, 12, 14-21, and 28, except for pages 2-4 and 30-38 of NSA 12, for which Defendants' motion is GRANTED.

C.    Exemptions 1 and 3

      i.    Legal Standards

          a.    Exemption 1

The Government may withhold records under Exemption 1 if the records are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13,526 sets forth the current standard for classification, which lists four requirements: "(1) an original classification authority [has classified] the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and (4) the original classification authority [has] determine[d] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security . . . and the original classification authority is able to identify or describe the damage." Exec. Order No. 13,526, § 1.1(a)(1)-(4), 75 Fed. Reg. 707 (Dec. 29, 2009). Section 1.4 of E.O. 13,526 protects, *inter alia*, information that describes "intelligence activities (including covert action), intelligence sources or methods, or cryptology"; "foreign relations or foreign activities of the United States, including confidential sources"; and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." *Id.* § 1.4(c), (d), (g).

To satisfy its burden on summary judgment, the Government must establish through affidavits "that it complied with proper procedures in classifying materials and that the withheld information falls within the substantive scope" of a particular executive order. *Amnesty Int'l USA*, 728 F. Supp. 2d at 506 (citing *Salisbury v. United States*, 690 F.2d 966, 971-72 (D.C. Cir.

1982)).  These affidavits must "contain sufficient detail to forge the logical connection between the information [withheld] and [Exemption 1]." *Id.* (alterations in original) (quoting *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 166 (D.D.C. 2009)).  However, "the Court is 'mindful that issues of national security are within the unique purview of the executive branches, and that as a practical matter, few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information.'" *Id.* (quoting *Physicians for Human Rights*, 675 F. Supp. 2d at 166).  Accordingly, the Court gives deference to the Government's justifications for classifying information.  *Id.*

b.       Exemption 3

Under FOIA Exemption 3, the Government is permitted to withhold information that is "specifically exempted from disclosure by [a] statute" that requires certain information to be withheld or that establishes criteria for the withholding of information.  5 U.S.C. § 552(b)(3). The Court's assessment of the applicability of this exemption "depends less on the detailed factual contents of specific documents" than with other FOIA exemptions; rather "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Amnesty Int'l USA*, 728 F. Supp. 2d at 501 (quoting *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978)).

Defendants invoke five statutes to justify nondisclosure under Exemption 3: 50 U.S.C. § 3605, which exempts from disclosure "the organization or any function of the [NSA], or any information with respect to the activities thereof"; 50 U.S.C. § 3024(i)(1), which directs the director of national intelligence to "protect intelligence sources and methods from unauthorized disclosure" and to "establish and implement guidelines for the intelligence community" regarding the classification and dissemination of sensitive information; 18 U.S.C. § 798, which

32

criminalizes the unauthorized disclosure of classified information, *inter alia*, "concerning the communication intelligence activities of the United States" or "obtained by the processes of communication intelligence from the communications of any foreign government"; 50 U.S.C. § 3507, which prohibits disclosure of the "organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]"; and 10 U.S.C. § 424, which prohibits disclosure of "the organization or any function of an organization" of the DIA, including "the number of persons employed by or assigned or detailed to any such organization or the name, official title, occupational series, grade, or salary of any such person." Plaintiffs do not contest that each law qualifies as an exemption statute under Exemption 3. *See* Pl. Mem. 32-34; *see also Elec. Frontier Found. v. Dep't of Justice*, 141 F. Supp. 3d 51, 58 n.8 (D.D.C. 2015). The Court must, therefore, "consider whether the withheld material satisfies the criteria of the exemption statute[s]." *Wilner*, 592 F.3d at 69 (quoting *Wilner v. NSA*, No. 07 Civ. 3883, 2008 WL 2567765, at *4 (S.D.N.Y. June 25, 2008)).

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "This provision requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes." *ACLU*, 2016 WL 5394738, at *13 (quoting *FBI v. Abramson*, 456 U.S. 615, 626 (1982)). In invoking these exemptions, and the segregability of the documents or lack thereof, "an agency's justification . . . is sufficient if it appears 'logical' or 'plausible.'" *N.Y. Times*, 756 F.3d at 119 (quoting *Wolf v. CIA,* 473 F.3d 370, 374-75 (D.C. Cir. 2007)).

ii.     Application

Plaintiffs argue that Defendants have improperly withheld information that is not "inextricably intertwined" with the properly exempt material.  Pl. Mem. 34 (quoting *ACLU v. FBI*, No. 11 Civ. 7562, 2015 WL 1566775, at *2 (S.D.N.Y. Mar. 31, 2015)).

Plaintiffs make three arguments to Defendants' withholdings: the withholding of pure legal analysis in legal memoranda, the withholding of segregable non-exempt information from Inspector General and compliance reports, and the withholding of segregable non-exempt information from documents that Plaintiffs refer to as rules and regulations.  *See id.* 35-43.

a.     Pure Legal Analysis

Plaintiffs argue that pure legal analysis—that is, "constitutional and statutory interpretation, discussions of precedent, and legal conclusions that can be segregated from properly classified or otherwise exempt facts"—"cannot be withheld under Exemptions 1 or 3." *Id.* at 35 (citing *N.Y. Times*, 756 F.3d at 119-20).  However, the Second Circuit has acknowledged that broader withholding may be appropriate: "We recognize that in some circumstances *the very fact that legal analysis was given concerning a planned operation would risk disclosure of the likelihood of that operation*, but that is not the situation here where drone strikes and targeted killings have been publicly acknowledged at the highest levels of the Government."  756 F.3d at 119 (emphasis added) (redacting an entire section of OLD-DOD memorandum that mentions intelligence gathering activities).  Executive Order 13,526 provides that information "shall not be considered for classification unless . . . *it pertains to*" a protected category.  Exec. Order No. 13,526 § 1.4 (emphasis added).  As the D.C. Circuit has recently and repeatedly stated, "pertains is not a very demanding verb." *ACLU v. U.S. Dep't of Justice*, 640 F. App'x 9, 11 (D.C. Cir. 2016) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d

937, 941 (D.C. Cir. 2013)).  And as the Second Circuit in *N.Y. Times* acknowledged, disclosure of even pure legal analysis concerning covert intelligence operations could jeopardize those operations.  *See* 756 F.3d at 119.

Defendants' declarations support the conclusion that the intelligence operations described in the withheld documents are not public knowledge and that disclosure of even the pure legal analysis therein would result in damage to the national security.  The NSA's supplemental declaration states that "the mere subject matter of these memoranda and opinions pertains to classified NSA operations and activities that have not been publicly acknowledged" such that the "release of even the basic factual or legal background in these memoranda could reasonably be expected to cause harm to the national security or an interest protected by statute, as the formulation of the legal analysis itself could enable Plaintiffs and the public to discern classified or protected facts about the program or activity being discussed."  Suppl. Decl. of David J. Sherman ("Suppl. NSA Decl.") ¶ 4, ECF No. 79; *see also* NSA Decl. ¶ 39 ("Disclosure of any information about these sources and the methods by which NSA effects collection, as well as the scope of that collection, would demonstrate the capabilities and limitations of the U.S. SIGINT system, and the success (or lack of success) in acquiring certain types of communications."); *id.* ¶ 80 ("Some of the other information concerns particularly sensitive intelligence collection and processing techniques, the unauthorized disclosure of which could be reasonably expected to cause exceptionally grave damage to the national security.  Once alerted to these collection and processing methods, adversaries could develop additional countermeasures to thwart collection and effective analysis of electronic communications.").  *See generally* NSA Classified Decl. Similarly, the CIA's supplemental declaration states that "disclosure of the facts, analysis, and even citations to legal authorities in this context would tend to reveal not only the nature of the

legal advice sought, but also the underlying classified material associated with those programs and techniques." Suppl. CIA Decl. ¶ 5; *see also* Suppl. FBI Decl. ¶¶ 9-10.

In sum, giving appropriate deference to the assessment of the agencies, the Court finds it logical and plausible that there is no segregable non-exempt content contained in the legal memoranda withheld in full.[3] The Court credits Defendants' declarations that affirm that disclosure of these documents would tend to cause harm to the national security and would reveal intelligence sources and methods. The documents were properly withheld under Exemptions 1 and 3, and Defendants' motion for summary judgment is GRANTED.

b.      Inspector General and Compliance Reports

Plaintiffs contend that Defendants did not properly release segregable, non-exempt information from thirteen documents that were withheld at least in part: CIA 8, 10, 12, 30, and 77; NSA 22, 23, and 79; and NSD 7, 37, 42, 44, and 47. Pl. Index 9-10. Plaintiffs argue that Defendants: (1) failed to conduct a line-by-line segregability review, Pl. Mem. 39-40; (2) improperly withheld material that is marked as unclassified or has been inadequately justified, *id.* at 40; and (3) improperly withheld information about the number of certain types of compliance incidents, *id.* at 41-42.

On the first issue, Defendants do not address in their reply whether they did conduct a line-by-line segregability review on these thirteen documents. *See* Def. Reply 36-38. As it is Defendants' obligation to do so, *see* 5 U.S.C. § 552(b), Defendants are instructed to conduct such a segregability review if they have not done so, or inform the Court that this review has already occurred.

---

[3] Defendants did not conduct a segregability review of certain OLC memoranda for purposes of Exemptions 1 and 3 because the documents were withheld in full under Exemption 5. Def. Reply 35 n.7. As the Court is granting summary judgment on Exemption 5 regarding the OLC memoranda, *see supra* Part III(b)(ii)(a), segregability review is not required.

Second, Plaintiffs point to material explicitly marked as "U/FOUO"—that is, "Unclassified/For Official Use Only"—which was improperly withheld under Exemption 1. Pl. Mem. 40 n.15 (citing CIA 10 at 8). Defendants are instructed to review these thirteen documents for improper withholding of this sort, and inform the Court of the results.

Plaintiffs also specifically challenge the redactions in three sections of CIA 10, labeled "Targeting Standards," "The Department of Justice's Role in EO Compliance," and information about "real or perceived legal and policy concerns" associated with targeting U.S. persons abroad for surveillance. Pl. Mem. 40 (citing CIA 10 at 14, 23-24, 32-43). However, these sections "discuss specifics of the Agency's intelligence collection—both methods and process— which remain classified." Suppl. CIA Decl. ¶ 8. The Court is satisfied that these sections are properly withheld.

Finally, Plaintiffs challenge the redaction of the number of compliance incidents. For example, the following excerpts appear in NSA 79: "During the fourth quarter of CY2012, in [redacted] instances, signals intelligence (SIGINT) analysts inadvertently targeted communications to, from, or about USPs, while pursuing foreign intelligence tasking or performed mistaken queries that potentially sought or returned information about USPs." Pl. Reply 26 (quoting NSA 79 ¶ I.A.1). And: "On [redacted] occasions during the fourth quarter, NSA analysts performed queries in raw traffic databases without first conducting the necessary research . . . ." *Id.* (quoting NSA 79 ¶ I.A.1.b). Although some of these redactions contain only unclassified documents, Defendants have met their burden regarding Exemption 3. The supplemental NSA declaration states that "the withheld numbers all relate to NSA's collection, analysis, and dissemination of signals intelligence for foreign intelligence purposes and the manner in which NSA conducts compliance and oversight over the SIGINT mission," Suppl.

NSA Decl. ¶ 10, and "the disclosure of such numbers, in compilation with information that has been previously released, would tend to disclose the overall scope of NSA's foreign intelligence collection efforts . . . [and] could be pieced together to reveal highly sensitive information to our adversaries," *id.* ¶ 11.  Such information is protected under 50 U.S.C. § 3605 as "information with respect to the activities" of the NSA, and the Court is satisfied that Exemption 3 applies.

Accordingly, as described above, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

c.    Rules and Regulations, Training and Briefing Materials

Plaintiffs make explicit challenges about two documents.   The first is CIA 11,[4] a training slide entitled "AR 2-2 Collection Rules."  Pl. Mem. 42-43.  The supplemental CIA declaration states that CIA 11 "contains details about specific intelligence collection techniques" that, if disclosed, would reveal "how intelligence is obtained [and] would permit the targets of those efforts to evade detection, which in turn could reasonably be expected to cause damage to the national security."  Suppl. CIA Decl. ¶ 10.  The Government has met its burden regarding CIA 11.  The second, NSD 94-125, is a 1988 version of the "Classified Annex to DoD Procedures under EO 12333," as to which Plaintiffs argue the Government has officially released some of this withheld material in a subsequent version of the document.  Pl. Mem. 42-43.  Defendants state that NSA "is 'reviewing ACLU's assertions and hopes to complete its assessment within 30 days.'"  Def. Reply 39 (quoting Suppl. NSA Decl. ¶ 16 n.3).  The Court tends to agree with Plaintiffs that the withholdings may be inappropriate.  Defendants shall inform the Court of the result.

---

[4] Plaintiffs' argument about CIA 11 is listed under "Rules and Regulations" in their briefs, Pl. Mem. 42; Pl. Reply 28-29, but is listed in Plaintiffs' Index under "Training and Briefing Materials," Pl. Index 11.  Plaintiffs do not discuss the category of "Training and Briefing Materials" documents in their briefs.  The Court discusses both categories of documents here.

Plaintiffs challenge, without discussion in their briefs, the withholding of a number of additional "rules and regulations" and "training and briefing materials." Pl. Index 10-11. First, Plaintiffs challenge the withholding of CIA 1, 2, 3, 4, 5, 6, 7, 9, 22, 36, 42, 43, 45, and 46. Many of these documents were released in part. *See* CIA *Vaughn* Index. CIA states that "the information withheld pursuant to Exemption 1 deals with the intelligence priorities set forth in [E.O. 12,333], such as intelligence collection related to espionage, terrorism and proliferation. It tends to identify the targets of intelligence-gathering efforts, reveal the specific collection techniques and methods employed, and contain details concerning the locations and timing of that collection." CIA Decl. ¶ 16. These documents are classified, *id.* ¶ 13, and disclosure of this information would "undermine U.S. intelligence capabilities and render collection efforts ineffective" and could reasonably be expected to damage national security, *id.* ¶ 18. These documents are also protected under 50 U.S.C. § 3024(i)(1) as "intelligence sources and methods." *Id.* ¶ 19. The Court concludes that Exemptions 1 and 3 are properly invoked.

Plaintiffs challenge the withholding of FBI 30-35 and FBI 57-65. As the FBI declaration describes, these documents are properly classified, FBI Decl. ¶¶ 30-32, and the withheld information "describes and pertains to intelligence activities, sources, and methods utilized by the FBI in gathering intelligence information," *id.* ¶ 35, such that the release of such information would "disrupt the FBI's intelligence-gathering capabilities and could cause serious damage to our national security," *id.* ¶ 37. Accordingly, withholding the information pursuant to Exemptions 1 and 3 was appropriate.

Plaintiffs also challenge the withholding of NSA 5 and documents labeled NSA # 4086222 and NSA # 4086223. The NSA declaration states that each of these documents "implements EO 12333 and prescribes policies and procedures for ensuring that SIGINT is

conducted in accordance with the EO and applicable law." NSA Decl. ¶ 71. These documents are confidential, *id.* ¶ 72, and their disclosure would reveal the methods, procedures, nature, and scope of communications intelligence activity, *id.* ¶ 73, as well as their vulnerabilities, *id.* ¶ 74. Such information relates to the function of the NSA. *Id.* ¶ 75 (quoting 50 U.S.C. § 3605). Defendants have met their burden regarding Exemptions 1 and 3.

The final rules and regulations document of which Plaintiffs challenge the withholding is NSD 202-207, which was withheld in part and described as a "Supplemental Guidelines for Collection, Retention, and Dissemination of Foreign Intelligence." NSD *Vaughn* Index 9. Parts of the document were withheld under Exemptions 1 and 3. As explained by the FBI declaration, the withheld information is properly classified, FBI Decl. ¶ 30, and "describes and pertains to intelligence activities, sources, and methods utilized by the FBI in gathering intelligence information," *id.* ¶ 35. Release of this information "would reveal intelligence activities and methods used by the FBI against targets who are the subject of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at targets," *id.* ¶ 36; "would severely disrupt the FBI's intelligence-gathering capabilities and could cause serious damage to our national security," *id.* ¶ 37; and would disclose intelligence sources and methods, *id.* ¶¶ 39-41. Accordingly, Defendants have met their burden regarding their redactions under Exemptions 1 and 3.

Finally, Plaintiffs challenge the withholding of the training materials contained in DIA V-4. Although the Government also asserted Exemption 5 with respect to DIA V-4, it waived this argument on reply and relies solely on Exemptions 1 and 3. Def. Reply 12 (citing Suppl. Decl. of Alesia Y. Williams ("Suppl. DIA Decl.") ¶¶ 5-8, ECF No. 77). DIA V-4 is a classified

presentation entitled "DoD HUMINT [human intelligence] Legal Workshop" on "Fundamentals of HUMINT Targeting." DIA V-4 at 1. As the DIA declaration explains, "[t]he withheld information contains material discussing intelligence methods, specifically the means by which DIA legally collects intelligence and the legal restrictions on collecting intelligence on U.S. persons. The withheld information also contains information relating to intelligence sources, including detailed and specific discussion and guidance on the rules for legally collecting intelligence on sensitive source categories and explaining those sensitive source categories." Decl. of Alesia Y. Williams ("DIA Decl.") ¶ 15, ECF No. 62. This information is properly classified, *id.* ¶ 14, and disclosure "of the sources and methods the U.S. government implements could reasonably be expected to enable persons and groups hostile to the United States to identify U.S. intelligence activities, methods or sources, and to design countermeasures to them," *id.* ¶ 17; *see also id.* ¶¶ 20, 21. The document was "carefully reviewed line-by-line by a subject matter expert for reasonably segregable information." *Id.* ¶ 24. Defendants have met their burden regarding their redactions under Exemptions 1 and 3.

Accordingly, Defendants' motion for summary judgment is DENIED as to NSD 94-125 and GRANTED as to CIA 1, 2, 3, 4, 5, 6, 7, 9, 22, 36, 42, 43, 45, and 46; DIA V-4; FBI 30-35 and 57-65; NSA 5, NSA # 4086222, and NSA # 4086223; and NSD 202-207.

> D.      <u>Exemption 7</u>
>
>> i.      Legal Standard

Defendants invoke Exemption 7(D) and 7(E) of the FOIA statute. Def. Mem. 60-63. Under this exemption, records or information are exempted when "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Information is compiled for law-enforcement purposes where the "withheld record has a rational nexus to the agency's law-enforcement duties, including the

prevention of terrorism and unlawful immigration." *Bishop v. U.S. Dep't of Homeland Sec.*, 45

F. Supp. 3d 380, 387 (S.D.N.Y. 2014) (citation omitted). "[A]ll records of *investigations*

compiled by the FBI are for law enforcement purposes." *Halpern*, 181 F.3d at 296 (emphasis

added). "As the D.C. Circuit has explained, 'Law enforcement entails more than just

investigating and prosecuting individuals *after* a violation of the law.' The 'ordinary

understanding' of the term 'includes . . . proactive steps designed to prevent criminal activity and

maintain security.'" *Human Rights Watch v. Dep't of Justice Fed. Bureau of Prisons*, No. 13

Civ. 7360, 2015 WL 5459713, at *5 (S.D.N.Y. Sept. 16, 2015) (citation omitted) (quoting *Pub.*

*Emp. for Env't'l Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n,* 740 F.3d 195,

203 (D.C. Cir. 2014)).[5]

Under Exemption 7(D), a law enforcement record is exempted from FOIA to the extent it

"could reasonably be expected to disclose the identity of a confidential source . . . and, in the

case of a record or information compiled by criminal law enforcement authority in the course of

a criminal investigation or by an agency conducting a lawful national security intelligence

investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). "'[A]

source should be deemed confidential if the source furnished information with the understanding

that the [agency] would not divulge the communication except to the extent the [agency] thought

necessary for law enforcement purposes.' As such, disclosure is not required 'if the source

provided information under an express assurance of confidentiality or in circumstances from

---

[5] Plaintiffs urge the Court to adopt the stringent standard set forth by the D.C. Circuit in *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982). *See* Pl. Br. 44. *Pratt* required that an agency identify "a particular individual or a particular incident as the object of [the agency's] investigation" and "the connection between that individual or incident and a possible security risk or violation of federal law." *Pratt*, 673 F.2d at 420. However, "Congress amended FOIA since the D.C. Circuit decided *Pratt*, removing a requirement that the records be 'investigatory.'" *Human Rights Watch*, 2015 WL 5459713, at *5. Since courts should take "a practical approach when . . . confronted with an issue of interpretation of" FOIA, *id.* (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 157 (1989)), the Court declines to adopt so "wooden" a test, *id.*

which such an assurance could be reasonably inferred.'" *Halpern*, 181 F.3d at 298 (citation omitted) (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172, 174 (1993)).

Under Exemption 7(E), records may be withheld to the extent they "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Once the "threshold requirement" of showing that a record was compiled for law enforcement purposes is satisfied, "a court must determine if either of Exemption 7(E)'s 'two alternative clauses' applies." *Bishop*, 45 F. Supp. 3d at 387. A record discloses "techniques and procedures" if it "refers to how law enforcement officials go about investigating a crime." *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010). "The term 'guidelines'— meaning . . . 'an indication or outline of future policy or conduct'—generally refers . . . to resource allocation." *Id.* (quoting Webster's Third New International Dictionary).

ii.    Application

Plaintiffs challenge the application of Exemption 7 to two formal legal memoranda— OLC 5 and 6—and to five rules and regulations—FBI 13-15, 30-35, and 57-65; NSD 202-07; and CIA 4.[6]  Pl. Mem. 6-8, 43 n.16.

The two formal legal memoranda are discussed above, and, in short, they discuss legal advice concerning surveillance under E.O. 12,333. *See* OLC Decl. Ex. A ("OLC *Vaughn* Index"), at 1-2. Defendants assert Exemption 7(D) with respect to OLC 6 and Exemption 7(E) regarding both documents. FBI Decl. ¶¶ 47, 54. Regarding Exemption 7(D), FBI explains that

---

[6] The portions of CIA 4 that were withheld under Exemption 7(E) were also withheld under Exemptions 1 and 3. See Def. Reply 41 n.9. Having granted summary judgment for Defendants on those exemptions, the Court need not address Exemption 7 for these redactions.

OLC 6 includes "specific and detailed information that is singular in nature, concerning the activities of a subject of investigative interest to the FBI" including about individuals "specifically referred to as 'confidential sources.'" *Id.* ¶ 47 & n.21.  To the narrow extent OLC 6 includes such information, Defendants are correct to withhold it; however, given the nature of the document as a formal legal memorandum, Exemption 7(D) cannot justify complete withholding the document, but other exemptions discussed above also apply.  FBI asserts that OLC 5 and OLC 6 both contain sensitive techniques and procedures about its surveillance and information collection and analysis activities.  *Id.* ¶¶ 53-56; *see also, e.g., id.* ¶ 54 ("Revealing details about information-gathering methods and techniques commonly used in national security investigations, and the circumstances under which they are used, would enable the targets of those methods and techniques to avoid detection of and develop countermeasures to circumvent the FBI's ability to effectively use such critical law enforcement methods and techniques in current and future national security investigations, thus risking the circumvention of the law.").  As these documents are formal legal memoranda, Exemption 7(E) may indeed justify partial withholding but, standing alone, cannot justify complete withholding.  *See, e.g., PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 251-52 (D.C. Cir. 1993) (denying agency's request to withhold legal analysis and digest of caselaw under Exemption 7(E)).

FBI 13-15 includes selections from FBI's Domestic Investigations and Operation Guide ("DIOG"), from which FBI withheld three paragraphs.  FBI Decl. ¶ 59 & Ex. H.  FBI explains that the DIOG "provides FBI employees with the rules, regulations, and procedures it is to use when conducting both criminal and national security investigations."  Suppl. FBI Decl. ¶ 15. FBI 30-35 contains excerpts from an electronics communication "from FBI's Office of General Counsel, National Security Law Branch to all FBI Offices setting out the policy and procedure

for requesting Attorney General authority under Executive Order 12333, Section 2.5 to collect intelligence on U.S. persons overseas." FBI Decl. Ex. I ("FBI *Vaughn* Index"), at 2. FBI 57-65 contains excerpts from FBI's Counterintelligence Division Policy Implementation Guide, FBI Decl. ¶ 59, which "sets forth specific policies, procedures and investigative techniques used by the FBI in its counterintelligence investigations," Suppl. FBI Decl. ¶ 18. NSD 202-07 contains supplemental guidelines for collection, retention, and dissemination of foreign intelligence. FBI *Vaughn* Index 3.

Defendants have met their burden regarding Exemption 7. As the supplemental FBI declaration states, "each of these records identify a clear and direct nexus to the FBI's law enforcement duties[,] [s]pecifically, how the FBI collects, disseminates and retains intelligence is all part of its law enforcement mission." Suppl. FBI Decl. ¶ 13. FBI 13-15 "discusses tools, techniques and methods used during investigations, how they are implemented, as well as the authority required to implement them." *Id.* ¶ 15. FBI 30-35 "sets forth specific policies, procedures and investigative techniques used by the FBI in its counterintelligence investigations. These investigations are, by definition, both criminal in nature and for the purpose of collecting intelligence." *Id.* ¶ 18. Releasing the information in all of these documents would "provide subjects and their associates with non-public information pertaining to the FBI's obligations or internal procedures under EO 12333 allowing these individuals to develop countermeasure to avoid detection and surveillance by the FBI, thus nullifying the effectiveness of these important investigative/national security techniques/procedures." *Id.* ¶ 19.

Accordingly, Defendants' invocation of Exemption 7, as described above regarding OLC 5, OLC 6, FBI 13-15, FBI 30-35, FBI 57-65, and NSD 202-07 is proper, and summary judgment on Defendants' motion is GRANTED.

E.    Reprocessing

Plaintiffs seek reprocessing of OLC 4, 8, and 10 in light of documents that have been recently released by the Government that may have been officially acknowledged.  Pl. Mem. 49-50; Pl. Reply 35-36.  "As a general rule, a FOIA decision is evaluated as of the time it was made and not at the time of a court's review."  *N.Y. Times*, 756 F.3d at 111 n.8; *see also Florez v. CIA*, 829 F.3d 178, 188 (2d Cir. 2016) ("[T]o require an agency to adjust or modify its FOIA response based on post-response occurrences could create an endless cycle of judicially mandated reprocessing each time some circumstance changes." (quoting *Bonner v. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991))).  Accordingly, Plaintiffs' request is DENIED.

F.    *In Camera* Review

In FOIA cases, a court should conduct *in camera* review only as a last resort.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).  "'[A] district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*.'  Rather, '[t]he district court should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions.'  'If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery.'"  *ACLU*, 2016 WL 5394738, at *13 (alterations in original) (citations omitted) (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998)).  The Court finds that *in camera* review is premature at this time and invites the Government to supplement its submissions and Plaintiffs to respond.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED in part and DENIED in part, and Plaintiffs' motion is DENIED without prejudice.  The parties are directed to confer and jointly submit a proposed briefing schedule on any further motions on or before **April 26, 2017**. The Clerk of Court is directed to terminate the motions at ECF Nos. 58 and 69.

SO ORDERED.

Dated:  March 27, 2017
      New York, New York

KIMBA M. WOOD
United States District Judge